**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC; *and* JANE DOE,

     *Plaintiffs*,

     v.                      Case No. 4:18-CV-137-MW-CAS

PAM BONDI, in her Official Capacity
as Attorney General of Florida; *and* RICK
SWEARINGEN, in his Official Capacity
as Commissioner of the Florida
Department of Law Enforcement,

     *Defendants*.
_____/

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION TO PROCEED UNDER PSEUDONYMS

"Lawsuits are public events." *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992). Consistent with that principle, Federal Rule of Civil Procedure 10(a) directs that "[t]he title of the complaint *must* name all the parties" to the suit (emphasis added). The "clear mandate" of Rule 10(a) "protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties" who have chosen to commence a public lawsuit. *Id.* at 322-23. Thus, the rule reflects and codifies a "constitutionally-embedded presumption of openness in judicial

proceedings." *See id.* at 323 (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)).

Because the openness of judicial proceedings implicates the freedom of the press and the interests of the public, Rule 10(a) may not be set aside based on the preferences of the parties. *See id.* at 322. Rather, courts must apply a "strong presumption in favor of parties' proceeding in their own names." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011). That presumption may be overcome only in an "exceptional case." *Frank*, 951 F.2d at 323.

This is not such a case. A litigant's status as a plaintiff is not "highly sensitive and personal information"; the strong presumption in favor of openness in judicial proceedings may not be discarded to avoid "unwanted public attention and censure"; this case is no more "controversial" than countless others—including others involving substantially similar claims—that have been filed by plaintiffs in their own names; and Plaintiffs do not cite a single case in which a court has allowed claims of this kind to be brought under a pseudonym. *See* DE20.

At bottom, Plaintiffs argue that they should be allowed to proceed under pseudonyms because they "reasonably fear that public exposure and association with this lawsuit could subject them to harassment, intimidation, and potentially even physical violence." DE20:6. However, Plaintiffs do not point to any specific facts that establish a "real danger of physical harm." *Frank*, 951 F.2d at 324. The

more general risk that litigants who carry the torch for controversial causes will be illegally threatened or harassed by ideological antagonists should be taken seriously; but the proper solution to that problem is to vigorously *enforce* existing laws prohibiting such misconduct, not to ignore the "clear mandate" of Rule 10(a) and thereby *abridge* the rights of the press, the public, and other parties to the litigation.

For those and other reasons set out below, the motion to proceed under pseudonyms should be denied.

## BACKGROUND

On February 14, 2018, a 19-year-old used a lawfully purchased firearm to kill 17 students and injure many others at Marjory Stoneman Douglas High School in Parkland, Florida. Responding to that and other incidents of gun violence, the Florida Legislature enacted the Marjory Stoneman Douglas High School Public Safety Act, which, among other things, prohibits the purchase of firearms by persons under the age of 21. *See* Fla. Stat. § 790.065(13).

On March 9, the National Rifle Association of America, Inc. ("NRA") filed this lawsuit, alleging that Florida's age qualification violates the Second Amendment and Equal Protection Clause of the United States Constitution. DE1. The NRA was the sole plaintiff. DE1 ¶ 8. Two of the four counts alleged that Florida Statutes § 790.065(13) is "invalid as applied to women between the ages of

3

18 and 21," DE1 ¶¶ 32, 41, but neither of those counts alleged that the statute is unconstitutional as applied to any particular individual. *See id.*

On April 27, the NRA sought leave to amend their complaint by adding a new plaintiff, identified as Jane Doe, as well as references to an NRA member identified as John Doe. DE18. The proposed amended complaint describes Jane Doe as "a citizen of the United States and a resident and citizen of the State of Florida" who "resides in Alachua County, FL." DE18-1 ¶ 9. Two counts of the proposed amended complaint allege that Florida Statutes § 790.065(13), "[r]egardless of its facial validity," is "unconstitutional, void, and invalid *as applied to Plaintiff Jane Doe* and other 18-to-21-year-old adult women." DE18-1 ¶¶ 38, 47 (emphasis added).

The NRA and Jane Doe (hereinafter "Plaintiffs") concurrently filed a motion seeking the Court's leave for Jane Doe to proceed pseudonymously and for Plaintiffs to refer to John Doe, a non-party, pseudonymously in filings. DE19; DE20.

This Court granted Plaintiffs' motion for leave to amend but directed Defendants to file an expedited response to the motion for leave to proceed under pseudonyms. DE21:2. This filing responds to that order.[1]

---

[1] As per the Court's order, this expedited response addresses only Plaintiffs' motion to proceed under pseudonyms. Defendants reserve the right to raise threshold defenses in a subsequent filing.

## ARGUMENT

Consistent with the text of Rule 10(a), the Eleventh Circuit has recognized a "strong presumption in favor of parties' proceeding in their own names." *Francis*, 631 F.3d at 1315; *see Frank*, 951 F.2d at 322 ("Generally, parties to a lawsuit must identify themselves in their respective pleadings."). To overcome that "strong presumption," a plaintiff must prove "a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Francis*, 951 F.2d at 1315-16 (internal quotation marks omitted). Indeed, the existence of such "a substantial privacy right" is "[t]he ultimate test for permitting a plaintiff to proceed anonymously." *Frank*, 951 F.2d at 323. In "all" of the rare cases in which plaintiffs been allowed to proceed anonymously, plaintiffs otherwise would have been required to "divulge[] information of the utmost intimacy." *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979); *see Francis*, 631 F.3d at 1316; *Roe v. Aware Woman Ctr. for Choice*, 253 F.3d 678, 685 (11th Cir. 2001).

Applying those principles here, Plaintiffs have failed to overcome the "strong presumption" of openness in judicial proceedings. *See Francis*, 631 F.3d at 1315.

**1.** At the threshold, Plaintiffs fail to identify a "substantial privacy right" that would be protected by their request to proceed anonymously. *See Frank*, 951

F.2d at 323. In their sworn declarations, Jane Doe and John Doe do not identify any "substantial privacy right" or "information of the utmost intimacy" that would be compromised if they were required to use their own names. *See* DE20-1:1. Nor is any such right mentioned in Plaintiffs' supporting memorandum. *See* DE20. That "ultimate test" cannot be satisfied by asserting that "Plaintiff Doe's name, address, and status as a plaintiff in this case are highly sensitive and personal," DE20:5; *see Frank*, 951 F.2d at 323. After all, *every litigant* in *every lawsuit* is ordinarily required to divulge such identifying information, and the Eleventh Circuit has explained that "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 951 F.2d at 323.

A litigant's "name, address, and status as a plaintiff" do not become "highly sensitive and personal" just because the subject of the litigation is "controversial." *See* DE20:5; DE20-1:1. By "requir[ing] a complaint to 'include the names of all the parties,'" Rule 10(a) "protects the public's legitimate interest in knowing all of the facts involved" in a lawsuit, "including the identities of the parties." *Frank*, 951 F.2d at 322. That public interest is *heightened*, not diminished, when a suit involves a controversial question of public policy. *See, e.g.*, *Fla. Action Comm., Inc. v. Seminole Cty.*, No. 6:15-cv-1525, 2016 WL 6080988, at *3 (M.D. Fla. Oct. 18, 2016) (adopting report and recommendation concluding that the "public interest would [not] be served by granting the protective order" regarding

plaintiffs' identities because "the constitutional claims raised by FAC in this case are of great public importance and demand open judicial proceedings"). And the public interest in open judicial proceedings is particularly strong where, as here, the pertinent public controversy involves an effort to invalidate a public law enacted for the purpose of protecting public safety.

State statutes conferring discrete and limited protections for certain information concerning concealed carry "license[s]," "legally owned firearms," and "law-abiding firearm owners," DE20:5-6, do not support the proposition that a civil litigant has a "substantial privacy interest" in the fact that she has filed a public lawsuit challenging the constitutionality of a public law. *See Frank*, 951 F.2d at 324 ("Lawsuits are public events."). The cited state laws are consistent with the "clear mandate" of Federal Rule of Civil Procedure 10(a), *see id.* at 323, because the information Plaintiffs seek to withhold—Jane Doe's "name, address, and status as a plaintiff"—would not reveal whether she has a concealed carry license or currently owns firearms.

Similarly, caselaw has not recognized a broad exception to the "constitutionally-embedded presumption of openness in judicial proceedings," *Frank*, 951 F.2d at 323, for plaintiffs who raise claims involving "the possession and use of firearms," DE20:5. As the Eleventh Circuit has explained, "Courts have permitted plaintiffs to proceed anonymously in cases involving [disclosure of]

7

mental illness, homosexuality, and transsexuality." *Frank*, 951 F.2d at 324 (citations omitted). Courts have also allowed anonymous proceedings in cases involving "birth control, abortion, . . . the welfare rights of illegitimate children or abandoned families," *Wynne & Jaffe*, 599 F.2d at 712-13, childhood sexual abuse by clergy, *Doe v. St. John's Episcopal Parish Day School, Inc.*, 997 F. Supp. 2d 1279, 1290 (M.D. Fla. 2014), and plaintiffs' status as HIV- or AIDS-positive, *S.G. v. Mears Transportation Group*, No. 6:14-cv-917, 2014 WL 4637139, at *1 (M.D. Fla. Aug. 12, 2014). *Francis* itself, on which Plaintiffs rely, involved issues that "could not be of a more sensitive and highly personal nature—they involve descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities." 631 F.3d at 1317. The courts have rejected anonymity in other kinds of cases, like this one, not involving "information of the utmost intimacy." *See Wynne & Jaffe*, 599 F.2d at 713.

For their part, Plaintiffs do not cite a single case in which a plaintiff was allowed to proceed under a pseudonym because the claim the plaintiff sought to raise implicated a "controversial" and "politically polarizing" issue in general or related to "the possession and use of firearms" in particular. *See* DE20:5. Notably, Plaintiffs cite two Second Amendment cases in their pleadings. DE20:1, 4. Both were at least as controversial as this one, and both were brought by plaintiffs who

identified themselves by name. *See District of Columbia v. Heller*, 554 U.S. 570, 575 (2008); *NRA v. BATFE*, 700 F.3d 185, 188 (5th Cir. 2012); *see also*, *e.g.*, *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

The Eleventh Circuit has identified two other factors relevant to "analyzing a plaintiff's claim of a substantial privacy right": whether "the plaintiffs seeking anonymity [are] challenging governmental activity"; and whether plaintiffs will be "compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution." *Francis*, 631 F.3d at 1316. Neither factor supports the motion to proceed under pseudonyms in this case.

Plaintiffs contend that "[t]he defendants in this case are government officials, not private individuals or entities," so "the interests that a private party ordinarily has in knowing the identity of his accuser are thus not present here." DE20:3-4. But the Eleventh Circuit has expressly rejected the argument "that there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government." *Frank*, 951 F.2d at 324 (explaining that "the fact that Doe is suing the Postal Service does not weigh in favor of granting Doe's request for anonymity"); *see Roe*, 253 F.3d at 686 ("Plaintiffs . . . bring challenges to government activity every court day, and no published opinion that we are aware of has ever permitted a plaintiff to proceed anonymously merely because the

complaint challenged government activity."); *Stegall*, 653 F.2d at 185 ("[I]n only a very few cases challenging governmental activity can anonymity be justified.").

As to the second factor, Plaintiffs do not contend that participation in this lawsuit will compel admission of any "intention to engage in illegal conduct and thus risk criminal prosecution." *Francis*, 631 F.3d at 1316. Thus, that factor does not support their motion.

In short, Plaintiffs have not pointed to any "substantial privacy interest" that would be served by disregarding the mandate of Rule 10(a). That consideration, standing alone, compels the conclusion that the motion to proceed under pseudonyms should be denied. *See Frank*, 951 F.2d at 323; *Wynne & Jaffe*, 599 F.2d at 713.

**2.** Establishing a "substantial privacy right" in proceeding anonymously is a necessary, but not a sufficient, condition for departing from the mandate of Rule 10(a). *See Francis*, 631 F.3d at 1316; *Frank*, 951 F.2d at 323; *Wynne & Jaffe*, 599 F.2d at 713. Assuming *arguendo* that Plaintiffs have identified substantial "privacy concerns," the question is whether, based on "*all* the circumstances of a given case," "the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Frank*, 951 F.2d at 323.

Applying precedent to the circumstances of this case, Plaintiffs have failed to overcome the strong presumption favoring open judicial proceedings, for at least four reasons.

First, litigants similarly situated to Jane Doe and John Doe have openly made claims very similar to those raised here. Consider the following examples:

- In *NRA v. BATFE*, 700 F.3d 185 (5th Cir. 2012), the Fifth Circuit addressed claims raised by three named individuals "who at the time of filing were over the age of 18 but under the age of 21," and who argued that certain federal statutes "violate the Second Amendment and the equal protection component of the Fifth Amendment by preventing law-abiding 18-to-20-year-old adults from purchasing handguns from federally licensed dealers." *Id.* at 188; *see NRA v. McGraw*, 719 F.3d 338, 343 (5th Cir. 2013) (noting that the same "three individual plaintiffs, ages 18-20," also brought a "constitutional challenge to Texas's constructive ban on 18-to-20-year-olds carrying handguns in public").

- In *Powell v. Tompkins*, 926 F. Supp. 2d 367 (D. Mass. 2013), the district court addressed a "massive frontal assault on Massachusetts's gun control legislation" brought by a named litigant who "was eighteen years of age" at the time in question. *Id.* at 370, 371 n.6. Plaintiff claimed, among other things, that a Massachusetts law was "unconstitutional because, in setting the minimum age for obtaining a license to carry a firearm at twenty-one, it is violative of the rights of eighteen-to-twenty year-olds under the Second Amendment and under the Equal Protection Clause of the Fourteenth Amendment." *Id.* at 370.

- In *Horsley v. Trame*, 808 F.3d 1126 (7th Cir. 2015), a named plaintiff claimed that an "Illinois statutory scheme violates her rights under the Second Amendment" after her "application to possess an Illinois Firearm Owner's Identification Card . . . was returned to her as incomplete because she was over 18 but not yet 21 and her application did not contain a parent or guardian signature." *Id.* at 1127.

- In *Ezell v. City of Chicago*, 846 F.3d 888 (7th Cir. 2017), three named plaintiffs "who want[ed] access to a firing range within city limits" brought

suit challenging a regulation that disallowed any person under the age of 18 from practicing firearm use in the controlled setting of a shooting range. *Id.* at 890, 891 n.2.

Plaintiffs here do not cite any evidence establishing that the plaintiffs in those other cases were "subjected to harassment, intimidation, threats, [or] . . . physical violence," DE20-1 ¶ 4; and still less have they shown that ordinary legal processes and protections would be inadequate to the task of addressing such problems, if and when they arise, in this case. Absent such evidence, this Court should not assume that "the highly controversial nature" of litigation concerning gun-control issues, standing alone, overcomes the strong presumption in favor of openness in judicial proceedings. *See* DE20-1; DE20-2.

Second, Jane Doe and John Doe "face no greater threat" of harm "than the typical plaintiff alleging" violations of Second Amendment rights. *See id.* ("hold[ing] that these Title VII plaintiffs may not sue under fictitious names" and emphasizing that those plaintiffs "face no greater threat of retaliation than the typical plaintiff alleging Title VII violations"). In her declaration, Jane Doe cites what she characterizes as "the highly controversial nature of this litigation" as the sole basis for speculating that she might be subject to harassment or threats if her identity is revealed to the public. *See* DE20-1 ¶ 4. Notably, however, Plaintiffs do not argue that challenges to age-related firearms restrictions are uniquely controversial; rather, they take the view that *all* Second Amendment cases are

highly controversial. *See* DE20:5 ("Few issues of public policy are as controversial and politically polarizing as the possession and use of firearms."). Thus, the logical implication of Plaintiffs' position is that *all* litigants seeking to vindicate Second Amendment rights should be allowed to proceed pseudonymously. Nevertheless, "Plaintiffs have not cited, nor have we found, *any* prior decisions which recognize or even discuss the right of" Second Amendment "plaintiffs to proceed anonymously." *See Wynne & Jaffe*, 599 F.2d at 712 (emphasis added).

Third, Plaintiffs do not assert—and still less do they prove—that the rule "requir[ing] a complaint to 'include the names of all the parties,'" *Frank*, 951 F.2d at 322, would preclude or even substantially complicate their goal of obtaining judicial resolution of the constitutional claims they seek to raise. *See* DE20-1. According to Plaintiffs, "[t]he NRA has a membership of approximately five million persons, many thousands of whom reside throughout the State of Florida." DE18-1 ¶ 8. Plaintiffs do not claim that, out of those millions of members, they could not find one who has standing to sue and is willing to file suit in his or her own name. Nor is there any basis for thinking that is the case: Jane Doe and John Doe, for example, have said that they would prefer to proceed anonymously; they have not said that they will take part in this case only if they are allowed to proceed anonymously. *See* DE20-1; DE20-2.

Fourth, Plaintiffs bring suit under 42 U.S.C. § 1983, and they "seek remedies under 28 U.S.C. §§ 1651, 2201, and 2202 and 42 U.S.C. §§ 1983 and 1988." DE18-1 ¶ 6. The plain "language" of those provisions "establishes no exception to the general principle that 'the identity of the parties to a lawsuit should not be concealed." *Wynne & Jaffe*, 599 F.2d at 712; *see id.* at 713 ("Because we find neither an express congressional grant of the right to proceed anonymously nor a compelling need to protect[] privacy in a very private matter, we hold that these Title VII plaintiffs may not sue under fictitious names and therefore affirm the district court's order requiring disclosure of A-D's identities by proper pleadings." (internal quotation marks omitted)).

**3.** Plaintiffs contend that Defendants would not "be prejudiced by allowing Jane Doe (or John Doe) to remain anonymous," because "the dispositive issues in this case are likely to be purely legal ones." DE20:4. That argument is unpersuasive for several reasons.

First, the "clear mandate" set out in Rule 10(a), by its terms, does not turn on whether adherence to that rule would prejudice other parties to the litigation. And for good reason. The general "requirement of disclosure" embodied in Rule 10(a) "protects *the public's* legitimate interest in knowing all of the facts involved" in a suit. *Roe*, 253 F.3d at 685 (emphasis added; internal quotation marks omitted).

Focusing on whether Defendants would be prejudiced by non-disclosure would invert the strong presumption in favor of open judicial proceedings.

Second, Defendants would be prejudiced if Jane Doe and John Doe are allowed to conceal their identities from either defense counsel or the general public. Defendants must know who Jane Doe is to assess whether she currently has, and continues to maintain, standing to prosecute this action. *See, e.g.*, *BATFE*, 700 F.3d at 191 (concluding that "the issues on appeal are moot as to" two of the three named plaintiffs, "[b]ecause they have aged out of the demographic group affected by the ban at bar"). For example, Plaintiffs allege that Jane Doe "has never been convicted of a felony, has never been adjudicated mentally defective, and, but for the challenged age ban, could lawfully purchase a firearm under Florida and federal law." DE18-1 ¶ 21. These allegations bear directly on Jane Doe's standing as a plaintiff, and they are material even at the pleadings stage, as Defendants may be able to disprove them as a matter of law. Indeed, even if Plaintiffs' representations are verified as an initial matter, Jane Doe's rights vis-à-vis firearms may change at any time and could render her claims moot. *See BATFE*, 700 F.3d at 191. Similarly, facts related to John Doe are relevant to assessing whether the NRA has standing. *See* DE18-1 ¶¶ 27-28; *BATFE*, 700 F.3d at 191-92. Defendants are entitled to monitor developments as to these issues so that, if necessary, Defendants may bring them to the Court's attention.

Just as importantly, Defendants must know who Jane Doe is, and obtain appropriate discovery, in order to assess potential defenses to her two as-applied claims. *See* DE18-1 ¶¶ 38, 47; *Francis*, 631 F.3d at 1318-19 (weighing in favor of anonymity the fact that "[t]he Defendants are aware of the Plaintiffs' identities and thus are not barred from conducting a full range of discovery in building a defense for trial"). For example, Defendants may seek to argue that, even if the challenged restriction impinges on Jane Doe's Second Amendment rights, any such burden is constitutionally justified as applied to the particular circumstances of her case—including whether she has access to other available methods of obtaining firearms. Those and other potential defenses cannot be explored if Jane Doe proceeds under a pseudonym.

It is no answer to say that, "to the extent the identity of either Jane Doe or John Doe for some reason becomes critical to the conduct of this litigation, Plaintiffs would be willing to share their identifying information with Defendants' counsel on an attorneys'-eyes-only basis." DE20:4. The attorney-client relationship is impaired when attorneys are ordered to conceal information from their own clients; state public-records requirements would complicate the task of keeping such information confidential; persons other than Defendants' attorneys may well have information germane to Jane Doe's standing and her as-applied claims; and the State's interest in maintaining a high degree of public confidence in the fairness

and integrity of judicial proceedings is thwarted when the press and interested citizens are deprived of information concededly "critical to the conduct of [the] litigation," *id.*

In addition, an order directing Plaintiffs' to "share their identifying information with Defendants' counsel on an attorneys'-eyes-only basis," DE20:4, would needlessly complicate the conduct of the proceedings. *See Wynne & Jaffe*, 599 F.2d at 710 (noting trial judge's reasoning that "the mechanics of non-disclosure would only further complicate an already complicated set of cases"). Or worse. For example, would the Court, notwithstanding competing First Amendment principles giving the public and the press a right of access to judicial proceedings, close the courthouse doors to all persons other than counsel if Jane Doe either chooses to offer, or is required to offer, testimony on matters germane to her as-applied claims?

In resolving the threshold question whether Plaintiffs should be allowed to file their proposed amended complaint, this Court should not be required to anticipate whether "the dispositive issues in this case are *likely* to be purely legal ones," DE20:4 (emphasis added). Nor is it clear, at this stage of the litigation, that Jane Doe may prevail on her as-applied claims without further factual development illustrating how Florida Statutes § 790.065(13) would apply to her. *See GeorgiaCarry.org, Inc. v. Georgia*, 687 F.3d 1244, 1255 n.20 (11th Cir. 2012)

17

(noting that "there are few situations" in which "it is possible to bring an as-applied challenge in a pre-enforcement review of a statute that has yet to be applied," and adverting to "the factual allegations necessary to clearly illustrate the context in which the statute will be applied").

What is more, the NRA's proposed addition of Jane Doe as a plaintiff either adds to their case or it doesn't. If it does, Defendants, this Court, and the public should be entitled to explore the factual context in which those as-applied claims are raised; if it doesn't, Plaintiffs are not in a good position to insist that it is necessary for Jane Doe to file suit under a pseudonym.

**4.** Plaintiffs argue that they should be allowed to proceed under pseudonyms because they "reasonably fear that public exposure and association with this lawsuit could subject them to harassment, intimidation, and potentially even physical violence." DE20:6. That concern warrants careful consideration, but Plaintiffs' submission in this case does not provide a sufficient basis for overcoming the strong presumption in favor of open judicial proceedings.

First, Plaintiffs do not point to any specific facts that establish a "real danger of physical harm." *See Frank*, 951 F.2d at 324. Jane Doe and John Doe state only that "[b]ecause of the highly controversial nature of this litigation," they are afraid that they will be "subjected to harassment, intimidation, threats, and potentially even physical violence" if their "association with the lawsuit [becomes] public."

18

DE20-1 ¶ 4; DE20-2. The same could be said in every case involving an arguably controversial issue. Under the law of this Circuit, however, "[i]t is the exceptional case in which a plaintiff may proceed under a fictitious name." *Frank*, 851 F.2d at 323. Accordingly, requests for anonymity "must be based on more than generalities and speculation." *Seminole Cty.*, 2016 WL 6080988, at *2.

The declaration by former NRA president Marion Hammer does not fill that gap. Ms. Hammer notes that *she* has been harassed and threatened for her advocacy in support of Second Amendment rights. DE20-3. To obtain the extraordinary relief they seek, however, Jane Doe and John Doe must produce "evidence indicating that the Does *themselves* face[] [a] threat of violence." *Seminole Cty*, 2016 WL 6080988, at *3. As prospective parties to one discrete lawsuit, moreover, Jane and John Doe are not situated similarly to Ms. Hammer, a longstanding and nationally known advocate. Ms. Hammer's declaration includes an exhibit showing that she has received harassing and threatening e-mails in the last few months, but Ms. Hammer is *not* a plaintiff in this lawsuit, and the e-mails she has received bear no nexus to the NRA's participation in this lawsuit. Indeed, many of them are dated well before the NRA filed its complaint on March 9. *See* DE20-3:5-18.

Second, there are other and better ways to deal with the speculative danger Plaintiffs understandably seek to avert. A decent society will not tolerate threats or acts of violence directed against litigants who seek to vindicate constitutional

rights. However, numerous state and federal laws already prohibit such misconduct; and aggrieved parties may invoke a broad range of remedies, retrospective and prospective, if they are actually "subjected to harassment, intimidation, threats, [or] . . . physical violence," DE20-1:1, in contravention of state or federal law. *See*, *e.g.*, Fla. Stat. § 790.401 (availability of protective orders), *id.* § 836.10 (prohibiting written threats); *id.* § 784.048 (prohibiting cyberstalking).

In other words, the general risk that litigants who carry the torch for controversial causes will be illegally threatened or harassed by ideological antagonists should not be lightly dismissed; but the proper solution to that problem is to vigorously *enforce* existing laws, not to ignore the "clear mandate" of Rule 10(a) and thereby *abridge* the rights of the press, the public, and other parties to the litigation. *See Frank*, 951 F.2d at 322 (emphasizing "the public's legitimate interest in knowing all of the facts involved" in a lawsuit). Similarly, the remedy for inappropriate public "censure," DE20:5, is more and better speech, "not enforced silence," *Whitney v. California*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring). Just as hecklers are not allowed to veto speech of which they disapprove, "potential[]" wrongdoers (*see* DE20-1 ¶ 4) should not be allowed to overcome the "customary and constitutionally-embedded presumption of openness in judicial proceedings," *Frank*, 951 F.2d at 323 (quoting *Stegall*, 653 F.2d at 186).

In sum, Plaintiffs have not identified a substantial privacy interest that would be served by allowing them to proceed under pseudonyms, and still less have they identified privacy concerns sufficiently compelling to overcome the strong and constitutionally-based presumption in favor of open judicial proceedings.

### CONCLUSION

The motion to proceed under pseudonyms should be denied.

Respectfully Submitted this 4th day of May, 2018,

PAMELA JO BONDI
ATTORNEY GENERAL

*/s/ Amit Agarwal*
Amit Agarwal (FBN 125637)
SOLICITOR GENERAL
Edward M. Wenger (FBN 85568)
CHIEF DEPUTY SOLICITOR GENERAL
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3681
(850) 410-2672 (fax)
amit.agarwal@myfloridalegal.com
*Counsel for the Defendants*

## CERTIFICATE OF SERVICE

I certify that on this 4th day of May, 2018, a copy of the foregoing was served on all counsel of record through the Court's CM/ECF Notice of Electronic Filing System.

/s/*Amit Agarwal*
Attorney

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, I certify that the foregoing Opposition and Incorporated Memorandum contains 4,758 words.

/s/ *Amit Agarwal*
Amit Agarwal