IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC, *et al.*, | ) ) ) |
| *Plaintiffs*, | ) ) Civil Action No. 4:18-cv-137-MW-CAS |
| v. | ) ) |
| PAM BONDI, *et al.*, | ) ) |
| *Defendants*. | ) ) |

**REPLY IN SUPPORT OF PLAINTIFFS'
MOTION TO PROCEED UNDER PSEUDONYMS**

Defendants declare that "[a] decent society will not tolerate threats or acts of violence directed against litigants who seek to vindicate constitutional rights." Response in Opposition 19-20 (May 4, 2018), Doc. 28 ("Opp."). For this very reason, despite the "presumption of openness in judicial proceedings," the courts have allowed parties to appear pseudonymously when identifying them to the public would pose a realistic threat to their safety or expose highly sensitive, personal information. *Plaintiff B v. Francis*, 631 F.3d 1310, 1315-16 (11th Cir. 2011). Ultimately, the choice to allow parties to remain anonymous lies in the discretion of the Court, based on an analysis of "all the circumstances of a given case." *Id.* at 1316. Defendants fail to show that the circumstances of this case warrant exposing the 19-year-old private citizens who wish to participate in this case to the harassment and threats that, Plaintiffs have shown, would almost

1

certainly be inflicted upon them if they are publicly identified with this highly controversial litigation in the current political environment.

1. As Defendants note, the context of this case cannot be understood apart from the tragic February 14 shooting at Marjory Stoneman Douglas High School and its aftermath. That event not only led to the enactment of the ban challenged in this case; it was the catalyst for a nationwide effort to restrict the possession and use of firearms. Funded by a group of well-heeled anti-gun organizations, activists have barnstormed the country advocating restrictions on the right to keep and bear arms. Alan Blinder et al., *In Gun Control Marches, Students Led but Adults Provided Key Resources*, N.Y. TIMES, Mar. 25, 3018, https://goo.gl/nqS4sc. Anti-gun forces have also pushed coordinated secondary boycotts not only of the NRA but of any business that does not take a sufficiently hard line against firearms. Tiffany Hsu, *Big and Small, N.R.A. Boycott Efforts Come Together in Gun Debate*, N.Y. TIMES, Feb. 27, 2018, https://goo.gl/TW2qhe. In the current environment, it is difficult to think of a topic as controversial and contentious as Second Amendment rights.

Nowhere has the controversy generated more heat than in Florida, ground zero of the current anti-gun movement. As detailed in the declaration submitted along with Plaintiffs' motion, the NRA's spokesperson in Florida has been subjected to an extraordinary level of harassment and threats. Defendants do not

2

mention the scores of threatening emails and phone calls directed against Ms. Hammer until the very end of their brief, and even then they do not seriously grapple with the nature of the harassment. Anti-gun individuals have called Ms. Hammer "a vile c*nt," have said she "should have been one of the victims" of the shooting, and have expressed "hope [that] it's someone in your family looking down the barrel of a gun or shot in the back trying to flee some great Floridian." Ex. 1 to Hammer Declaration, Doc. 20-3, at 1, 10, 11.

It is no wonder, then, that when Ms. Hammer began searching for Florida citizens willing to vindicate their Second Amendment rights in this lawsuit, many were "afraid of the harassment and threats they would be exposed to" and "refused to participate because of these concerns." Hammer Declaration ¶ 6. Nor can Defendants plausibly contest that it is reasonable for Ms. Doe and Mr. Doe to share those fears. Declaration of Jane Doe ¶ 4, Doc. 20-1; Declaration of John Doe ¶ 4, Doc. 20-2. Given the overwhelmingly anti-gun political environment and the threats and harassment Ms. Hammer has already suffered, who can blame them?

Defendants are thus wrong to suggest that if Plaintiffs' motion is denied, the NRA could easily find another member "who has standing to sue and is willing to file suit in his or her own name." Opp.13. This argument wholly ignores Ms. Hammer's declaration testimony that those she approached about the litigation repeatedly expressed the same concerns as Jane and John Doe. And what is more,

even if the argument is accepted at face value, the fact that some *other* individual might be willing to subject herself to threats and intimidation hardly negates the harm *Jane and John Doe* will have suffered by being shunned away from the courthouse door.

Florida argues that although Ms. Hammer has been subjected to "harassing and threatening emails in the last few months," there is no cause for concern that Jane and John Doe will face similar threats, because they "are not situated similarly to Ms. Hammer." Opp.19. But the differences between their situations *heighten* the concern of harassment. As Defendants themselves note, "Ms. Hammer is *not* a plaintiff in this lawsuit, and [some] of the e-mails she has received . . . are dated well before the NRA filed its complaint on March 9." *Id.* It hardly takes an inferential leap to conclude that *after* the filing of this lawsuit—which has garnered intense national-news attention[1]—similar harassment will be trained upon the very individuals *in whose name the lawsuit will be prosecuted*.

Defendants' suggestion that the plaintiffs here "face no greater threat of harm than the typical plaintiff alleging violations of Second Amendment Rights," Opp.12 (quotation marks omitted), thus cannot be taken seriously. To begin, courts

---

[1] *See, e.g.*, Steve Almasy, *NRA sues Florida to block part of new gun law*, CNN.com, Mar. 9, 2018, https://goo.gl/GmYzXj; Christopher Ingraham, *NRA sues Florida over plan to put age limits on rifle purchases*, WASH. POST, Mar. 1, 2018, https://goo.gl/wvNopU; *Florida shooting: NRA sues as Florida enacts gun-control law*, BBC, Mar. 10, 2018, https://goo.gl/cYDyfj.

*have* granted leave to proceed pseudonymously in Second Amendment cases, and Defendants are wrong to suggest otherwise. *See* Order, *John Doe. No. 1 v. Putnam Cty.*, 16-cv-8191 (S.D.N.Y. Oct. 21, 2016). But in any event, Plaintiffs of course do not contend that "*all* litigants seeking to vindicate Second Amendment rights should be allowed to proceed pseudonymously." *Id.* at 13. Much less do we suggest that anonymous pleading must be granted "in every case involving an arguably controversial issue." *Id.* at 18. Rather, our submission is that in a lawsuit concerning *this* issue (which is not simply "arguably" controversial), pending in *this* State (the epicenter of the #parkland movement), in *the present* political climate (the most anti-gun moment in recent memory), two nineteen-year-olds should be allowed to vindicate their constitutional rights in court without being subjected to a flood of e-mails and phone calls calling them "f*cking piece[s] of sh*t," comparing them to "ISIS" and "serial killer[s]," and expressing the wish that they "[r]ot in hell." Ex. 1 to Hammer Declaration, Doc. 20-3, at 4, 6, 14.

2. Florida is wrong to argue that Plaintiffs' request for leave to proceed anonymously fails because Plaintiffs do not "identify a 'substantial privacy right' that would be protected by their request to proceed anonymously." Opp.5. To be sure, leave to proceed under a pseudonym may only be granted where "the plaintiff has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Doe v. Frank*, 951

F.2d 320, 323 (11th Cir. 1992) (quotation marks omitted). But the cases make clear that rather than an independent "threshold" requirement, as Defendants insist, determining whether such a "substantial privacy right" exists is merely the *conclusion* of the court's inquiry into the three *Plaintiff B* factors and "*all* the circumstances of a given case." *Id.* Plaintiffs' "substantial privacy right" is thus merely the right not to be publicly identified as plaintiffs in litigation (1) which would associate them with a highly charged and volatile political issue and thus likely subject them to harassment and intimidation, and (2) where the tangible *prejudice* to the other side caused by their anonymity is (as discussed below) negligible.

Defendants cite to *Florida Action Comm., Inc. v. Seminole Cty.*, 2016 WL 6080988, at *1 (M.D. Fla. Oct. 18, 2016), but that case does not help them. In *Florida Action Committee*, the plaintiff membership organization challenged a local ordinance restricting certain activities by registered sex offenders, and it asked the court to allow certain of its members to participate in the litigation anonymously. But as the *Florida Action Committee* court noted, because the individuals in question were *registered* sex offenders, by definition their "identities and the crimes leading to their registration . . . are already matters of public record," such that "revealing [their] identities does not constitute the disclosure of intimate information." *Id.* at *2. That case thus bears no resemblance to the

circumstances here. And in any event, because the nature of the test governing pseudonymous pleading is so context-dependent, as *Florida Action Committee* itself notes, "[t]he mere fact that a person proceeded anonymously in one case is not helpful in determining whether a person should be permitted to proceed anonymously in another case." *Id.*

Florida also makes much of the fact that Section 1983 itself "establishes no exception to the general principle that the identity of the parties to a lawsuit should not be concealed." Opp. 13. That is beside the point. While an "express congressional grant of the right to proceed anonymously," *id.*, would be *sufficient* to warrant pseudonymous pleading, such statutory language plainly is not *necessary*—otherwise, *Plaintiff B* and all of the other cases in that line would have come out the other way. And as shown in our opening memorandum, Florida law *does* recognize and vigorously protect the important privacy rights of gun owners in maintaining anonymity. *See* FLA. STAT. §§ 790.0601, 790.335(1)(a)(2), (2). Defendants assert that these statutory protections "do not support" Plaintiffs' privacy interests in this case, but they utterly fail to explain why. Opp.7.

Defendants dispute the notion that broadcasting Plaintiffs' identities would violate their "substantial privacy right[s]." *Plaintiff B*, 631 F.3d at 1315, 1316. They argue that "*every litigant* in *every lawsuit* is ordinarily required to divulge such identifying information." Opp.6. But they emphasize the wrong words.

7

Plaintiffs nowhere dispute the *ordinary* "presumption in favor of parties' proceeding in their own names." *Plaintiff B*, 631 F.3d at 1315. The fact remains that "the rule is not absolute," and that this Court has discretion to allow pseudonymous pleading after a "careful[ ] review [of] *all* the circumstances." *Id.* at 1316. Here, for the reasons shown in our opening memorandum, those circumstances establish that Plaintiffs' have a "substantial privacy right" to remain anonymous in the context of this litigation.

     3.    Finally, Defendants wholly fail to show any clear and present prejudice that would flow from allowing pseudonymous pleading. Though Defendants suggest otherwise, *see* Opp.14 (suggesting that the inquiry "does not turn on . . . prejudice [to] other parties to the litigation"), this factor obviously must strongly inform this Court's "review [of] *all* the circumstances of [the] case," *Plaintiff B*, 631 F.3d at 1316.

    As an initial matter, the very fact that Defendants are *state officials representing the Government* powerfully demonstrates that the ordinary risk to private defendants' "good names and reputation" simply is not present here. *Frank*, 951 F.2d at 323-24. Florida resists this conclusion, suggesting that this consideration is entitled to no weight. Opp.9. But that approach would drain all meaning from one of the three factors that the Eleventh Circuit has *expressly instructed courts to consider* when weighing a request to proceed pseudonymously.

If the fact that the defendants are government officers does not count in the calculus, it is difficult to see why the Eleventh Circuit has deliberately enumerated it as one of the three "circumstances common to the 'Doe cases.'" *Frank*, 951 F.2d at 323. At the very least, this fact indicates that the reputational factors that most commonly undergird the ordinary presumption of openness simply do not obtain in this context.

Florida continues that it "must know who Jane Doe is to assess whether she currently has, and continues to maintain, standing to prosecute this action." Opp.15. Wrong again. The facts Jane Doe alleges in the proposed Amended Complaint either do or do not establish her standing; either way, at this stage in the litigation those facts must be taken as true—with respect to standing no less than any other issue. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (standing "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation"). And Defendants' contention that they "must know who Jane Doe is . . . in order to assess potential defenses to her two as-applied claims," Opp.16, gets them no further. For purposes of Defendants' Answer or Motion to Dismiss, they simply must take Jane Doe's allegations as they find them, in analyzing the merits of her as-applied claim. There is no place in the rules for engaging in "appropriate discovery" on such factual issues, *id.,* at this

stage in the litigation. And in all events, Jane Doe's as-applied claim—brought on behalf of *all* women subject to Florida's ban—is almost certain to turn on "legislative" facts concerning the justification for the ban, not "adjudicative" facts pertaining to Jane Doe's specific identity and activities.

To be sure, it is conceivable that the litigation will *in the future* develop in such a way that Defendants will need to learn Jane and John Doe's identities. Given the course Second-Amendment challenges of this nature generally take, Plaintiffs are highly skeptical that such a scenario will occur. And in any event, there will be time enough to tailor an appropriate mechanism to accommodate any such need Defendants may develop if and when it materializes. The mere *future possibility* that "Defendants *may* seek to argue" claims or defenses that make Jane and John Doe's identities material, *id.* (emphasis added) cannot justify the *present* harm that would be caused by stripping Plaintiffs of their anonymity.

For example, as Plaintiffs indicated in their opening brief, should their identities become material to the litigation they would be willing to consider sharing them with Defendants on an attorneys'-eyes-only basis. Defendants maintain that "[t]he attorney-client relationship [would be] impaired" by such a tailored solution, Opp.16, but whatever the force of that rejoinder in the context of private litigation, surely it carries diminished weight here, where defendants' counsel are the Solicitor General and other attorneys in his office representing state

officials sued in their official capacities. Moreover, an attorneys'-eyes-only limitation is a standard feature of protective orders. *See, e.g.*, *Sony Computer Entm't Am., Inc. v. NASA Elecs. Corp.*, 249 F.R.D. 378, 383 (S.D. Fla. 2008).

Defendants' are thus left bottoming their claim of prejudice on the fact that an attorneys'-eyes-only disclosure would "needlessly complicate the conduct of the proceedings." Opp. 17; *see also id.* at 16 (such an approach would be "compicat[ed]" by "state public-records requirements"). Here again, that claim ignores the reality that such limitations are a commonplace feature of protective orders and have not been found to unduly complicate litigation. Moreover, if "[a] decent society will not tolerate threats or acts of violence directed against litigants who seek to vindicate constitutional rights," *id.* at 19–20, surely that society can call upon the State's legal representation to suffer through these types of minor inconveniences in the name of protecting against such threats and violence.

Finally, while the State is right to note that the presumption of openness also "protects the public's legitimate interest in knowing all of the facts involved," *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 685 (11th Cir. 2001), it fails to explain how that legitimate interest will be appreciably advanced by publicizing the types of specific facts at issue here: Plaintiffs' names, addresses, and other identifying information. Whether or not Plaintiffs remain anonymous, the public will still be able to access the public filings in the case, read and assess the

competing legal and factual arguments that the parties bring to bear, and stay abreast of all meaningful, public developments in the case. *Additionally* publicizing the *specific identifying information* at issue here would only enable the very type of harassment and threatening communications that Plaintiffs have a "substantial privacy right" in avoiding. *Plaintiff B*, 631 F.3d at 1316.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully urge the Court to grant their Motion for Leave To Proceed Under Pseudonyms.

Dated:  May 7, 2018

Respectfully submitted,

David H. Thompson, Bar No.
   6319891
John D. Ohlendorf\*
Davis Cooper, Bar No. 114059
COOPER & KIRK, PLLC
1523 New Hampshire Avenue, N.W.
Washington, D.C. 20036
(202) 220-9600
(202) 220-9601 (fax)
dthompson@cooperkirk.com

s/ Kenneth Sukhia
Kenneth Sukhia, Bar No. 266256
C. Vincent LoCurto, Bar No. 0041040
SUKHIA & WILLIAMS LAW GROUP, PLLC
902 N. Gadsden Street
Tallahassee, Florida 32303
(850) 383-9111
ksukhia@sukhiawilliamslaw.com

   \*Appearing *pro hac vice*

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that on May 7, 2018 a true and correct copy of the foregoing was filed using the Northern District Clerk's EM/ECF filing system which will generate an automated email notice and service copy to record counsel below:

Amit Agarwal,  *Amit.Agarwal@myfloridalegal.com*
Edward M. Wenger,  *Edward.Wenger@myfloridalegal.com*
Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399

*Attorneys for Defendants*

                                                                    s/ Kenneth Sukhia
                                                                     Kenneth W. Sukhia