# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC.,

    *Plaintiff,*

v.                            Case No. 4:18cv137-MW/CAS

PAM BONDI, in her official
capacity as Attorney General
of Florida, et al.,

    *Defendants.*

_____/

## ORDER DENYING MOTION TO PROCEED UNDER PSEUDONYMS

The National Rifle Association of America, Inc., ("NRA") filed this lawsuit on March 9, 2018. ECF No. 1. At the time, the NRA was the only plaintiff. *Id.* Since then, the NRA has moved to amend its original complaint and add a second plaintiff—a nineteen-year-old female identified as Jane Doe. ECF No. 18. Among other changes, the amended complaint also includes allegations about a nineteen-year-old male identified as John Doe. ECF No. 18-1, at 9–10.

Ordinarily, parties referred to in a complaint must be identified by their real names. The Federal Rules of Civil

1

Procedure specifically provide that "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). Similarly, courts have long recognized that "[l]awsuits are public events" and that the public has a "legitimate interest in knowing all of the facts involved [in a case], including the identities of the parties." *Doe v. Frank*, 951 F.2d 320, 322–24 (11th Cir. 1992). But that doesn't mean that parties can never use pseudonyms. *See Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (explaining that Rule 10(a)'s naming requirement "is not absolute"). Indeed, even though "[t]he Federal Rules of Civil Procedure do not include provisions for plaintiffs wishing to proceed anonymously[,] . . . courts have allowed plaintiffs to conceal their true identities . . . in a select number of cases." *Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007) (citations omitted).

Accordingly, when the NRA moved to amend its complaint, it also filed a motion for leave to proceed under pseudonyms. ECF No. 19. Defendants opposed the motion, *id.* at 1, so this Court ordered Defendants to file a response and permitted the NRA to file a reply. Having considered the filings and the applicable law, this Court finds that the NRA's motion to proceed under pseudonyms, ECF No. 19, is due to be **DENIED**.

I. *Background*

The Marjory Stoneman Douglas High School Public Safety Act[1] ("Act") became part of Florida law on March 9, 2018. Among other things, the Act provides that "[a] person younger than 21 years of age may not purchase a firearm." *See* Ch. 2018-3, § 11, Laws of Fla. (codified as § 790.065(13), Fla. Stat.). The NRA sued to challenge this portion of the act (the "ban") and argues that it violates the Second Amendment[2] to the United States Constitution. ECF No. 1. Specifically, the NRA mounts both a facial challenge (i.e., a claim that no set of circumstances exists under which the ban would be valid)[3] and an as-applied challenge (i.e., a claim that applying the ban to females between the ages of

---

[1] *See* Ch. 2018-3, § 1, Laws of Fla. The Act purports to address "the crisis of gun violence, including but not limited to, gun violence on school campuses." *Id.* § 2. It was passed shortly after the Stoneman Douglas High School shooting in Parkland, Florida. *See generally Stoneman Douglas High School Shooting*, Wikipedia, https://en.wikipedia.org/wiki/Stoneman_Douglas_High_School_ shooting [https://perma.cc/65GK-QMRW].

[2] The Second Amendment reads: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Supreme Court has held that the Second Amendment confers an individual right to keep and bear arms, *see District of Columbia v. Heller*, 554 U.S. 570 (2008), and that "the Second Amendment right is fully applicable to the States," *McDonald v. City of Chicago*, 561 U.S. 742, 750 (2010).

[3] *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid.").

3

18 and 21 is unconstitutional). *See id.* at 8–10. The NRA also raises the same facial and as-applied challenges under the Equal Protection clause of the Fourteenth Amendment. *Id.* at 10–12.

The NRA's amended complaint includes the same four counts as its original complaint but also supplements those counts by making specific references to alleged NRA members. For example, in Count 2 (the as-applied Second Amendment claim) the amended complaint alleges that the ban "particularly infringes upon . . . the Second Amendment rights of Plaintiff Jane Doe." ECF No. 18-1, at 12. Elsewhere, the amended complaint refers to "John Doe" and notes that "[b]ut for Section 790.065(13)'s blanket ban, Mr. Doe would purchase a long-gun forthwith." *Id.* at 10.

In moving for leave to proceed with the pseudonyms mentioned above, the NRA also filed three supporting affidavits. The first affidavit is signed by Jane Doe and explains that she is a "19-year-old female resident of Florida" who "desire[s] to participate in this litigation as a plaintiff, to vindicate [her] constitutional right to keep and bear arms." ECF No. 20-1. The affidavit further explains that, "[b]ecause of the highly controversial nature of this litigation[,]" Jane Doe is "afraid that if [her] association with the lawsuit became public, [she] would be

4

subjected to harassment, intimidation, threats, and potentially even physical violence." *Id.*

The second affidavit is signed by John Doe and contains representations similar to those in Jane Doe's affidavit. *See* ECF No. 20-2.

Finally, the third affidavit is signed by Marion Hammer (a former president of the NRA). ECF No. 20-3. In her affidavit, Ms. Hammer states that she "frequently represent[s] the NRA's interests in the State of Florida" and has "been identified in national news stories associated with [this] suit." *Id.* at 1. Ms. Hammer further explains that, "[a]fter news of the Parkland shooting broke," she started receiving "numerous harassing emails and phone calls threatening [her] life and physical well-being" that "continue to this day."[4] *Id.* at 2. Ms. Hammer attached copies of some of those harassing emails to her affidavit. *Id.* at 5–18.

---

[4] It is clear that much (if not all) of the harassment Ms. Hammer has suffered is the result of her involvement with the NRA and this lawsuit. Several of the emails Ms. Hammer attached to her affidavit specifically refer to guns, shootings, and related terms. Due to the offensive nature of the emails, this Court chooses not to repeat any specific language here. Suffice it to say, the emails are hateful and abhorrent.

5

II. *Analysis*

As this Court has already noted, "[t]he Federal Rules of Civil Procedure do not include provisions for plaintiffs wishing to proceed anonymously." *Rose*, 240 F.R.D. at 266. Moreover, the Supreme Court has yet to announce a standard that courts should apply under these circumstances. *Cf., e.g.*, *Qualls v. Rumsfeld*, 228 F.R.D. 8, 10 (D.D.C. 2005) (noting that the Supreme Court has not "expressly condoned th[e] practice" but has "from time to time . . . permitted pseudonymous litigation to proceed without comment"). Consequently, the standards for determining when the use of pseudonyms is appropriate have been entirely crafted by the lower federal courts. *See* Jayne S. Ressler, *Privacy, Plaintiffs, and Pseudonyms: The Anonymous Doe Plaintiff in the Information Age*, 53 U. Kan. L. Rev. 195, 225–26 (2004) [hereinafter *PPP*].

If it were *entirely* up to this Court, this Court would not hesitate to grant the NRA's motion. One need only look to the harassment suffered by some of the Parkland shooting survivors to appreciate the vitriol that has infected public discourse about the Second Amendment.[5] And this Court has no doubt that the

---

[5] There are legions of news reports describing the harassment and threats suffered by the Parkland shooting survivors. *See, e.g.*, Chantal Da

6

harassment goes both ways; Ms. Hammer's affidavit proves just that. *See* ECF No. 20–3. People—especially teenagers—should not have to subject themselves to threats of violence, continued harassment,[6] and a concerning amount of public scrutiny just to share their views about the Second Amendment (whatever those views may be).

But it's not entirely up to this Court. That is, this Court is bound to follow precedent set by the Eleventh Circuit Court of Appeals. *See, e.g.*, *McGinley v. Houston*, 361 F.3d 1328, 1331 (11th Cir. 2004) ("A circuit court's decision binds the district courts sitting within its jurisdiction . . . ."); *cf. also Hand v. Scott*, No. 18-11388-G, 2018 WL 1959634, at *2 (11th Cir. Apr. 25, 2018) (reminding this Court that "binding precedent . . . cannot . . .

---

Silva, *Florida School Shooting Survivors Receiving Death Threats*, Newsweek (Feb. 26, 2018), http://www.newsweek.com/florida-school-shooting-survivors-death-threats-819484 [https://perma.cc/P2UY-MMVG]. Some of the survivors who have taken more prominent roles in public discourse have even been the subject of conspiracy theories. *See, e.g.*, Daniel Arkin & Ben Popken, *How the Internet's Conspiracy Theorists Turned Parkland Students into 'Crisis Actors'*, NBC News (Feb. 21, 2018), https://www.nbcnews.com/news/us-news/how-internet-s-conspiracy-theorists-turned-parkland-students-crisis-actors-n849921 [https://perma.cc/B3AM-RM3N].

[6] As a point of reference, family members of a victim from the Sandy Hook shooting continue to receive death threats "[m]ore than five years after" the shooting occurred. Bethania Palma, *Are Parkland School Shooting Survivors Receiving Death Threats from NRA Members?*, Snopes (Feb. 27, 2018), https://www.snopes.com/news/2018/02/27/parkland-school-shooting-survivors-receiving-death-threats-nra-members/ [https://perma.cc/UUU9-RAZ6].

7

simply be ignored"). And that precedent is unfortunately restrictive here.

The Eleventh Circuit has made it clear that pseudonyms may only be used in "exceptional" cases, *Frank*, 951 F.2d at 323, and that there is "a strong presumption in favor of parties' proceeding in their own names," *Francis*, 631 F.3d at 1315. That presumption can only be overcome where the party seeking to proceed pseudonymously shows that they have "a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Frank*, 951 F.2d at 323 (quoting *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. Unit A Aug. 1981)). In determining whether Jane and John Doe have such a right, this Court starts its analysis with the following three factors: (1) whether they are "seeking anonymity challenging government activity," (2) whether they will be "required to disclose information of the utmost intimacy", and (3) whether they will be "compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution." *See Francis*, 631 F.3d at 1316.

This Court finds that the first factor does not weigh in favor of using pseudonyms in this case (although it doesn't weigh against

8

such use either). If the NRA were suing private parties, then there would be a risk of "damage to [those parties'] good names and reputation" as well as a risk of "economic harm." *See S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 713 (5th Cir. 1979) [hereinafter *SMU*]. But the NRA is not suing private parties here; it is suing government actors in their official capacities. *See* ECF No. 18-1, at 1. Suits challenging the constitutional, statutory or regulatory validity of government activity (like this case) "involve no injury to the Government's 'reputation.'" *SMU*, 599 F.2d at 713. Accordingly, this first factor only has a neutral effect. *Cf. Frank*, 951 F.2d at 324 ("[T]he fact that Doe is suing the Postal Service does not weigh in favor of granting Doe's request for anonymity."); *cf. also Roe v. Aware Women Ctr. for Choice, Inc.*, 253 F.3d 678, at 686 (11th Cir. 2001) ("[N]o published opinion that we are aware of has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity.").

As to the second factor, the Eleventh Circuit has explained that "the 'information of utmost intimacy' standard applies to cases involving issues such as abortion . . . and prayer and personal religious beliefs." *Francis*, 631 F.3d at 1316 (citation omitted). One

9

would think that the standard covers more, but apparently it doesn't. Indeed, courts have denied the use of pseudonyms in cases involving matters that many would consider extremely private.[7]

Here, the NRA has not really identified any information of "utmost intimacy" that would be revealed if Jane and John Doe were forced use their real names. All we know so far is that they're nineteen years old, they live in Florida, they're members of the NRA, they haven't been convicted of a felony, they haven't been adjudicated mentally defective, they want to buy firearms, and they want to support the NRA with this lawsuit. *See* ECF No. 18-

---

[7] *Cf. Francis*, 631 F.3d at 1316 (noting that "courts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause her to 'suffer some personal embarrassment'" (quoting *Frank*, 951 F.2d at 324)); *Frank*, 951 F.2d at 324 (finding "no abuse of discretion in the district court's implicit conclusion that the stigma involved in Doe's disclosure [of alcoholism] does not rise to the level necessary to overcome the presumption of openness in judicial proceedings); *Luckett v. Beaudet*, 21 F. Supp. 2d 1029, 1030 n.1 (D. Minn 1998) ("Even in the abortion context, anonymity is not automatic."); *Doe v. Goldman*, 169 F.R.D. 138, 141 (D. Nev. 1996) (police officer was concerned that an allegation that he had attempted suicide by putting a gun to his head would stigmatize him in the employment context; court held that there was "no risk of stigma sufficient to overcome the presumption against proceeding under a fictitious name"); *Doe v. Bell Atl. Bus. Sys. Servs., Inc.* 162 F.R.D. 418, 422 (D. Mass. 1995) (plaintiff claimed she was sexually assaulted, was concerned she that she was infected with HIV as a result, and feared that she would suffer "intense embarrassment and shame within her community"; court held plaintiff had "not demonstrated such a compelling need for privacy as to outweigh the rights of the defendants and the public to open proceedings"); *see also PPP*, 53 U. Kan. L. Rev. at 196 (noting that relatives of 9-11 victims who were "grieving and wary of publicity" were denied their request to pursue their claims anonymously).

10

1; ECF No. 20-1; ECF No. 20-2. This type of information does not raise the same privacy concerns as the information at issue in cases where pseudonyms have been allowed. *Cf. SMU*, 599 F.2d at 712–13 (collecting cases and listing "birth control, abortion, homosexuality, [and] the welfare rights of illegitimate children or abandoned families" as examples of "matters of a sensitive and highly personal nature" (footnotes omitted)).

Finally, the third factor does not help the NRA either. That is, there is no information in the record suggesting that Jane or John Doe have engaged in criminal activity or that they intend to do so. Nor has the NRA alleged that such information may become part of this case in the future. Accordingly, none of the three factors weigh in favor of using pseudonyms.

Of course, none of these three factors take into account Jane and John Doe's concerns about the potential harassment and threats they face. To be clear, this Court does not intend to diminish those concerns. This Court recognizes that it has "discretion"[8] and "should carefully review *all* the circumstances of a given case" before deciding "whether the customary practice of

---

[8] Perhaps even "broad discretion." *See Francis*, 631 F.3d at 1320 (Moody, J., dissenting).

disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *See Frank*, 951 F.2d at 323. Indeed, the three factors this Court has considered so far "were not intended as a 'rigid, three-step test for the propriety of party anonymity.'" *Id.* (quoting *Stegall*, 653 F.2d at 185). Rather, courts have also considered additional factors "such as whether the plaintiffs were minors, whether they were threatened with violence or physical harm by proceeding in their own names, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant." *Francis*, 631 F.3d at 1316 (citations omitted).

But even when this Court takes into account the threats that have been made against Ms. Hammer—as well as Jane and John Doe's concerns that they'll potentially receive similar threats—it does not seem this case fits the mold. That is, even though this Court ostensibly has discretion to grant the NRA's motion, the precedent that binds this Court seems to counsel against such use. One need only consider the case *Doe v. Stegall*[9] to understand why.

---

[9] *Stegall* was decided by the former Fifth Circuit in August 1981. *See* 653 F.2d at 180. The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

12

In *Stegall*, a mother brought suit on behalf of her two minor children to complain about "religiously-oriented ceremonies" that were being conducted at the children's middle school. 653 F.2d at 181–82. "Fearing harassment and violence directed against [her] family generally and the [two] children in particular should their names be publicly disclosed, the [mother] asked that [she and the children] be permitted to proceed under fictitious names."[10] *Id.* at 182. The mother "offered several documentary exhibits to bolster [her] assertions that they might be subjected to retaliatory harassment or violence if their identities were publicly revealed." *Id.* at 182 n.6. "The exhibits include[d] local newspaper reports of public reaction to the lawsuit voiced at a [local school-board] meeting." *Id.* Some of the comments voiced at the meeting appear to be just as hateful as the emails Ms. Hammer attached to her affidavit in this case.[11]

---

[10] The mother agreed to share her and the children's identities to the defendants and to the Court; the motion "merely sought to bar disclosure to the general public." *Stegall*, 653 F.2d at 182.

[11] The Fifth Circuit certainly found the comments in *Stegall* to be serious. *See* 653 F.2d at 186 ("Evidence on the record indicates that the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed . . . ."). If anything, the comments in *Stegall* could be viewed as *more* concerning because they were made in person (i.e., unlike the messages Ms. Hammer received, which were all over email or phone). People are generally more likely to make threats anonymously than in person. *Cf. United States v. Wheeler*, 776 F.3d 736, 745 (10th Cir. 2015) (noting that the

Ultimately, the district court denied the mother's request for anonymity. *Id.* at 183. On appeal, the Fifth Circuit reversed and held that the mother and children "should have been permitted to proceed under fictitious names." *Id.* at 183–87. But the court didn't reach that decision simply because of the threats and harassment that the mother was afraid of. Indeed, the court explicitly held that "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity." *Id.* at 186. Instead, what "tip[ped] the balance" for the court was the fact that

---

anonymity afforded by the internet "allow[s] authors to make menacing statements they would never consider making to an individual in person."). As such, one might take a threat made in person much more seriously than one made online. *But see id.* (noting that "[s]everal attributes of the Internet substantially amplify the fear an individual can instill via threats or incitement"); *see also United States v. Bagdasarian*, 652 F.3d 1113, 1126 (9th Cir. 2011) ("Certainly as of fall 2008, our country's collective experience with internet threats and postings that presaged tragic events made it all the more likely that a reasonable person would foresee that even anonymous internet postings would be perceived as threats.").

Moreover, the threats in *Stegall* were made by members of a very small community. The school-board meeting took place in Rankin County, Mississippi, and the middle school was housed in the town of Pelahatchie. *See Stegall*, 653 F.2d at 182. Rankin County had a population of only ~40,000 at the time, and Pelahatchie had a population of only ~1,500. *See* U.S. Dep't of Commerce; Bureau of the Census, *1980 Census of Population: Number of Inhabitants, Mississippi* (1982), at 12, 21, *available at* https://www2.census.gov/prod2/decennial/documents/1980a_msABCD-01.pdf [https://perma.cc/BKG4-ERWJ]. It goes without saying that threats are more serious when they are made closer to home (especially when that "home" is relatively small).

14

there were "other factors weighing in favor of maintaining the [parties'] anonymity." *Id*.

For instance, the court highlighted the fact that the case involved complaints "of public manifestations of religious belief." *Id*. The court went on to explain that "religion is perhaps the quintessentially private matter." *Id*.; *see also id*. (emphasizing "the fundamental privateness of the religious beliefs" at issue). No court has held the same about the Second Amendment or the rights that it confers. What's more, this Court has already noted that there are few privacy concerns at issue in this case.[12] *See supra* pp. 10–11.

Moreover, the *Stegall* court also explained that "[a] final factor" it found "especially persuasive" was "the fact that plaintiffs [were] children." 653 F.2d at 186. That is, the case involved middle-school children (i.e., likely no older than fourteen years old). *Cf. id*. By contrast, Jane and John Doe are both nineteen years old. ECF No. 18-1; ECF No. 18-2. True, they are still young, but maybe not quite so young that they share the same "special status and

---

[12] Again, this Court does not intend to diminish the parties' concerns. This Court recognizes that the Second Amended right is critical. This Court merely notes that the issue here really isn't "privacy" per se. Instead, the issue is Jane and John Doe's concerns for threats and violent reprisal.

vulnerability" that the "child-litigants" in *Stegall* had. *Cf.* 653 F.2d at 186.

In sum, based on the precedent that binds this Court (particularly *Doe v. Stegall*), this Court finds that mere evidence of threats and harassment made online is insufficient to outweigh the customary and constitutionally-embedded presumption of openness in judicial proceedings. This is especially true where the targets of such threats and harassment are not minors and where the subject at issue does not involve matters of utmost intimacy.

To be fair, a lot has changed in society since *Stegall* was decided. Today we have the internet, social media, and the 24-hour news cycle. What this means is that if a person attaches their name to a lawsuit—and especially if that lawsuit is sensational—then *everyone* will quickly be made aware of it. Articles get posted online, and the responding comments, tweets, and whatever-else-have-yous often devolve into a rhetorical barrage of hate. Unfortunately, it seems the internet just doesn't always bring out the best in us.

16

Maybe the law should be modified to reflect these changes.[13] But it's not this Court's job to change the law; this Court's job is to apply the law. *Cf., e.g.*, ECF No. 8, at 3 (denying a motion to intervene and explaining that "[i]t is not this Court's job to fashion new laws."). And the law unfortunately directs that the NRA's motion must be denied.

Accordingly,

**IT IS ORDERED:**

1. The NRA's motion to proceed under pseudonyms, ECF No. 19, is **DENIED**.

2. The NRA must file its amended complaint—without pseudonyms—no later than May 21, 2018.

**SO ORDERED on May 13, 2018.**

          <u>**s/Mark E. Walker**</u>
          **United States District Judge**

---

[13] *See, e.g.*, *PPP*, 53 U. Kan. L. Rev. at 195 ("Rule 10(a) imposes a cost that could not have been foreseen [when it was promulgated] in 1938—an invasion of privacy. The burden of this new expense is shared by both plaintiffs and society alike, as a result of a judicial system that often appears to value openness at any price. The time has come, therefore, for a more liberal approach to pseudonymous plaintiffs.").