## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION          )
OF AMERICA, INC., *and*             )
RADFORD FANT,                       )
      *Plaintiffs,*            )
                              )  Civil Action No. 4:18-cv-137-
  v.                                )  MW-CAS
                              )
RICK SWEARINGEN, in his Official     )
Capacity as Commissioner of the Florida )
Department of Law Enforcement, *and* )
ASHLEY MOODY,                       )
in her Official Capacity             )
as Attorney General of Florida,      )
      *Defendants.*            )

## EVERYTOWN FOR GUN SAFETY SUPPORT FUND'S AMICUS CURIAE
## BRIEF IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

William J. Taylor, Jr.
NYS Bar No. 3958956
Admitted in the N.D. of Fla.
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017
(646) 324-8215
wtaylor@everytown.org

Darren A. LaVerne*
Karen S. Kennedy*
Jessica K. Weigel*
Dayna M. Chikamoto*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9190
* *Of Counsel*

*Attorneys for Everytown for Gun
Safety Support Fund*

## CORPORATE DISCLOSURE STATEMENT

Everytown for Gun Safety Support Fund has no parent corporations.  It has

no stock and hence no publicly held company owns 10% or more of its stock.

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF INTEREST ................................................................. 1

INTRODUCTION AND SUMMARY OF ARGUMENT ........................................ 2

ARGUMENT ..................................................................................... 5

I.    RESTRICTIONS ON THE TRANSFER OF FIREARMS TO
PERSONS UNDER 21 COMPORT WITH HISTORICAL
UNDERSTANDINGS OF THE SECOND AMENDMENT—AND
THUS REGULATE CONDUCT OUTSIDE ITS SCOPE ............................ 5

    A.    The relevant time period for purposes of the historical analysis
begins in 1868 when the Fourteenth Amendment was ratified ........... 7

    B.    For most of the history of the United States, including when the
Second and Fourteenth Amendments were ratified, persons under
21 were considered minors .................................................... 9

    C.    Laws restricting the sale or transfer of firearms to minors have
existed for more than 150 years. ........................................... 11

    D.    Courts have acknowledged the longstanding history of age-based
restrictions on the transfer of firearms and have upheld such
restrictions against Second Amendment challenges. ...................... 13

II.    EVEN IF THIS COURT FINDS THAT THE CONDUCT
REGULATED BY SECTION 790.065(13) IS WITHIN THE SCOPE
OF THE SECOND AMENDMENT, THIS COURT SHOULD APPLY
INTERMEDIATE SCRUTINY TO THE LAW AND UPHOLD IT .......... 18

III.    PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE
AGE IS NOT A SUSPECT CLASSIFICATION ........................... 19

CONCLUSION ................................................................................ 21

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ..................................................................2

*Colo. Outfitters Ass'n v. Hickenlooper*,
   Nos. 14-1290, 14-1292 (10th Cir.) .......................................................1

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)..................................................................*passim*

*Drake v. Filko*,
   724 F.3d 426 (3d Cir. 2013) ..................................................................9

*Ezell v. City of Chi.*,
   651 F.3d 684 (7th Cir. 2011) ................................................................8

*Friedman v. City of Highland Park*,
   784 F.3d 406 (7th Cir. 2015) ................................................................8

*Fyock v. City of Sunnyvale*,
   779 F.3d 991 (9th Cir. 2015) ................................................................9

*GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012) ....................................................3, 6, 7

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
   No. 16-13486 (11th Cir.) .......................................................................2

*GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*,
   No. 4:14-cv-0139 (N.D. Ga.)..................................................................2

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018), *petition for cert. filed*, No. 18-1272
   (U.S. Apr. 1, 2019) ...............................................................................7

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
   No. 3:18-cv-00103, 2019 WL 4923955 (W.D. Va. Oct. 4, 2019),
   *appeal docketed*, No. 19-2250 (4th Cir. Nov. 7, 2019)................................*passim*

*Horsley v. Trame*,
    808 F.3d 1126 (7th Cir. 2015) ...................................................................10, 16

*Kimel v. Fla. Bd. of Regents*,
    528 U.S. 62 (2000)...................................................................................5, 20

*Mass. Bd. of Ret. v. Murgia*,
    427 U.S. 307 (1976)........................................................................................20

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*,
    700 F.3d 185 (5th Cir. 2012) .................................................................*passim*

*Nat'l Rifle Ass'n of Am., Inc. v. McCraw*,
    719 F.3d 338 (5th Cir. 2013) ..........................................................................17

*Powell v. Tompkins*,
    926 F. Supp. 2d 367 (D. Mass. 2013), *aff'd on other grounds*, 783
    F.3d 332 (1st Cir. 2015)..................................................................................16

*Rehaif v. United States*.
    139 S. Ct. 2191 (2019) (Alito, J., dissenting)...................................................2

*Rhode v. Becerra*,
    No. 3:18-cv-00802 (S.D. Cal.)...........................................................................1

*Rupp v. Becerra*,
    401 F. Supp. 3d 978 (C.D. Cal. 2019), *appeal docketed*, No. 19-
    56004 (9th Cir. Aug. 28, 2019)..........................................................................2

*Silvester v. Harris*,
    843 F.3d 816 (9th Cir. 2016) ..........................................................................18

*United States v. Focia*,
    869 F.3d 1269 (11th Cir. 2017) ....................................................................3, 6

*United States v. Greeno*,
    679 F.3d 510 (6th Cir. 2012) ............................................................................8

*United States v. Jones*,
    673 F. Supp. 2d 1347 (N.D. Ga. 2009)............................................................19

*United States v. Nowka*,
  No. 5:11-cr-00474-VEH-HGD, 2012 WL 2862061 (N.D. Ala. May
  10, 2012), *report and recommendation adopted*, No. 5:11-cr-474-
  VEH-HGD, 2012 WL 2862053 (N.D. Ala. July 11, 2012)...............................18

*United States v. Rene E.*,
  583 F.3d 8 (1st Cir. 2009).............................................................................7, 16

*United States v. Skoien*,
  614 F.3d 638 (7th Cir. 2010) (en banc) ...........................................................6

*United States v. Torres*,
  911 F.3d 1253 (9th Cir. 2019) .........................................................................6

*United States v. White*,
  593 F.3d 1199 (11th Cir. 2010) ....................................................................6, 8

**State Cases**

*Biffer v. City of Chi.*,
  116 N.E. 182 (Ill. 1917)..................................................................................13

*Coleman v. State*,
  32 Ala. 581 (1858) ..........................................................................................12

*In re Jordan G.*,
  33 N.E.3d 162 (Ill. 2015).................................................................................18

*Norman v. State*,
  No. SC15-650 (Fla.).........................................................................................2

*Parman v. Lemmon*,
  244 P. 227 (Kan. 1925)....................................................................................13

*People v. Aguilar*,
  2 N.E.3d 321 (Ill. 2013)...............................................................................7, 17

*People v. Mosley*,
  33 N.E.3d 137 (Ill. 2015).................................................................................18

*State v. Allen*,
  94 Ind. 441 (1884) ..........................................................................................12

*State v. Callicutt,*
   69 Tenn. 714 (1878)................................................................12

*State v. Quail,*
   92 A. 859 (Del. Gen. Sess. 1914) .............................................13

*State in Interest of J.M.,*
   144 So. 3d 853 (La. 2014) ........................................................17

*Walker v. Walker,*
   17 Ala. 396 (1850)....................................................................12

*Whitt v. Whitt,*
   490 S.W.2d 159 (Tenn. 1973) ..................................................12

**Federal Statutes**

18 U.S.C. § 922(b)(1) and (c)(1)...........................................4, 14, 15

42 U.S.C. § 1983 ............................................................................2

**State Statutes**

Florida Statute § 790.065(13) ...................................................*passim*

**Constitutional Provisions**

Second Amendment ...................................................................*passim*

Fourteenth Amendment .............................................................*passim*

**Other Authorities**

Bill Analysis and Fiscal Impact Statement for S.B. 7026 ........................19

Blackstone, 1 *Commentaries On the Laws of England* 451 (1st ed.
   1765) .......................................................................................10

Infant, *Black's Law Dictionary* (1st ed. 1891)........................................10

James Kent, 2 *Commentaries on American Law* 191 (1827), Lecture
   XXXI Of Infants ......................................................................10

Larry D. Barnett, *The Roots of Law* 15 Am. U. J. Gender, Soc. Pol'y
 & L. 613 (2007) .................................................................................10

Op. of Ky. Att'y Gen. OAG 94-14 (Mar. 3, 1994)...................................10

T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22 (1960) .........10

Thomas M. Cooley, *A Treatise on Constitutional Limitations* (5th ed.
 1883) ..................................................................................................13

Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev.
 55 (2016)............................................................................................10

## STATEMENT OF INTEREST

Amicus curiae Everytown for Gun Safety Support Fund ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the nation's largest gun violence prevention organization, with nearly six million supporters across all fifty states.  Everytown for Gun Safety was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after the murder of twenty children and six adults at an elementary school in Newtown, Connecticut by a 20-year-old person using a firearm.  The mayors of more than twenty-five Florida cities are members of Mayors Against Illegal Guns.  Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws.

Everytown's mission includes defending common-sense gun safety laws by filing amicus briefs that provide historical context and doctrinal analysis that might otherwise be overlooked.  Everytown has filed such briefs in numerous Second Amendment cases—including in cases, like this one, involving challenges to restrictions on the purchase and sale of firearms, *see, e.g.*, *Colo. Outfitters Ass'n v. Hickenlooper*, Nos. 14-1290, 14-1292 (10th Cir.); *Rhode v. Becerra*, No. 3:18-cv-00802-BEN-JLB (S.D. Cal.), and in cases in Florida, *see Norman v. State*, No. SC15-

650 (Fla.), the Eleventh Circuit, *see GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, No. 16-13486 (11th Cir.), and District Courts in this Circuit, *see GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Eng'rs*, No. 4:14-cv-0139-HLM (N.D. Ga.). Several courts have also cited and expressly relied on Everytown's amicus briefs in deciding Second Amendment and other gun cases. *See Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rupp v. Becerra*, 401 F. Supp. 3d 978, 991-92 & n.11 (C.D. Cal. 2019), *appeal docketed*, No. 19-56004 (9th Cir. Aug. 28, 2019); *see also Rehaif v. United States*. 139 S. Ct. 2191, 2210-11 nn.4 & 7 (2019) (Alito, J., dissenting).

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs bring suit against the Attorney General of Florida and the Commissioner of the Florida Department of Law Enforcement, presenting constitutional claims and seeking declaratory and injunctive relief under 42 U.S.C. § 1983. Plaintiffs allege that Florida Statute § 790.065(13), which prohibits persons under 21 years of age from purchasing firearms and licensed importers, manufacturers, or dealers from making or facilitating the sale or transfer of a firearm to a person under 21, subject to a number of exceptions, violates their rights under the Second and Fourteenth Amendments.[1] *See* Fla. Stat. § 790.065(13); Second Am.

---

[1] The prohibition does not apply to the purchase of a rifle or shotgun by a law enforcement officer, correctional officer, or servicemember. Fla. Stat. § 790.065(13).

Compl. ¶¶ 25-33.

Notably, the challenged statute does not restrict *possession* of firearms. Nor does the challenged statute prohibit the *acquisition* of firearms by persons aged 18 to 20 years old. Persons aged 18 to 20 may legally acquire firearms in ways not restricted by Florida law, including by receiving a firearm as a gift from someone other than a licensed importer, manufacturer, or dealer.

After the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Eleventh Circuit and other courts adopted a two-step framework for evaluating Second Amendment challenges to laws like the statute at issue here. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 n.34 (11th Cir. 2012). Under the first step, courts look to the historical record to determine whether the conduct restricted by the challenged law traditionally has been protected by the Second Amendment. *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017). As set forth below, for more than 150 years, courts and legal scholars have considered laws restricting the ability of persons under 21 (the age of majority under the common law) to purchase firearms to be consistent with the Second Amendment. Indeed, the Supreme Court acknowledged in *Heller* that the Second Amendment right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose[,]" and that longstanding forms of firearms regulation, including "laws imposing conditions and qualifications on the

3

commercial sale of arms," are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26.  Accordingly, Section 790.065(13) does not infringe upon a right protected by the Second Amendment.

Moreover, even if the law did burden conduct within the scope of the Second Amendment, § 790.065(13) would be constitutional under the second step of the relevant analysis.  That step applies a "means-end" test which, in this Circuit and with regard to the conduct restricted by this statute, asks whether the statute survives intermediate scrutiny—that is, whether there is a reasonable fit between the challenged regulation and a substantial government interest.  Given the importance of the goal of the statute—protecting public safety and reducing gun violence—and the targeted nature of the regulation, § 790.065(13) survives intermediate scrutiny.

For these reasons, courts, including the Fifth Circuit, have upheld age-based restrictions on firearms transfers against Second Amendment challenges.  *See, e.g.*, *Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*BATFE*") (upholding federal criminal statutes making it unlawful for federal firearms licensees to sell handguns and handgun ammunition to persons under 21 years of age, 18 U.S.C. § 922(b)(1) and (c)(1), and federal regulations implementing those statutes); *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, No. 3:18-cv-00103, 2019 WL 4923955 (W.D. Va. Oct. 4, 2019) (same), *appeal docketed*, No. 19-2250 (4th Cir. Nov. 7,

4

2019).  We respectfully submit that this Court should do the same.

Plaintiffs' Equal Protection challenge under the Fourteenth Amendment is also meritless.  Because the challenged statute does not impermissibly interfere with a fundamental right and age is not a suspect classification under the Equal Protection Clause, rational basis review applies.  *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 83 (2000); *cf. BATFE*, 700 F.3d at 212 (applying rational basis review and denying plaintiffs' Equal Protection claim to federal law imposing age qualifications on commercial firearms sales); *Hirschfeld*, 2019 WL 4923955, at *9 (same).  In light of the legislative record, Florida's decision to restrict firearm sales to persons under age 21 was not irrational.  Accordingly, we respectfully submit that the Court should dismiss Plaintiffs' Equal Protection claim.

For these reasons, Defendants' motion to dismiss should be granted and Plaintiffs' Second Amended Complaint should be dismissed in its entirety.

## **ARGUMENT**

## I.   **RESTRICTIONS ON THE TRANSFER OF FIREARMS TO PERSONS UNDER 21 COMPORT WITH HISTORICAL UNDERSTANDINGS OF THE SECOND AMENDMENT—AND THUS REGULATE CONDUCT OUTSIDE ITS SCOPE**

The Supreme Court held in *Heller* that the Second Amendment protects an individual right to bear arms.  Its opinion emphasized, however, that this right "is not unlimited," and that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions,"  including "laws imposing conditions and qualifications

5

on the commercial sale of arms," which are "presumptively lawful regulatory measures." 554 U.S. at 626-27 & n.26. These "exclusions need not mirror limits that were on the books in 1791." *United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc); *see United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010).

As noted, the Eleventh Circuit applies a two-step framework to assess whether a law violates the Second Amendment. The first step asks whether "the restricted activity is protected by the Second Amendment." *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1260 n.34. Courts look to the historical record to determine whether the conduct restricted by the challenged law traditionally has been protected by the Second Amendment. *Focia*, 869 F.3d at 1285. Laws restricting conduct that was historically understood to fall outside of the Second Amendment's scope may be upheld at this first step, without proceeding to the step-two scrutiny analysis. *GeorgiaCarry.Org*, 687 F.3d at 1260 n.34.

That is precisely the situation here. Restricting the sale or transfer of firearms to persons under the age of 21 is a "longstanding" form of firearms regulation that "historically has fallen outside the scope of the Second Amendment." *United States v. Torres*, 911 F.3d 1253, 1258 (9th Cir. 2019); *see Focia*, 869 F.3d at 1285. Plaintiffs' Second Amendment claim thus fails at step one of the constitutional analysis, and the Court need not reach the second step of its inquiry. *See*

6

*GeorgiaCarry.Org*, 687 F.3d at 1266 (holding, based on historical analysis alone, that law prohibiting persons from carrying weapons (defined as knives or handguns) or long guns in eight specific locations, including places of worship, subject to exceptions, did not violate the Second Amendment); *United States v. Rene E.*, 583 F.3d 8, 12, 16 (1st Cir. 2009) (holding, based on historical analysis alone, that law regulating possession of handguns by juveniles did not violate the Second Amendment); *People v. Aguilar*, 2 N.E.3d 321, 329 (Ill. 2013) (historical evidence set forth in other decisions supports "the obvious and undeniable conclusion that the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection"); *cf. BATFE*, 700 F.3d at 204 ("Although we are inclined to uphold the challenged federal laws at step one of our analytical framework, in an abundance of caution, we proceed to step two.").

### A. The relevant time period for purposes of the historical analysis begins in 1868 when the Fourteenth Amendment was ratified.

As an initial matter, because Plaintiffs are challenging a state law under the Second and Fourteenth Amendments, the most relevant time period for purposes of historical analysis is 1868, when the Fourteenth Amendment was ratified and made the Second Amendment fully applicable to the States. *See Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018) ("Because the challenge here is directed at a state law, the pertinent point in time would be 1868 (when the Fourteenth Amendment was ratified).")*, petition for cert. filed*, No. 18-1272 (U.S. Apr. 1, 2019); *United States v.*

*Greeno*, 679 F.3d 510, 518 (6th Cir. 2012) (noting that the proper inquiry is whether the challenged statute "regulates activity falling outside the scope of the Second Amendment right as it was understood at the relevant historical moment—1791 [Bill of Rights ratification] or 1868 [Fourteenth Amendment ratification]" (internal quotation marks and citation omitted) (alterations in original)); *Ezell v. City of Chi.*, 651 F.3d 684, 702 (7th Cir. 2011) ("[I]f the claim concerns a state or local law, the 'scope' question asks how the right was publicly understood when the Fourteenth Amendment was proposed and ratified.") (citing *McDonald v. City of Chi.*, 561 U.S. 742, 770-85 (2010) and *Heller*, 554 U.S. at 625-28).

The Court's historical inquiry should not end in 1868, however. *Heller* instructs that "examination of a variety of legal and other sources to determine the *public understanding* of a legal text in the period *after* its enactment or ratification" is also "a critical tool of constitutional interpretation." *Heller*, 554 U.S. at 605 (second emphasis added); *see also, e.g.*, *White*, 593 F.3d at 1205-06 (holding that, "although passed relatively recently," in 1996, the federal law prohibiting firearm possession by persons convicted of a misdemeanor crime of domestic violence is a "longstanding prohibition" under *Heller* and thus does not violate the Second Amendment); *Friedman v. City of Highland Park,* 784 F.3d 406, 408 (7th Cir. 2015) (noting that "*Heller* deemed a ban on private possession of machine guns to be obviously valid" despite the fact that "states didn't begin to regulate private use of

8

machine guns until 1927," and that "regulating machine guns at the federal level" did not begin until 1934); *BATFE*, 700 F.3d at 196 ("*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue."); *Fyock v. City of Sunnyvale*, 779 F.3d 991, 997 (9th Cir. 2015) ("Although not from the founding era, . . . early twentieth century [firearms] regulations might . . . demonstrate a history of longstanding regulation if their historical prevalence and significance is properly developed in the record."); *Drake v. Filko*, 724 F.3d 426, 434 n.11 (3d Cir. 2013) (holding that "a firearms regulation may be 'longstanding' and 'presumptively lawful' even if it was only first enacted in the 20th century").

As explained below, the historical record, beginning before the ratification of the Fourteenth Amendment and extending into the modern era, supports restrictions on the purchase of firearms by, and transfer of firearms to, 18-to-20-year-olds.

**B.    For most of the history of the United States, including when the Second and Fourteenth Amendments were ratified, persons under 21 were considered minors.**

Plaintiffs allege that "[a]t 18 years of age, law-abiding citizens in this country are considered adults for almost all purposes and certainly for the purposes of the exercise of fundamental constitutional rights."  Second Am. Compl. ¶ 3.  For most of our history, however, including up to and through 1868, when the Fourteenth Amendment was ratified, persons under the age of 21 were considered minors.  At

common law, the age of majority was 21, and the term "minor" or "infant" applied to persons under 21.   *See BATFE*, 700 F. 3d at 201; *Horsley v. Trame*, 808 F.3d 1126, 1130 (7th Cir. 2015) ("During the founding era, persons under 21 were considered minors or 'infants.'").[2]   Indeed, until 1969, the age of majority for unmarried men was 21 in every state.   Taylor Decl., Ex. 6, Larry D. Barnett, *The Roots of Law*, 15 Am. U. J. Gender, Soc. Pol'y & L. 613, 681-86 (2007); *BATFE*, 700 F.3d at 201 ("[I]t was not until the 1970s that States enacted legislation to lower the age of majority to 18."); *Horsley*, 808 F.3d at 1130 ("The age of majority was 21 until the 1970s.").   Thus, historically, laws restricting the rights of minors applied to persons under the age of 21.

---

[2] *See also* Taylor Decl., Ex. 1, Blackstone, 1 *Commentaries on the Laws of England* 451 (1st ed. 1765) ("So that full age in male or female is twenty one years, . . . who till that time is an infant, and so styled in law."); Taylor Decl., Ex. 2, Infant, *Black's Law Dictionary* (1st ed. 1891) (defining "infant" as "[a] person within age, not of age, or not of full age; a person under the age of twenty-one years; a minor"; Taylor Decl., Ex. 3, Vivian E. Hamilton, *Adulthood in Law and Culture*, 91 Tul. L. Rev. 55, 64 (2016) ("The immediate historical origins of the U.S. age of majority lie in the English common law tradition.   The American colonies, then the United States, adopted age twenty-one as the near universal age of majority.   The U.S. age of majority remained unchanged from the country's founding well into the twentieth century."); Taylor Decl., Ex. 4, T.E. James, *The Age of Majority*, 4 Am. J. Legal Hist. 22, 30 (1960) ("In the eyes of the common law, all persons were esteemed infants until they attained [21 years of age]"); *id.* at 26 (noting that at the time of the Magna Carta, the age of majority was 21 years); Taylor Decl., Ex. 5, James Kent, 2 *Commentaries on American Law* 191 (1827), Lecture XXXI Of Infants ("T[he] necessity of guardians results from the inability of infants to take care of themselves; and this inability continues, in contemplation of law, until the infant has attained the age of twenty-one years.").

**C.    Laws restricting the sale or transfer of firearms to minors have existed for more than 150 years.**

Statutes restricting the purchase of firearms by, and transfer of firearms to, those under the age of 21 are "longstanding," *Heller*, 554 U.S. at 626, and have existed for over 150 years.  Indeed, numerous nineteenth century state laws restricted the purchase of firearms by, and transfer of firearms to, minors including laws for the states of Alabama, Delaware, Georgia, Illinois, Indiana, Iowa, Kansas, Kentucky, Louisiana, Maryland, Mississippi, Missouri, Nevada, North Carolina, Tennessee, Texas, West Virginia, Wisconsin, Wyoming, and the District of Columbia.  *See, e.g.*, Taylor Decl., Ex. 7, Chart compiling the earliest known nineteenth century state laws restricting the purchase of firearms by, and transfer of firearms to, minors; *see also BATFE*, 700 F.3d at 202.  Moreover, laws analogous to the Second Amendment existed in twelve of the states and the District of Columbia at the time those laws restricting the ability of minors to purchase or use particular firearms were enacted. *See* Taylor Decl., Ex. 8, Chart compiling nineteenth century state analogues to the Second Amendment.

These laws were considered by the courts and leading scholars of the era to be constitutional.  For example, in 1878, the Supreme Court of Tennessee rejected a challenge to a law prohibiting the sale (and even gifting) of pistols to minors, defined as those under age 21, holding that "we regard the acts to prevent the sale, gift, or loan of a pistol or other like dangerous weapon to a minor, not only constitutional as

11

tending to prevent crime but wise and salutary in all its provisions."[3] *State v. Callicutt*, 69 Tenn. 714, 716-17 (1878).  The court rejected the defendant's argument that "every citizen who is subject to military duty has the right 'to keep and bear arms,' and that this right necessarily implies the right to buy or otherwise acquire, and the right in others to give, sell, or loan to him."  *Id.* at 716.  Similarly, in 1858, the Supreme Court of Alabama upheld a conviction for violating a state law that made it a misdemeanor to "sell, or give, or lend" a pistol "to any male minor."[4] *Coleman v. State*, 32 Ala. 581, 582 (1858); *see also, e.g.*, *State v. Allen*, 94 Ind. 441, 443 (1884) (reversing dismissal of indictment where defendant was charged with "'unlawfully barter[ing] and trad[ing] to . . . a minor under the age of twenty-one years, a certain deadly and dangerous weapon, to wit: a pistol, commonly called a revolver, . . . .'").

Thomas Cooley, the "most famous" nineteenth century constitutional law scholar who wrote "a massively popular" constitutional law treatise, *Heller*, 554 U.S. at 616, acknowledged that "the State may prohibit the sale of arms to minors." Taylor Decl., Ex. 9, Thomas M. Cooley, *A Treatise on Constitutional Limitations* 740 n.4 (5th ed. 1883).  Cooley recognized the validity of age restrictions and

---

[3] *See Whitt v. Whitt*, 490 S.W.2d 159, 160 (Tenn. 1973) (noting that Chapter 162 of the Public Acts of 1971 reduced the age of majority from 21 to 18 years of age).

[4] At that time, the age of majority in Alabama was 21.  *See Walker v. Walker*, 17 Ala. 396, 399-400 (1850).

concurrently noted that the "federal and State constitutions therefore provide that the right of the people to bear arms shall not be infringed." *Id.* at 429. He did not see a conflict between these principles.

Early twentieth-century court decisions also recognize the constitutionality of age-based firearms regulations. *See Parman v. Lemmon*, 244 P. 227, 229 (Kan. 1925) (rejecting constitutional challenge to a law that prohibited the sale to or possession by minors of "dangerous weapons," including pistols and revolvers); *Biffer v. City of Chi.*, 116 N.E. 182, 185 (Ill. 1917) (upholding city ordinance that denied minors permits to carry concealed weapons); *cf. State v. Quail*, 92 A. 859, 859 (Del. Gen. Sess. 1914) (denying defendant's request to dismiss indictment based on statute criminalizing "knowingly sell[ing] a deadly weapon to a minor other than an ordinary pocket knife").[5]

## D. Courts have acknowledged the longstanding history of age-based restrictions on the transfer of firearms and have upheld such restrictions against Second Amendment challenges.

Nearly eight years ago, in *BATFE*, the Fifth Circuit upheld 18 U.S.C. § 922(b)(1) and (c)(1) and attendant regulations, which prohibit federally licensed

---

[5] *See* Taylor Decl., Ex. 10, Op. of Ky. Att'y Gen. OAG 94-14 (Mar. 3, 1994) (concluding that bill restricting possession of handguns by minors is constitutional under the federal and state constitutions and explaining, in relevant part, that "[g]iven the Commonwealth's history of restricting the access of minors to deadly weapons, it is not unreasonable to conclude that the Kentucky constitutional provision recognizing a right to bear arms has no application to minors").

13

firearms dealers from selling handguns or handgun ammunition to persons under the age of 21. Following the two-step approach, the court first focused on the history of firearm age restrictions, starting with the era in which the Second Amendment was ratified. The Fifth Circuit observed that during that era, "an expectation of sensible gun safety regulation was woven into the tapestry of the guarantee," and that the gun regulations of the era "targeted particular groups for public safety reasons." 700 F.3d at 200. Noting that a person under the age of 21 was generally considered a "minor" or "infant" at the time, the Fifth Circuit concluded that "[i]f a representative citizen of the founding era conceived of a 'minor' as an individual who was unworthy of the Second Amendment guarantee, and conceived of 18-to-20-year-olds as 'minors,' then it stands to reason that the citizen would have supported restricting an 18-to-20-year-old's right to keep and bear arms." *Id.* at 202. The Fifth Circuit also took into account the history of restricting the ability of minors to purchase firearms, starting in the nineteenth century. The Court observed that "by the end of the 19th century, nineteen states and the District of Columbia had enacted laws expressly restricting the ability of persons under 21 to purchase or use particular firearms, or restricting the ability of 'minors' to purchase or use particular firearms while the state age of majority was set at age 21." *Id.* at 202. The court cited decisions by the Supreme Courts of Delaware, Indiana, and Kentucky, which recognized the validity of these laws more than a century ago. *Id.* The Fifth Circuit

14

concluded that the restrictions found in 18 U.S.C. § 922(b)(1) and (c)(1) on "the ability of 18-to-20-year-olds to purchase handguns from [federally licensed firearms dealers]" were "consistent with a longstanding, historical tradition, which suggests that the conduct at issue falls outside the Second Amendment's protection." *Id.* at 203. Thus, the Fifth Circuit found it was "inclined to uphold the challenged federal laws at step one of our analytical framework." *Id.* at 204. The court, however, "in an abundance of caution," proceeded to step two and held that the challenged laws "pass constitutional muster even if they implicate the Second Amendment guarantee." *Id.*

The same statute, 18 U.S.C. § 922(b)(1) and (c)(1), and attendant regulations, were recently upheld again against a Second Amendment challenge by the U.S. District Court for the Western District of Virginia. *Hirschfeld*, 2019 WL 4923955, at *1. In addressing the history of age-based firearms regulations, the court noted that "[o]ver the course of the nineteenth and early twentieth century, many states enacted restrictions on gun ownership and use by certain categories of people for public safety reasons—including those under a certain age" and "[b]y the 1920s, roughly half of the states had set 21 as the minimum age for the use and possession [of] certain firearms." *Id.* at 3. The court went on to note that courts upheld these types of laws and "legal scholars of the time accepted that the State may prohibit the sale of arms to minors." *Id.* at *3-4 (internal quotation marks and citations omitted).

15

Relying on this "historical record of legislation, court decisions, and scholarship" as well as the reasoning in *BATFE*, the court held that challenged laws do not implicate Second Amendment rights.[6] *Id.* at *7.

Other courts have upheld similar regulations affecting the ability of young people to obtain firearms. In *United States v. Rene E.*, 583 F.3d 8, 16 (1st Cir. 2009), the First Circuit upheld a federal ban on juvenile possession of firearms after "evaluat[ing] evidence that the founding generation would have regarded such laws as consistent with the right to keep and bear arms." In *Horsley v. Trame*, 808 F.3d 1126, 1134 (7th Cir. 2015), the Seventh Circuit upheld a state law restricting the ability of persons under the age of 21 to acquire a firearm license without parental consent. And, in *Powell v. Tompkins*, 926 F. Supp. 2d 367, 387 (D. Mass. 2013), *aff'd on other grounds*, 783 F.3d 332 (1st Cir. 2015), the District Court for the District of Massachusetts held that Massachusetts's "proscription against grants of licenses to carry firearms to adults under the age of twenty-one comports with the Second Amendment and imposes no burden on the rights of eighteen- to twenty-year-olds to keep and bear arms." The court explained that "classification-based limitations on access to firearms for the purpose of ensuring public safety were commonplace in the early republic" and "[b]y the turn of the twentieth century,

---

[6] As in *BATFE*, in an abundance of caution, the court went on to the second step of analysis and determined that the challenged law survived intermediate scrutiny. *Id.* at *7.

16

nearly twenty states had laws restricting the ability of persons under the age of twenty-one to access firearms, and over the course of the next twenty or so years, this number steadily grew." *Id.*[7]

State courts, including the Supreme Courts of Louisiana and Illinois, have also recently upheld age-based restrictions on firearms possession, including for persons under the age of 21. *See State in Interest of J.M.*, 144 So. 3d 853, 862 (La. 2014) (holding that the "prohibition on the juvenile possession of a handgun is the type of long-standing limitation" that survives constitutional scrutiny, given that "[a]s early as in 1890, the Louisiana legislature made it a misdemeanor offense 'for any person to sell, or lease or give through himself or any other person, any pistol, dirk, bowie-knife or any other dangerous weapon, which may be carried concealed to any person under the age of twenty-one years'"); *Aguilar*, 2 N.E.3d at 329 ("[A]lthough many colonies permitted or even required minors to own and possess firearms for purposes of militia service, nothing like a right for minors to own and possess firearms has existed at any time in this nation's history."); *People v. Mosley*, 33 N.E.3d 137, 155 (Ill. 2015) (holding that possession of handguns by minors is conduct that falls outside the scope of the Second Amendment); *In re Jordan G.*, 33 N.E.3d 162, 168

---

[7] *See also Nat'l Rifle Ass'n of Am., Inc. v. McCraw*, 719 F.3d 338, 347 (5th Cir. 2013) (upholding state law requirement that applicants for concealed-carry permits be at least 21; noting that "the conduct burdened by the Texas scheme likely 'falls outside the Second Amendment's protection'").

(Ill. 2015) (holding that age-based restrictions on the right to keep and bear arms are historically rooted and apply "equally to those persons under 21 years of age").

In sum, federal and state courts across the country have reached a consensus that the historical record supports the longstanding nature of age-based firearms restrictions, making such restrictions permissible under the Second Amendment.

## II. EVEN IF THIS COURT FINDS THAT THE CONDUCT REGULATED BY SECTION 790.065(13) IS WITHIN THE SCOPE OF THE SECOND AMENDMENT, THIS COURT SHOULD APPLY INTERMEDIATE SCRUTINY TO THE LAW AND UPHOLD IT

While the Eleventh Circuit has never addressed the appropriate level of scrutiny in Second Amendment cases, there is "near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2016). Moreover, lower courts in this circuit have applied intermediate scrutiny when adjudicating Second Amendment challenges. *See, e.g.*, *United States v. Nowka*, No. 5:11-cr-00474-VEH-HGD, 2012 WL 2862061, at *6 (N.D. Ala. May 10, 2012) (applying intermediate scrutiny, reasoning that while the standard of review "has not been addressed by the Eleventh Circuit[,] . . . other federal courts have applied the intermediate scrutiny standard"), *report and recommendation adopted*, No. 5:11-cr-474-VEH-HGD, 2012 WL 2862053 (N.D. Ala. July 11, 2012); *United States v. Jones*, 673 F. Supp. 2d 1347, 1353 (N.D. Ga. 2009) (rejecting defendant's argument that strict scrutiny applies).

18

The challenged law does not infringe on the core of the Second Amendment right identified in *Heller*.  It does not prohibit persons under 21 from possessing firearms or acquiring firearms in ways not restricted by Florida law, including by receiving a firearm as a gift from someone other than a licensed importer, manufacturer, or dealer, for defense in the home (or elsewhere).  Accordingly, the Court should apply intermediate scrutiny.

Section 790.065(13) withstands intermediate scrutiny.  The government's stated objective—to enhance public safety—is undisputedly important.  *See* Taylor Decl., Ex. 11, Bill Analysis and Fiscal Impact Statement for S.B. 7026 at 4 (Feb. 26, 2018).  As addressed in the State's brief and that of Giffords Law Center et al., restricting the ability of persons under 21 to acquire firearms is reasonably tailored to the problem identified by the legislature, specifically that young adults, including the 19-year-old who committed the February 14, 2018 mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, purchase firearms and subsequently commit gun-related and other violent offenses.  *See id*. at 3.

## III.   PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS BECAUSE AGE IS NOT A SUSPECT CLASSIFICATION

Plaintiffs also argue that Section 790.065(13) violates their rights under the Equal Protection Clause of the Fourteenth Amendment.  Second Am. Compl. ¶ 33.  "[E]qual protection analysis requires strict scrutiny of a legislative classification only when the classification impermissibly interferes with the exercise of a

fundamental right or operates to the peculiar disadvantage of a suspect class." *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  For the reasons outlined above, Section 790.065(13) does not impermissibly interfere with Plaintiffs' exercise of their Second Amendment rights.  *See* supra Section I.  Further, age "is not a suspect classification under the Equal Protection Clause."  *Kimel*, 528 U.S. at 83. Accordingly, rational basis review applies.[8]  *Id.*

Because Section 790.065(13) withstands intermediate scrutiny, *see supra* Section II, the challenged law necessarily passes rational basis review.  Plaintiffs' Equal Protection claim therefore fails as a matter of law.

---

[8] Other courts have rejected Equal Protection challenges to laws imposing age restrictions on firearms sales.  *See BATFE*, 700 F.3d at 212 (rejecting plaintiffs' Equal Protection claim and holding that federal age qualifications on commercial firearms sales satisfied rational basis review); *Hirschfeld*, 2019 WL 4923955, at *9 (rejecting plaintiffs' Equal Protection claim, explaining that with respect to commercial firearms sales, "Congress had a rational basis for regulating adults over 21 differently from adults under 21").

## **CONCLUSION**

For the foregoing reasons, and those set forth by the State, the Court should grant Defendants' motion to dismiss.

Respectfully submitted,

Dated: January 27, 2020

By:  */s/ William J. Taylor, Jr.*
William J. Taylor, Jr.
NYS Bar No. 3958956
Admitted in the N.D. of Fla.
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017
(646) 324-8215
wtaylor@everytown.org

Darren A. LaVerne*
Karen S. Kennedy*
Jessica K. Weigel*
Dayna M. Chikamoto*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9190
* *Of Counsel*

*Attorneys for Everytown for Gun Safety*
*Support Fund*

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

In accordance with N.D. Fla. Loc. R. 7.1(F), the undersigned counsel certifies compliance with the word limits in N.D. Fla. Loc. R. 7.1(F).  The total number of words in the foregoing memorandum of law, exclusive of the case style, signature block, and certificate of service, and inclusive of headings, footnotes, and quotations, is 5,087.

*/s/ William J. Taylor, Jr.*
William J. Taylor, Jr.
NYS Bar No. 3958956
Admitted in the N.D. of Fla.
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017
(646) 324-8215
wtaylor@everytown.org

*Attorney for Everytown for Gun Safety Support Fund*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document was filed this 27th day of January, 2020, through this Court's Electronic Filing System.  Parties will be served and may obtain copies electronically, through the operation of the Electronic Filing System.

*/s/ William J. Taylor, Jr.*
William J. Taylor, Jr.
NYS Bar No. 3958956
Admitted in the N.D. of Fla.
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, New York 10017
(646) 324-8215
wtaylor@everytown.org

*Attorney for Everytown for Gun Safety Support Fund*
