## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION
OF AMERICA, Inc., *et al.*,

    *Plaintiffs*,

    v.                          CASE NO.: 4:18-cv-137-MW-MAF

RICK SWEARINGEN, in his official
capacity as Commissioner of the
Florida Department of
Law Enforcement, *et al.*,

    *Defendants*.

_____/

## PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
## DEFENDANTS' MOTION TO DISMISS

Pursuant to Rules 12(b)(6) and 12(d), Fed. R. Civ. P., and Local Rule 7.1, Plaintiffs respectfully submit this Memorandum in Opposition to Defendants' Motion to Dismiss (ECF No.73)("Defs. Mot.").

### INTRODUCTION

Defendants do not dispute Plaintiffs' well-pleaded factual allegations. Florida has prohibited an entire class of law-abiding, responsible adult citizens—adults 18 to 20 years of age—from purchasing any type of firearm, from any source. Unlike young adults in the rest of the country, law-abiding, responsible 18-to-20-year-old Floridians cannot purchase a rifle or shotgun from any source, including a federally-licensed dealer. Unlike young adults in the rest of the country, law-abiding

1

responsible 18-to-20-year old Floridians cannot purchase a handgun from a private source. By completely banning access to the firearm market, Florida places a heavy, unconstitutional burden on the fundamental right of 18-to-20-year-old responsible, adult citizens to purchase firearms in the exercise of their right to keep and bear arms. Florida's age-based ban is as unprecedented as it is unconstitutional.

Rather than addressing the legal sufficiency of these allegations, Defendants attack the merits instead, relying upon extrinsic evidence in a transparent attempt to forestall Plaintiffs' right to take discovery of facts to support their Complaint and to test Defendants' *ipse dixit* justification for this novel prohibition. This Court should not entertain such substantive arguments on a motion to dismiss, much less make a dispositive determination on the merits at this stage. No Answer has been filed, no documents exchanged, and no depositions taken. Surely appeals to writings on history and tradition are insufficient to carry Defendants' substantial burden of establishing the constitutionality of this broad-based Draconian measure banning an entire segment of the law-abiding adult population from exercising fundamental Second Amendment rights.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). On a motion to dismiss, the "very high

burden" is upon the moving party to show that the plaintiff is not entitled to relief. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir. 1986).

## STATEMENT OF FACTS

In 2018, Florida enacted Senate Bill 7026, which among other provisions, amended Section 790.065, Fla. Stat., to add:

> A person younger than 21 years of age may not purchase a firearm. The sale or transfer of a firearm to a person younger than 21 years of age may not be made or facilitated by a licensed importer, licensed manufacturer, or licensed dealer. A person who violates this subsection commits a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The prohibitions of this subsection do not apply to the purchase of a rifle or shotgun by a law enforcement officer or correctional officer . . . or a servicemember . . . .

Fla. Stat. § 790.065 (13) ("the Ban"); Second Amended Complaint (ECF No. 54) ("Complaint") ¶¶ 12-13. An individual who purchases any firearm in violation of this Ban is subject to imprisonment for up to 5 years, a fine of up to $5,000, or both. Fla. Stat. §§ 775.082, 775.083; Complaint ¶ 14.

Florida law independently limits access to firearms for individuals who are considered unsafe, mentally unstable, or otherwise incapable of safely operating a firearm. Complaint ¶ 15. And Federal law already indirectly constrains the right of adult citizens under the age of 21 to purchase some firearms. Under 18 U.S.C. § 922(b)(1), a federally-licensed firearm dealer may not sell a handgun to any individual under the age of 21, though a private seller may do so. Complaint ¶ 16. Federal law does not otherwise restrict the exercise by 18-to-20-year-old law-

3

abiding, responsible adults of their right to acquire a firearm. By prohibiting 18-to-20-year-olds from purchasing any type of firearm from any source, Florida's aged-based Ban imposes a severe, unequal, and impermissible burden on the exercise of the right to keep and bear arms of a class of all law-abiding, responsible 18-to-20-year-old adult citizens. Complaint ¶ 17.

Plaintiff National Rifle Association (NRA), founded in 1871, is the oldest civil rights organization in America and the Nation's foremost defender of Second Amendment rights. *Id*. ¶ 8. Among other things, the NRA promotes the safe and responsible purchase, possession, and use of firearms by law-abiding adults for lawful purposes, such as self-defense, target practice, marksmanship competition, and hunting. *Id*. The NRA's members include 18-to-20-year-old law-abiding adult citizens who reside in Florida (and throughout the nation) and who desire to purchase handguns, long-guns, or both for self-defense and other lawful purposes. *Id*. ¶ 21. Apart from their ages, these members meet all other state and federal requirements for purchasing or possessing firearms. *Id*. ¶ 22. But for the Ban, some of these members would purchase handguns, rifles, or shotguns for lawful purposes. *Id*. ¶ 23.

Plaintiff Radford Fant is a citizen and resident of Florida between the ages of 18 and 21. *Id*. ¶ 9. He is a member of the NRA. *Id*. ¶ 21. But for the challenged Ban, he could lawfully purchase a firearm under Florida and federal law. *Id*. ¶ 18. He is not a law-enforcement, correctional officer, or servicemember and is therefore not

exempt from the Ban. *Id*. Mr. Fant desires to exercise his constitutionally protected right to purchase a handgun and long-gun for self-defense and other lawful purposes. But for the Ban, he would lawfully purchase these firearms. *Id*. ¶ 19.

## ARGUMENT

A fair reading of the Second Amended Complaint demonstrates a plausible claim to relief on its face under controlling Supreme Court precedent. Defendants' motion should be denied because it does not address how the Complaint fails to meet the *Ashcroft* standard, but instead invites this Court to stray far from the four corners of the Complaint to prematurely address the merits of these claims.

## I.   DEFENDANTS' MOTION IMPROPERLY ADDRESSES THE MERITS RATHER THAN THE SUFFICIENCY OF THE ALLEGATIONS.

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, not its substantive merits. *Milburn v. United States*, 734 F.2d 762, 765 (11th Cir. 1984) (holding a motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim, not substantive merits); *see also Universal Collison Ctr., Inc. v. Travelers Ind. Co. of Conn., Inc.*, 4:09-cv-472-SPM, 2010 WL 2015242, at *1 (N.D. Fla. May 20, 2010) ("As the court does not assess Plaintiff's likelihood of success on the merits, 12(b)(6) motions 'should rarely be granted . . . on the basis of the pleadings alone.'") (quoting *Madison v. Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)). When assessing a motion to dismiss for failure to state a claim, a court must accept all facts

set forth in the complaint as true. *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003). A court is limited to considering "only the pleadings, attached exhibits, or documents incorporated into the complaint by reference." *PNC Bank, Nat'l Ass'n v. Land Services of Fla., LLC*, 3:16-CV-208/MCR/EMT, 2016 WL 9000436, at *2 (N.D. Fla. Nov. 3, 2016) (citing *Thaeter v. Palm Beach Cty. Sheriff's Office*, 449 F.3d 1342, 1352 (11th Cir. 2006)).

Other than a perfunctory citation to *Ashcroft* at the beginning of their brief (Defs. Mot. at 4), Defendants never mention, let alone try to satisfy, the Rule 12(b)(6) standard. Rather Defendants advance at the outset the two-part test the Eleventh Circuit applies to Second Amendment claims, *GeorgiaCarry.Org v. Georgia*, 687 F.3d 1244 (11th Cir. 2012), which culminates in the application of an intermediate scrutiny test. (Defs' Mot. at 5.) Throughout the remainder of the Motion, Defendants arguments go to the merits of Plaintiffs' claims, not the sufficiency of the Complaint. (Defs' Mot. at 5–26.)

Defendants' motion admits that assessing a Second Amendment challenge requires measuring a firearm restriction against "the historical understanding of the scope of the right." (Defs. Mot. at 6 (quoting *District of Columbia v. Heller*, 554 U.S. 570, 625 (2008)).) As Defendants demonstrate, however, conducting such an analysis requires examining "framing-era dictionaries and other writings," "early state constitutions and laws," "early judicial decisions," "early commentary," "post-

6

ratification sources," and "regulations of significantly more modern vintage." (Defs. Mot. at 6–7.) Defendants' premature attack on the merits attempts to introduce a variety of extrinsic documents, including "Early Legislation," "Early Courts and Commentators," "Modern Legislation," and a variety of treatises or articles.[1] None of these sources or documents are attached to or referenced in the Second Amended Complaint.

These extraneous materials are not undisputed and contradict the facts alleged in the Second Amended Complaint. Dismissing the Complaint based on the untested facts asserted by Defendants would contravene the clear mandate of the Federal Rules of Civil Procedure. *Hill*, 321 F.3d at 1335 (holding when assessing a motion to dismiss for failure to state a claim, the court must accept the allegations as true); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (holding that under Rule 12(b)(6), a "district court would not be permitted to weigh facts but would instead be required to resolve disputed factual issues" in the plaintiff's favor).

A court may only consider extrinsic materials at the motion to dismiss stage if the extrinsic documents are (1) central to the plaintiff's claim, e.g., the documents

---

[1] See, e.g., C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Pol'y 695, 698 (2009) (ECF No. 73 at 7); Thomas M. Cooley, *Treatise on Constitutional Limitations* 740 n.4 (5th Ed. 1883) (ECF No. 73 at 9); Clayton E. Cramer & David B. Kopel, *"Shall Issue": The New Wave of Concealed Handgun Permit Laws*, 62 Tenn. L. Rev. 679, 688-706 (1995) (ECF No. 73 at 11–12); Allen Rostrom, *The Second Amendment on Campus*, 14 Geo. J.L. & Pub. Pol'y 245, 259 n.101 (2016) (ECF No. 73 at 12).

contents are alleged in the complaint, such as a contract; and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (holding an extrinsically introduced agreement central to the complaint and proper for consideration). This exception generally applies only in business and insurance coverage disputes, where the basis for the dispute involves a written instrument. *See, e.g.*, *Basson v. Mortgage Elec. Registration Sys., Inc.*, 741 Fed. Appx. 770, 771 (11th Cir. 2018), cert. denied, 139 S. Ct. 1628 (2019) (considering two security deed assignments in a commercial dispute).

Even if a document outside the four corners of a complaint "can be considered in ruling on a motion to dismiss, the court should exclude outside documents when they involve a fact intensive inquiry and 'some degree of discovery will probably be required to piece together a sufficient record to decide the matter on summary judgment.'" *PNC Bank,* 2016 WL 9000436 at *3 (quoting *Maxcess, Inc. v. Lucent Technologies, Inc.*, 433 F.3d 1337, 1340 (11th Cir. 2005)). Assessing the text, history, and tradition of the Second Amendment necessarily requires a fact-intensive inquiry of Founding-Era documents—which is not appropriate at the motion to dismiss stage. *See, e.g., Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 995 (11th Cir. 1990) (holding § 1983 challenge asserting Fifth and Fourteenth Amendment violations required fact-intensive analysis more properly resolved at summary judgment); *Cambridge Christian Sch., Inc. v. Florida High Sch. Athletic*

*Ass'n, Inc.*, 942 F.3d 1215, 1223 (11th Cir. 2019) (noting First Amendment challenge requiring historical analysis is fact-intensive and inappropriate at motion to dismiss stage); *Turco v. City of Englewood, New Jersey*, 935 F.3d 155, 170 (3d Cir. 2019) (holding intermediate scrutiny analysis is fact-intensive and inappropriate for pleadings stage); *Romero v. Drummond Co., Inc.*, 480 F.3d 1234, 1238 (11th Cir. 2007) (noting fact-intensive inquiries are more appropriate for summary judgment).

Resolving the merits of Plaintiffs' claims by applying *GeorgiaCarry.org's* two-step test, as Defendants' Motion demands, requires the Court to conduct an exacting review of historical and textual sources, perform a factual-basis analysis, develop a record, and assess the evidence supporting the Ban's justification. *See Turner Broad Sys., Inc., v. F.C.C. (Turner I)*, 512 U.S. 622, 667–68 (1994) (holding government must introduce evidence for court to determine if restrictions "narrowly tailored," suppress "substantially more" protected conduct than necessary, or whether there are "constitutionally acceptable less restrictive means" of achieving government's asserted interests to properly apply intermediate scrutiny analysis). But conducting such an intermediate scrutiny analysis at this stage would be inappropriate.

Plaintiffs' factual allegations demonstrate a plausible claim to relief because the operation and impact of the Ban completely and inequitably bars 18-to-20-year-olds from acquiring a firearm by purchase. This novel restriction on the exercise of

the right to keep and bear arms is unique and without precedent in the text, history, and tradition of the Second Amendment. Whatever evidence Defendants may wish to advance in carrying their burden to justify the Ban must await development of an adequate record.

## II.   DEFENDANTS' MOTION FAILS TO DEMONSTRATE THAT PLAINTIFFS HAVE NOT STATED A PLAUSIBLE CLAIM.

In *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), the Supreme Court held the Second Amendment guarantees law-abiding, responsible citizens the individual right to possess and carry firearms for self-defense and other lawful purposes—a right the Court found long pre-dated the Founding. The *Heller* Court struck down a prohibition on the possession of firearms in the home by law-abiding, responsible citizens as inconsistent with the Second Amendment's text, history, and tradition. *Id.* at 635. In *McDonald v. City of Chicago*, 561 U.S. 742, 778, 791 (2010), the Court confirmed that the Second Amendment applies with full force to the states. The only material distinction from *Heller* is that this Ban applies to a subset of law-abiding, responsible adults aged 18 to 20, instead of all adults. Because Florida's novel aged-based Ban finds no support in the text, history, and tradition of the Second Amendment, *Heller* commands it likewise be struck down.

In opposing Defendants' premature merits arguments, Plaintiffs do not waive their objections stated above. Rather Plaintiffs advance the following points to show

they have demonstrated a right to discovery to substantiate their allegations and test the Defendants' justifications for the Ban.

## A. The Second Amendment guarantees 18-to-20-year-olds the right to keep and bear arms accorded all law-abiding, responsible citizens.

In *Heller*, the Supreme Court determined that challenges under the Second Amendment should be analyzed based upon the text, history, and tradition of the Second Amendment, which includes assessing Founding-Era firearms restrictions. *Heller*, 554 U.S. at 605, 626–27, 634–35. "We look to [the historical background of the Second Amendment] because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id.* at 591. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id.* at 634–35. "*Heller* commands that, in passing on a Second Amendment claim, courts must read the challenged statute in light of the historical background of the Second Amendment." *GeorgiaCarry.org,* 687 F.3d at 1261.

*Heller* and *McDonald*, whatever else they may stand for, hold that law-abiding, responsible citizens have a right to possess operable firearms in their homes for defensive purposes. The Ban denies 18-to-20-year-old citizens that right by prohibiting them from purchasing firearms of all kinds, thus denying them the ability to possess firearms.

11

*Heller* affirmed the Second Amendment protects a preexisting "individual right to possess and carry weapons in case of confrontation," which manifests itself most importantly in "the home, where the need for defense of self, family, and property is most acute." 554 U.S. at 592; *see also McDonald*, 561 U.S. at 767–768, 778 (holding the "central component of the Second Amendment right" is "individual self-defense," a right that is "deeply rooted in this Nation's history and tradition" and is among the "fundamental rights necessary to our system of ordered liberty"). This individual right to keep and bear arms applies to "law-abiding, responsible citizens." *Heller,* 554 U.S. at 635. As outlined below, the text, history, and tradition of the Second Amendment demonstrates that these rights fully vest no later than at the age of 18.

"'[T]he people' protected by the Fourth Amendment, and by the First and Second Amendments, and to whom rights and powers are reserved in the Ninth and Tenth Amendments, refers to a class of persons who are part of a national community or who have otherwise developed sufficient connection to be considered part of that community." *Heller*, 554 U.S. at 580 (citations omitted); *see also* Thomas McIntyre Cooley, *General Principles of Constitutional Law in the United States of America* 267-68 (1880) ("[I]n all the enumerations and guaranties of rights the whole people are intended."). Using the phrase "the people," then, means "the Second Amendment right is exercised individually and belongs to all Americans." *Heller*, 554 U.S. at

12

580; *see also id*. at 612 ("'The right of the whole people, *old and young, men, women and boys, and not militia only*, to keep and bear arms of every description and not such merely as are used by the militia, shall not be infringed, curtailed, or broken in upon, in the smallest degree.'" (citations omitted) (emphasis added)).

The Supreme Court has made evident that the Second Amendment applies to 18–to-20-year-old adults. The only question that remains is whether this age group enjoys Second Amendment protections on the same plane as all other law-abiding, responsible adult citizens aged 21 and older.

"A well regulated Militia, being necessary to the security of a free State," the Second Amendment's prefatory clause, "announces the purpose for which the right was codified: to prevent elimination of the militia." *Heller*, 554 U.S. at 599. That fear, "that the new Federal Government would destroy the citizens' militia by taking away their arms was the reason that right" was codified in the Second Amendment. *Id*. Though the Second Amendment right to keep and bear arms exists outside militia purposes, the Framers' understanding of its relationship to the militia is highly probative in determining whether 18–to-20-year-old responsible, adult citizens enjoy the full protection of the right as well.

As the Court explained, "'the Militia comprised all males physically capable of acting in concert for the common defense.'" *Heller*, 554 U.S. at 595 (quoting *United States v. Miller*, 307 U.S. 174, 179 (1939)). Further, the militia was expected

13

to supply its own arms: "the conception of the militia at the time of the Second Amendment's ratification was the body of all citizens capable of military service, who would bring the sorts of lawful weapons they possessed at home to militia duty." *Heller*, 554 U.S. at 627. During the Founding Era, including at the time of the Second Amendment's ratification, every colony and state militia included 18-to–20-year-old males. *See* David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. L.J. 495, 533–595 (2019) (analyzing the Founding-Era militia enactments). The first federal militia, organized under the Militia Act of 1792 (Uniform Militia Act), 1 Stat. 271 (1792), also included 18–to-20-year-old adult male citizens. These enactments reflect a consensus that, at the time of the Founding and ratification of the Second Amendment, 18–20-year-old citizens were guaranteed the right to keep and bear arms.

Relying upon analyses by other courts, however, including largely the First Circuit in *United States v. Rene E.*, 583 F.3d 8 (1st Cir. 2009), and the Fifth Circuit in *Nat'l Rifle Ass'n v. BATFE*, 700 F.3d 185 (5th Cir. 2012), Defendants cite to 19th and 20th Century legislative enactments in an attempt to support their position that the Second Amendment does not protect the rights of 18–to-20-year-old citizens. (Defs.' Mot. at 7–9.) Defendants conveniently skip over any Founding-Era sources and do not cite a single Founding-Era statute that is substantively like the Ban in this case. (Defs.' Mot. at 7–13.)

These later authorities "do not provide as much insight into [the Second Amendment's] original meaning as earlier sources." *Heller*, 554 U.S. at 614. Defendants compound their misplaced reliance on later sources by conflating the "age of majority" at the common law or in several late-19th and early 20th Century statutes with the ages subject to Second Amendment application at the time of ratification. (Defs.' Mot. at 8, 10.) There is no dispute that 18–to-20-year-old citizens were part of the militia at the Founding and therefore understood to have Second Amendment protections.

Of course, in the modern era, 18-to–20-year-olds are adults for essentially all purposes and certainly for the purposes of exercising fundamental constitutional rights. All males over the age of 17 and under the age of 45 are part of the militia. 10 U.S.C. § 246. At age 18, citizens are eligible to serve in the military, 10 U.S. § 505(a); be drafted, 50 U.S.C. § 3803(a); and vote, U.S. Const. amend. XXVI. In Florida, the age of majority is 18, which means an 18-to-20-year-old may serve on a jury, enter into contracts, sue and be sued, get married, and own property. Fla. Stat. § 743.07. The ownership of property is particularly relevant considering *Heller's* pronouncement that "the home [is] where the need for defense of self, family, and property is most acute." *Heller*, 554 U.S. at 628.

Neither of the cases Defendants cite is applicable to the instant matter. *Rene E.* involved a challenge to a statute banning handgun possession by minors under the

age of 18, not adults 18-to-20-years-old. That court's conclusion that there is a "longstanding tradition of prohibiting juveniles," *i.e.*, minor children, "from both receiving and possessing handguns," is of little relevance in the matter at hand, which involves the Second Amendment rights of adult citizens 18-to-20-years-old. 583 F.3d at 12.

*BATFE* considered whether the federal prohibition on federally-licensed dealers selling handguns to persons under 21 was constitutional. 700 F.3d at 188. Because the federal ban left open the option to purchase hand-guns from private sellers and long-guns from all sellers the court determined the federal ban was "reasonably tailored." 700 F.3d. at 209. *BATFE* did not address and cannot be stretched to approve Florida's broad prohibition. The Ban's complete bar on the commercial or private purchase of any type of firearm—long-gun or handgun—from any source—private or commercial—is not fairly comparable to the more tailored restriction on the commercial sale of handguns at issue in *BATFE*.

## B. The Second Amendment protects the right of law-abiding, responsible 18-to-20-year-old citizens to purchase arms.

Because 18-to–20-year-old adult citizens have the right to keep and bear arms for self-defense or other lawful purposes, the Florida Legislature cannot foreclose or unduly restrict the ability to exercise that right by prohibiting the purchase of firearms. The Seventh Circuit has opined that there is a right to purchase a firearm attendant with the right to possess one for defense of "self, family, and home." *Ezell*

*v. City of Chicago*, 651 F.3d 684, 704 (7th Cir. 2011). In *Ezell*, the Seventh Circuit considered a challenge to a City of Chicago ordinance requiring training at a firing range as a prerequisite to lawfully possessing a firearm, while banning all firing ranges within the city limits. *Id*. at 689–90. The Court, in striking down the municipal ordinance as unconstitutional under the Second Amendment, held the "right to possess firearms for protection implies a corresponding *right to acquire* and maintain proficiency in their use." *Id*. at 704 (emphasis added). The constitutional right to possess firearms for self-defense and other lawful purposes necessarily entails the concomitant constitutional right to acquire them. *Cf. Teixeira v. County of Alameda*, 873 F.3d 670, 677 (9th Cir. 2017) (en banc) ("[T]he Second Amendment protects ancillary rights necessary to the realization of the core right to possess a firearm for self-defense"); *see also id.* at 682 ("Commerce in firearms is a necessary prerequisite to keeping and possessing arms for self-defense."); *and see Ass'n of Firearms Retailers v. City of Chicago*, 961 F. Supp. 2d 928, 930 (N.D. Ill. 2014) ("[T]he right to keep and bear arms for self-defense under the Second Amendment . . . must also include the right to acquire a firearm."); *Andrews v. State*, 50 Tenn. 165, 178 (1871) (cited in *Heller*, 554 at 608) ("The right to keep arms, necessarily involves the right to purchase them . . . .").

The Ban does not merely "impos[e]conditions and qualifications on the commercial sale of arms," as Defendants' argue. (Defs.' Mot. at 6.) It is the outright

prohibition of the purchase of any firearm, whether in a commercial transaction or a private one, by 18–20-year-old responsible, adult citizens.

In *Ezell*, the Seventh Circuit held that the ordinance, although masquerading as a regulation, functioned as a restriction and therefore violated the Second Amendment. 651 F.3d. at 708, 711 (distinguishing between "laws restricting activity" and "laws that merely regulate rather than restrict"). Similarly, the Ban is no mere regulation but operates as a wholesale prohibition on the ability of 18–to–20-year old adults to purchase firearms of *any* kind from *any* source. The Ban eliminates *all* avenues for this age cohort to legally purchase firearms. If the wholesale prohibition of the right to purchase firearms by a group of citizens were permissible, it would effectively eviscerate *Heller's* basic holding. *Heller*, 554 U.S. at 592, 614; *see also United States v. Marzzarella*, 614 F.3d 85, 92 n.8 (3d Cir. 2010) (observing a law "prohibiting the commercial sale of firearms" "would be untenable under *Heller*").

The right to keep and bear firearms under the Second Amendment must encompass the ability to purchase firearms to exercise that right.

## C. Even if this Court Were to Apply a Two-Part Means/Ends Test, the Ban Would Fail.

When reviewing the constitutionality of a ban, *Heller* mandates the use of a text, history, and tradition analysis, instead of adopting means/ends or judicial balancing tests familiar from other areas of constitutional law. *See, e.g., Heller*, 554

U.S. at 634 (rejecting a dissenting Justice Breyer's "judge empowering 'interest-balancing inquiry" and stating "[we] know of no other enumerated constitutional right whose core protection has been subjected to a freestanding 'interest balancing' approach"); *and see McDonald*, 561 U.S. 742, 790–91 (2010) (controlling opinion of Alito, J.) (rejecting assessments of "the costs and benefits of firearms restrictions" and noting that, in *Heller*, while Justice Breyer "recommended an interest-balancing test, the Court specifically rejected that suggestion"). The Second Amendment itself "is the very product of an interest balancing by the people." *Heller*, 544 U.S. at 635.

The Eleventh Circuit has drawn upon a two-part test in analyzing Second Amendment challenges: "first, we ask if the restricted activity is protected by the Second Amendment in the first place; and then, if necessary, we would apply the appropriate level of scrutiny." *GeorgiaCarry.Org,* 687 F.3d at 1260 n.34. The Eleventh Circuit has upheld a variety of firearms regulations under this test, but none involved a ban on protected conduct; the restricted conduct was not protected by the Second Amendment in the first place. *United States v. Rozier*, 598 F.3d 768 (11th Cir. 2010); *United States v. White*, 593 F.3d 1199 (11th Cir. 2010); *GeorgiaCarry.Org*, 687 F.3d at 1264; *GeorgiaCarry.Org, Inc., v. U.S. Army Corps of Engineers*, 788 F.3d 1318 (11th Cir. 2015); *United States v. Focia*, 869 F.3d 1269 (11th Cir. 2017). Accordingly, the Eleventh Circuit has never reached the second step to determine what level of scrutiny, strict or intermediate, should apply. The

Eleventh Circuit has not reviewed a ban before which requires more than intermediate scrutiny. *See, e.g., Heller*, 554 U.S. at 629, 634–35 (holding a categorical ban on the possession of handguns fails under any level of scrutiny); *and see Ezell*, 651 F.3d at 708 (noting a categorical ban requires more than intermediate scrutiny "if not quite 'strict scrutiny.'"). Regardless of whatever standard of scrutiny applies, the government bears the burden of proving the constitutionality of its actions. *Ezell*, 561 F.3d at 703; *see also United States v. Alvarez*, 567 U.S. 709, 715–17 (2012); *Alabama Democratic Conference v. Attorney Gen. of Alabama*, 838 F.3d 1057, 1063 (11th Cir. 2016); *Ray v. Comm'r, Alabama Dep't of Corr.*, 915 F.3d 689, 698 (11th Cir. 2019).

### (1) The right to acquire firearms is historically protected by the Second Amendment, so the Court should apply strict scrutiny to invalidate Florida's Ban.

Strict scrutiny applies "when government action impinges upon a fundamental right protected by the Constitution." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 54 (1983); *see also San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 16 (1973) (holding that when a restriction impedes "fundamental constitutional rights," a court should apply "strict judicial scrutiny"); *see also Williams v. Pryor*, 240 F.3d 944, 947 (11th Cir. 2001) ("Statutes that infringe fundamental rights . . . are subject to strict scrutiny . . . ."). The Supreme Court has determined that the right to keep and bear arms is fundamental. *McDonald*, 561 U.S. at 768 ("The right to keep and bear arms was considered no less fundamental by

20

those who drafted and ratified the Bill of Rights."). Because Florida's Ban burdens the fundamental right for 18-to-20-year-old adult citizens to purchase firearms for self-defense or other lawful purposes, if a test must apply, it should be strict scrutiny.

Strict scrutiny requires the government to "prove the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Citizens United v. Fed. Election Com'n*, 558 U.S. 310, 340 (citations omitted); *see also Williams*, 240 F.3d at 947 (holding strict scrutiny "requires that the statute be narrowly tailored to achieve a compelling government interest"). Under a strict scrutiny analysis, narrow tailoring requires the government to use "the least restrictive means" of achieving that "compelling government interest." *Burk v. Augusta-Richmond County*, 365 F.3d 1247, 1251 (11th Cir. 2004) (citing *United States v. Playboy Ent. Group Inc.*, 529 U.S. 803, 813 (2000)). This is an extremely demanding standard. *Williams*, 240 F.3d at 948 ("Most statutes reviewed under the very stringent strict scrutiny standard are found to be unconstitutional.").

Defendants' Motion does not address a strict scrutiny analysis at all; it moves directly from the historical analysis to intermediate scrutiny. (Defs.' Mot. at 16–23.) Defendants' justifications for the Ban cannot survive strict scrutiny. The only hint of the Legislative interest behind the Ban is in the text of the bill itself: "The legislature's express purpose was to 'comprehensively address the crisis of gun violence, including . . . on school campuses.'" (Defs.' Mot. at 20 (quoting S.B. 7026

§ 2).) Even assuming this vaguely-stated interest meets the compelling interest standard, the challenged law is not narrowly tailored.

To survive constitutional scrutiny, the Ban must be the least restrictive alternative to achieve a compelling government interest. *See Playboy Ent. Group, Inc.*, 529 U.S. at 813. The Ban prevents the ability of *all* 18-to–20-year-olds to purchase firearms to exercise their Second Amendment rights—even for self-defense in the home. If the compelling interest is limiting gun violence on school campuses, the Ban is not the least restrictive means because the Ban encompasses *all* 18–to-20-year-old adult Floridians, including those who no longer have any connection to school campuses. Nor have Defendants demonstrated the unavailability of less restrictive alternatives. The Ban imposes a severe restriction that infringes on the fundamental Second Amendment right that is not the least restrictive means of addressing the asserted interest and should not survive.

***(2) Even if the Court were to apply intermediate scrutiny, the Ban would fail.***

Intermediate scrutiny requires that a law affecting a fundamental right be narrowly tailored to serve a substantial government interest. *McCullen v. Coakley*, 573 U.S. 464, 486 (2014); *Turner I,* 512 U.S. at 662. The government must demonstrate the ban does not "burden substantially more [protected conduct] than is necessary to further" that interest. *Turner I,* 512 U.S. at 662.

The Ban fails intermediate scrutiny. Bans, by their very nature, infringe upon the constitutional right at the core of the Second Amendment and lack the tailoring required even under intermediate scrutiny. *McCullen*, 573 U.S. at 490 (holding "buffer zones" invalid because they burden substantially more speech than is necessary). Defendants' only rationale advanced to justify the Ban—"to 'comprehensively address the crisis of gun violence, including . . . on school campuses'" (Defs.' Mot. at 20 (quoting S.B. 7026 § 2))—includes no references to any other possible considerations the Florida Legislature made at the time it debated this bill or the purposes behind it, or even any evidence of how the Ban might operate to achieve that interest.

Even assuming the Legislature's vague and sweeping "express purpose" constituted an important government objective, the means enacted are not narrowly tailored to that end. Defendants offer two arguments here: (1) the Ban "is virtually certain to advance Florida's interest in preventing gun violence and crime;" and (2) the Ban advances the State's interest because "it applies only to the purchase of firearms." (Defs.' Mot. at 21–23.) Defendants' "evidence" is nothing more than their *ipse dixit. Goldman v. Weinberger*, 475 U.S. 503, 516 (1986) ("Unabashed *ipse dixit* cannot outweigh a constitutional right."); *Ray,* 915 F.3d at 699 (11th Cir. 2019) (holding the court may not rely on "unexplained *ipse dixit* of the state that there are no less restrictive means"). Of course, Plaintiffs are entitled to take discovery of any

evidence Defendants might have to support their statements. But they offer none here, leaving the Court to take their word for it.

There is no evidence that the Florida Legislature conducted or even referred to any sort of empirical analyses studying the prevention of gun violence, particularly that related to school campuses, and the effect the Ban would have on that violence. None of the cases cited by Defendants involve bans such as Florida's, and the highly fact-specific analyses applied in those cases have no place in this Court's review on a motion to dismiss and, in any event, have little bearing on the ultimate issue before this Court. (Defs.' Mot. at 21–23.)

Defendants liken Florida's Ban to the federal regulation of handgun purchases by federally-licensed dealers to those under age 21, 18 U.S.C. § 922(b)(1), (c)(1), which the Fifth Circuit upheld in *BATFE*, 700 F.3d 185. As the Fifth Circuit in *BATFE* notes, Congress conducted empirical research suggesting denying the targeted age group the ability to purchase handguns from federally-licensed dealers "would deter violent crime." 700 F.3d at 203. The court found that evidence before Congress "confirmed a 'causal relationship between the easy availability of *firearms other than a rifle or a shotgun . . .* and youthful criminal behavior.'" *Id*. at 199 (citations omitted) (emphasis added). Finally, the court relied on the narrow tailoring of the restriction, noting it only applied to commercial sales of handguns by federally-licensed dealers and left open the option to purchase long-guns from

24

dealers and both handguns and long-guns from private sources. *Id*. at 206–07, 209. Indeed, because the federal statute left open these options—to purchase long-guns from all sellers and handguns from private sellers—the court applied intermediate scrutiny and determined the burden was slight, in addition to being narrowly tailored. *Id*. at 205. That narrow tailoring and relatively modest burden, neither of which is present in this challenge to the State's total Ban, was critical to the outcome of that case.

Defendants do not suggest the Florida Legislature considered *BATFE* or the underlying evidence when debating the Ban. Defendants point to no evidence actually considered by the Florida Legislature. *Turner I*, 512 U.S. at 666 (holding the government must base its inferences on substantial evidence and "must be able to adduce either empirical support or at least sound reasoning on behalf of its measures") (citations omitted); *see Ezell*, 651 F.3d at 709 ("[T]he government must supply actual, reliable evidence to justify restricting" protected conduct "based on secondary public-safety effects . . . . [by] analogy here, the City produced no empirical evidence whatsoever . . . ."). Plaintiffs are entitled to take discovery to ascertain what, if any, evidence the Legislature considered to support the Ban., as well as Defendants' post hoc rationalizations.

Empirical evidence strongly suggests violent crime among 18-to-20-year-old adults is low. (*See* Expert Opinion of Professor Gary Kleck, Ex. 1 at 2.) More than

25

98% of the 18-20-year-old adults who are subject to the Ban will never commit a violent crime, with or without a gun. (Kleck Op., Ex. 1 at 2.). Additionally, long-guns are rarely used in crime. (Expert Opinion of Professor William English, Ex. 2 at 6.)

The statistical evidence strongly suggests "age-based restrictions on purchase and possession of firearms . . . have no detectable crime-reducing effect," including the federal handgun ban upheld in *BATFE*. (Kleck Op., Ex. 1 at 3.) *See* Gary Kleck, *Regulating Guns Among Young Adults*, Am. J. of Crim. Just. 44:689–704, 699 ("The federal ban on 18–20-year-olds purchasing handguns from licensed dealers . . . does not appear to have reduced the 18–20-year-old share of violent crime . . . . the ban was apparently ineffective in reducing criminal violence."). Statistics also show adults in this age group are most susceptible to violent crime (Kleck Op., Ex. 1 at 2–3); adults between the ages of 18 and 24 are the most frequent victims of violent crime, suffering 25.3% of violent crime incidents. (English Op., Ex. 2 at 6–7.) By removing the ability to purchase firearms, the Ban removes the primary—and most effective—means American citizens choose to engage in self-defense. (Kleck Op., Ex. 1 at 2–3.) *See also* Kleck, *supra*, at 695 ("[T]he deterrent and defensive effects of gun carrying and defensive use among crime victims and prospective victims had crime-reducing effects that counterbalanced any crime-increasing effects of young adults carrying concealed guns.")

26

Far from reducing violent crime, there is a strong likelihood the Ban will result in more victimization of Floridians between the ages of 18 and 20 by eliminating their most-effective means of self-defense: purchasing and possessing firearms. The evidence suggests the fit between the Ban and the stated goal of reducing gun violence, particularly on school campuses, is not reasonable. And finally, given this lack of reasonable fit, because the Ban eradicates the right to purchase firearms of *all* 18-to-20-year-olds, including those with no connection to school campuses, it is substantially more burdensome than reasonably necessary. *Turner I*, 512 U.S. at 665. A law that substantially restricts a core Second Amendment right is not narrowly tailored enough to satisfy intermediate scrutiny—and thus the Ban fails here.

Defendants argue that by pushing transfers of firearms to 18-to-20-year-olds out of the regulated legal market and into unregulated realm of gifts and loans that do not require background checks, these adults will now only obtain firearms under the judgment of parents or guardians. (Defs.' Mot. at 23.) Preliminarily, there is no requirement under the law that an individual obtain this gift/loan from a parent or guardian, as opposed to anyone else willing to gift or loan a firearm. Regardless, Prohibiting the purchase of firearms through the legal market moves firearms transfers out of regulated, registered commercial channels, and the accompanying public safety protections established for those channels, including the National Instant Criminal Background Check System. Thus, the effect of the Ban is to force

18-to-20-year-olds to obtain firearm only by the unregulated transfer of firearms without any background checks.

It is no answer to say the Ban meets constitutional scrutiny because it leaves open a slim channel for a portion of the affected age group to obtain firearms through the beneficence of others. *See Heller*, 554 U.S. at 629, 634–35 (rejecting the argument "that it is permissible to ban the possession of handguns so long as the possession of other firearms . . . is allowed" and holding that the ban fails under any level of scrutiny). Because the Ban is not narrowly tailored, and there is an insufficient "fit" between the Ban and its asserted interests, the law cannot survive intermediate scrutiny.

## C.    Florida's Ban Denies 18–to-20-Year-Old Responsible, Adult Citizens Equal Protection of the Law.

Because the Ban impermissibly burdens the right of 18-to-20-year-olds to purchase firearms and exercise their fundamental Second Amendment rights based on a classification, it violates the Equal Protection Clause of the Fourteenth Amendment. U.S. Const. amend. XIV.

In the equal protection context, legislative classifications that "'interfere[] with the exercise of a fundamental right'" demand strict scrutiny. *Morrissey v. United States*, 871 F.3d 1260, 1268 (11th Cir. 2017) (quoting *Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 312 (1976); *Leib v. Hillsborough County Pub. Transp. Com'n*, 558 F.3d 1301, 1306 (11th Cir. 2009) (holding if a law "impinges

28

on a fundamental right, it is subject to strict scrutiny")). A fundamental right "is one that is 'explicitly or implicitly guaranteed by the Constitution." *Morrissey*, 871 F.3d at 1268 (quoting *San Antonio Indep. Sch. Dist.*, 411 U.S. at 33)). Because the Ban burdens a fundamental Second Amendment right, the Ban is subject to strict scrutiny—a test that it fails.

Even if the Court were to apply a rational basis test, as Defendants argue, (Defs.' Mot. at 24–26), the Ban nonetheless fails. As the court observed in *Leib*, this test asks: "(1) whether the government has the power or authority to regulate the particular area in question, and (2) whether there is a rational relationship between the government's objective and the means it has chosen to achieve it." 558 F.3d at 1306. Defendants offer no additional arguments on this point beyond those made in relation to intermediate scrutiny, arguing only "because the statute meets intermediate scrutiny, it necessarily passes rational basis review." (Defs.' Mot. at 26.)

As discussed above, there is at most a highly tenuous relationship between the purpose of the Ban, e.g., reducing gun violence, particularly in schools, and the means chosen to achieve it: a wholesale prohibition on the purchase of firearms by all 18-to-20-year-old adult citizens. Plaintiffs are entitled to discovery to demonstrate that the Defendants lack evidence to support this prohibition. The Ban is neither limited to 18-to-20-year-old adults who are still in some form of schooling

29

nor does it contain any school-related provision whatsoever. Instead, it applies to an age group that is beyond compulsory schooling.

Further, the Ban pushes this age group out of the regulated firearms market that requires background checks and fully into the unregulated sphere of loans and gifts. There can be no rational relationship between the asserted government interest in preventing the criminal use of firearms among the targeted age group and a law that requires this supposedly-more-dangerous age group to acquire firearms without a background check while permitting the similarly situated group of adults over 21 to acquire a firearm with a background check. If anything, such a scheme seems designed to increase criminal use of firearms by the supposedly-more-dangerous because there is no check to ensure prohibited persons do not acquire firearms.

### III. THE ATTORNEY GENERAL IS A PROPER PARTY.

Contrary to Defendants' assertions (Defs.' Mot. 26–33), the Attorney General is a proper party to this case. A state official may be sued in her official capacity for prospective injunctive relief without violating the Eleventh Amendment. *Ex Parte Young*, 209 U.S. 123 (1908). Such an official is a proper party to a suit when "his office imbues him with the responsibility to enforce the law or laws at issue in the suit." *Grizzle v. Kemp*, 634 F.3d 1314, 1319 (11th Cir. 2011). The Florida Attorney General has such a responsibility and is therefore a proper party to this action.

The Attorney General is the chief legal officer for the State Florida. Art. IV, § 4(b), Fla. Const.; *see also* Fla. Stat. § 16.01(2); (7). The Attorney General "[s]hall appear in and attend to such suits or *prosecutions* in any other courts of this state . . . ." Fla. Stat. § 16.01(5) (emphasis added); *see also Love v. State*, 569 So. 2d 807, 810 (Fla. 1st DCA 1990) ("The attorney general of the state . . . is an arm of the prosecution."); *see Thompson v. Wainwright*, 714 F.2d 1495, 1500 (11th Cir. 1983) ("By Florida judicial decisions, the grant of specific state powers to the attorney general does not deprive him of the powers belonging to him under the common law, which include prosecuting all actions necessary for the protection and defense of the property and revenue of the state") (citations omitted).

The Attorney General "[s]hall appear in and attend to, in behalf of the state, all suits or prosecutions, civil or criminal or in equity, in which the state may be a party, or in anywise interested, in the Supreme Court and district courts of appeal of this state." Fla. Stat. § 16.01(4). The Attorney General is the "*only truly indispensable party* to an action attacking the constitutionality of Florida legislation." *Brown v. Butterworth*, 831 So.2d 683, 689–90 (Fla. 4th DCA 2002) (emphasis added); *see also id*. at 690 n.9 ("In this instance, we use the term 'indispensable party' to mean a party without whom the action cannot proceed.").

For these reasons, the Attorney General is a proper party. To hold otherwise ignores her Constitutional, statutory, and common law powers.

31

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court deny Defendants' Motion to Dismiss.

Respectfully submitted,

/s/*John Parker Sweeney*

Kenneth W. Sukhia (FBN: 266256)          John Parker Sweeney
Sukhia & Williams Law Group, PLLC        James W. Porter, III
241 E. 6th Ave.                          Marc A. Nardone
Tallahassee, FL 32303                    BRADLEY ARANT BOULT CUMMINGS
Telephone: (850) 383-9111                1615 L Street, NW
ksukhia@sukhiawilliamslaw.com            Washington, DC 20036
                                         Tel: (202) 393-7150
                                         jsweeney@bradley.com
                                         jporter@bradley.com
                                         mnardone@bradley.com
                                         (Admitted *Pro Hac Vice*)

                                         Eliot B. Peace (FBN: 124805)
                                         BRADLEY ARANT BOULT CUMMINGS
                                         100 N. Tampa Street, Suite 2200
                                         Tampa, FL 33602
                                         Telephone: (813) 559-5500
                                         epeace@bradley.com

                                         *Counsel for Plaintiffs*

## **Local Rule 7.1(F) Certificate of Compliance**

Pursuant to Local Rule 7.1(F), I certify the foregoing pleading contains 7,544 words.

/s/*Eliot B. Peace*
*Counsel for Plaintiffs*

## **Local Rule 7.1(K) Request for Oral Argument**

Pursuant to Local Rule 7.1(K), Plaintiffs request this Response in Opposition be heard telephonically at oral argument. Plaintiffs estimate 60 minutes will be required for argument.

/s/*Eliot B. Peace*
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic notification to all counsel of record, as follows:

AMIT AGARWAL (FBN 125637)
Solicitor General

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General

BARBARA JEAN THRONE (FBN 776505)
Senior Assistant Attorney General

TIMOTHY NEWHALL (FBN 391255)
Senior Assistant Attorney General

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Tel: (850) 414-3681
amit.agarwal@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
barbara.throne@myfloridalegal.com
timothy.newhall@myfloridalegal.com

CHRISTOPHER J. BAUM (FBN 1007882)
Deputy Solicitor General
Office of the Attorney General
State of Florida
1 SE 3rd Ave Suite 900
Miami, FL 33131
(786) 792-6269
christopher.baum@myfloridalegal.com

/s/ *Eliot B. Peace*
*Counsel for Plaintiffs*