# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| NATIONAL RIFLE ASSOCIATION | ) | |
| OF AMERICA, INC., *and* | ) | |
| RADFORD FANT, | ) | |
| *Plaintiffs,* | ) | |
| | ) | Civil Action No. 4:18-cv-137- |
| v. | ) | MW-MAF |
| | ) | |
| RICK SWEARINGEN, in his Official | ) | |
| Capacity as Commissioner of the Florida | ) | |
| Department of Law Enforcement, *and* | ) | |
| ASHLEY MOODY, | ) | |
| in her Official Capacity | ) | |
| as Attorney General of Florida, | ) | |
| *Defendants.* | ) | |

**EVERYTOWN FOR GUN SAFETY SUPPORT FUND'S
AMICUS CURIAE BRIEF IN SUPPORT OF DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO
PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

William J. Taylor, Jr.
NYS Bar No. 3958956 (admitted in N.D. Fla.)
Everytown Law
450 Lexington Avenue, P.O. Box 4184
New York, NY 10017
(646) 324-8215
wtaylor@everytown.org

Darren A. LaVerne*
Karen S. Kennedy*
Jessica K. Weigel*
Dayna M. Chikamoto*
Kramer Levin Naftalis & Frankel LLP
1177 Avenue of the Americas
New York, New York 10036
(212) 715-9190
*\* Of Counsel*

*Attorneys for Everytown for Gun Safety
Support Fund*

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Everytown for Gun Safety Support Fund has no parent corporations. It has no stock and hence no publicly held company owns 10% or more of its stock.

# **<u>TABLE OF CONTENTS</u>**

<u>**Page**</u>

CORPORATE DISCLOSURE STATEMENT ........................................................1

STATEMENT OF INTEREST .................................................................................1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................................2

ARGUMENT ...........................................................................................................5

I.     RESTRICTIONS ON THE TRANSFER OF FIREARMS TO INDIVIDUALS UNDER 21 COMPORT WITH HISTORICAL UNDERSTANDINGS OF THE SECOND AMENDMENT—AND THUS REGULATE CONDUCT OUTSIDE ITS SCOPE .........................................5

II.     EVEN IF THIS COURT FINDS THAT THE CONDUCT SECTION 790.065(13) REGULATES IS WITHIN THE SCOPE OF THE SECOND AMENDMENT, IT SHOULD APPLY INTERMEDIATE SCRUTINY AND UPHOLD THE LAW .........................................................................11

CONCLUSION ......................................................................................................13

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*,
   910 F.3d 106 (3d Cir. 2018) ...................................................................2

*District of Columbia v. Heller*,
   554 U.S. 570 (2008)...............................................3, 4, 6, 10, 11, 12

*GeorgiaCarry.Org, Inc. v. Georgia*,
   687 F.3d 1244 (11th Cir. 2012) .......................................................3, 5

*Gould v. Morgan*,
   907 F.3d 659 (1st Cir. 2018), *cert. denied*, No. 18-1272, 2020 WL
   3146683 (U.S. June 15, 2020) ...............................................................3

*Heller v. District of Columbia*,
   670 F.3d 1244 (D.C. Cir. 2011) ............................................................6

*Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*,
   417 F. Supp. 3d 747 (W.D. Va. 2019), *appeal docketed*, No. 19-
   2250 (4th Cir. Nov. 7, 2019)..................................................................5

*Kolbe v. Hogan*,
   849 F.3d 114 (4th Cir. 2017) (en banc) ...............................................3

*Lindenau v. Alexander*,
   663 F.2d 68 (10th Cir. 1981) ..............................................................11

*Mitchell v. Atkins*,
   No. 3:19-cv-05106-RBL, 2020 WL 5106723 (W.D. Wash. Aug.
   31, 2020) .........................................................................................5, 7, 8

*N.Y. State Rifle & Pistol Ass'n v. Cuomo*,
   804 F.3d 242 (2d Cir. 2015) ..................................................................6

*Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms
   & Explosives*,
   700 F.3d 185 (5th Cir. 2012) ......................................................4, 6, 8, 9

*Powers v. Ohio,*
    499 U.S. 400 (1991).........................................................................10

*Rehaif v. United States.*
    139 S. Ct. 2191 (2019)......................................................................2

*Rupp v. Becerra,*
    401 F. Supp. 3d 978 (C.D. Cal. 2019), *appeal docketed*, No. 19-
    56004 (9th Cir. Aug. 28, 2019)........................................................2

*Silvester v. Harris,*
    843 F.3d 816 (9th Cir. 2016) ..........................................................11

*United States v. Focia,*
    869 F.3d 1269 (11th Cir. 2017) ........................................................3

*United States v. Rene E.,*
    583 F.3d 8 (1st Cir. 2009).............................................................6, 7

*United States v. Rozier,*
    598 F.3d 768 (11th Cir. 2010) (per curiam) ...................................10

*United States v. White,*
    593 F.3d 1199 (11th Cir. 2010) ........................................................8

**State Cases**

*People v. Aguilar,*
    2 N.E.3d 321 (Ill. 2013)...............................................................6, 9

**Federal Statutes**

10 U.S.C. § 246...................................................................................10

10 U.S.C. § 505.....................................................................................9

18 U.S.C. § 922.....................................................................................5

**State Statutes**

Fla. Stat. § 790.065 .................................................................2, 3, 4, 12

Wash. Rev. Code § 9.41.010.................................................................7

Wash. Rev. Code § 9.41.240 .......................................................................7

**Constitutional Provisions**

Second Amendment ........................................................................*passim*

Fourteenth Amendment ....................................................................2, 7

**Other Authorities**

L. Alvarez, *Army and Marine Corps Grant More Felony Waivers*,
   N.Y. Times (Apr. 22, 2008) ................................................................10

*Join the Military*, USAGov, https://www.usa.gov/join-military ........................9, 10

Thomas M. Cooley, *A Treatise on Constitutional Limitations* (5th ed.
   1883) ............................................................................................11

## STATEMENT OF INTEREST

Amicus curiae Everytown for Gun Safety Support Fund ("Everytown") is the education, research, and litigation arm of Everytown for Gun Safety, the nation's largest gun-violence-prevention organization, with nearly six million supporters across the country, including close to one hundred thousand in Florida. Everytown for Gun Safety was founded in 2014 as the combined effort of Mayors Against Illegal Guns, a national, bipartisan coalition of mayors combating illegal guns and gun trafficking, and Moms Demand Action for Gun Sense in America, an organization formed after a 20-year-old gunman murdered twenty children and six adults at an elementary school in Newtown, Connecticut. The mayors of more than twenty-five Florida cities are members of Mayors Against Illegal Guns. Everytown also includes a large network of gun-violence survivors who are empowered to share their stories and advocate for responsible gun laws.

Everytown's mission includes defending common-sense gun safety laws by filing amicus briefs that provide historical context and doctrinal analysis that might otherwise be overlooked. Everytown has filed such briefs in numerous Second Amendment cases—including a prior brief in this case, *see* Dkt. No. 83, and in similar cases involving challenges to minimum-age restrictions on the purchase and sale of firearms, *see Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, No. 19-2250 (4th Cir.); *Mitchell v. Atkins*, No. 3:19-cv-05106-RBL

(W.D. Wash.). Several courts have also cited and expressly relied on Everytown's amicus briefs in deciding Second Amendment and other gun cases. *See, e.g.*, *Ass'n of N.J. Rifle & Pistol Clubs, Inc. v. Att'y Gen. N.J.*, 910 F.3d 106, 112 n.8 (3d Cir. 2018); *Rupp v. Becerra*, 401 F. Supp. 3d 978, 991-92 & n.11 (C.D. Cal. 2019), *appeal docketed*, No. 19-56004 (9th Cir. Aug. 28, 2019); *see also Rehaif v. United States*. 139 S. Ct. 2191, 2210-11, nn.4 & 7 (2019) (Alito, J., dissenting).

## INTRODUCTION AND SUMMARY OF ARGUMENT

The Florida legislature enacted the Marjory Stoneman Douglas High School Public Safety Act in the wake of the murder of fourteen students and three staff members and the wounding of seventeen more by a 19-year-old gunman in Parkland in 2018. Among other things, the Act prohibits any person under 21 years of age from purchasing firearms and prohibits licensed importers, manufacturers, or dealers from making or facilitating the sale or transfer of a firearm to a person under 21. *See* Fla. Stat. § 790.065(13). Plaintiffs the National Rifle Association and Radford Fant allege that these provisions violate the Second and Fourteenth Amendments. *See* Second Am. Compl. ¶¶ 25-33.

Defendants Rick Swearingen and Ashley Moody ("the State") moved to dismiss, *see* Dkt. No. 73, and Everytown submitted an amicus brief in support of that motion, *see* Dkt. No. 83. This Court denied the State's motion on May 1, 2020, *see* Dkt. No. 94 at 7, ruling only on the "narrow issue" of whether "[p]laintffs 'ha[ve]

2

plausibly pled enough in [their] [C]omplaint to get into the courthouse and be heard.'" *Id.* (citation omitted). The Court explained: "This Court is not asked to, and does not, decide whether section 790.065(13) is constitutional." *Id.*

The State has now moved for summary judgment, *see* Dkt. No. 107, explaining why the statute is constitutional, and plaintiffs have cross-moved, *see* Dkt. No. 109. Everytown respectfully refers the Court to the arguments set out in its prior amicus brief, *see* Dkt. No. 83, and submits this brief, in support of the State's motion for summary judgment and in opposition to plaintiffs' cross-motion, to supplement those arguments.

After the Supreme Court's decision in *District of Columbia v. Heller*, 554 U.S. 570 (2008), the Eleventh Circuit and every other circuit to have considered the issue apply a two-step framework to Second Amendment challenges. *See GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1261 n.34 (11th Cir. 2012); *Kolbe v. Hogan*, 849 F.3d 114, 132-33 (4th Cir. 2017) (en banc) (collecting decisions); *Gould v. Morgan*, 907 F.3d 659, 668-69 (1st Cir. 2018), *cert. denied*, No. 18-1272, 2020 WL 3146683 (U.S. June 15, 2020). At the first step, courts ask whether the conduct restricted by the challenged law historically has been protected by the Second Amendment. *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017). Here, the answer is no: for more than 150 years, courts and legal scholars have considered laws restricting the ability of individuals under 21 (the age of

3

majority under the common law) to purchase firearms to be consistent with the Second Amendment. And, as the Supreme Court acknowledged in *Heller*, longstanding forms of firearms regulation including "laws imposing conditions and qualifications on the commercial sale of arms" are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26. Accordingly, Section 790.065(13) does not infringe upon a right protected by the Second Amendment.

Even if the law did burden conduct within the scope of the Second Amendment, Section 790.065(13) would be constitutional at the second step of the analysis. That step applies a "means-end" test which, in this Circuit and with regard to the conduct restricted by this statute, asks whether the statute survives intermediate scrutiny—that is, whether there is a reasonable fit between the challenged regulation and a substantial government interest. Given the importance of the goal of the statute—protecting public safety and reducing gun violence—and the targeted nature of the regulation, Section 790.065(13) survives intermediate scrutiny.

For these reasons, several federal courts, including the Fifth Circuit, have upheld age-based restrictions on firearms transfers against Second Amendment challenges. *See Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 700 F.3d 185 (5th Cir. 2012) ("*BATFE*") (upholding federal criminal statutes making it unlawful for federal firearms licensees to sell handguns

and handgun ammunition to those under 21, 18 U.S.C. § 922(b)(1) and (c)(1), and federal regulations implementing those statutes); *Hirschfeld v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 417 F. Supp. 3d 747 (W.D. Va. 2019) (same), *appeal docketed*, No. 19-2250 (4th Cir. Nov. 7, 2019); *Mitchell v. Atkins*, No. 3:19-cv-05106-RBL, 2020 WL 5106723 (W.D. Wash. Aug. 31, 2020) (upholding Washington law prohibiting sales of semiautomatic rifles to individuals under 21). We respectfully submit that this Court should do the same.[1]

## ARGUMENT

### I.   RESTRICTIONS ON THE TRANSFER OF FIREARMS TO INDIVIDUALS UNDER 21 COMPORT WITH HISTORICAL UNDERSTANDINGS OF THE SECOND AMENDMENT—AND THUS REGULATE CONDUCT OUTSIDE ITS SCOPE

The first step in the two-part test binding in this Circuit examines the history of regulation to determine whether "the restricted activity is protected by the Second Amendment." *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1260 n.34. If a law restricts conduct that falls outside of the Second Amendment's scope as historically understood, it is constitutional, and there is no need to proceed to the step-two scrutiny analysis. *See id.*[2]

---

[1] Plaintiffs' equal protection claim also fails, for the reasons set out in the State's motion (Dkt. No. 107 at 30-32) and Everytown's prior brief (Dkt. No. 83 at 19-20): age is not a suspect classification and the challenged law easily passes rational basis review.

[2] Plaintiffs purport to apply a very different Second Amendment test. *See* Dkt. No. 109 at 20 ("Plaintiffs respectfully request the Court employ the text,

As Everytown explained in its prior brief, that is precisely the situation here. Restricting the sale or transfer of firearms to individuals under 21 is a longstanding form of firearms regulation that historically has fallen outside the scope of the Second Amendment. *See* Dkt. No. 83 at 5-18; *United States v. Rene E.*, 583 F.3d 8, 12, 16 (1st Cir. 2009) (holding, based on historical analysis alone, that law regulating possession of handguns by juveniles did not violate the Second Amendment); *People v. Aguilar*, 2 N.E.3d 321, 329 (Ill. 2013) (historical evidence set forth in other decisions supports "the obvious and undeniable conclusion that the possession of handguns by minors is conduct that falls outside the scope of the second amendment's protection"); *cf. BATFE*, 700 F.3d at 204 ("Although we are inclined to uphold the challenged federal laws at step one of our analytical framework, in an abundance of caution, we proceed to step two.").

In particular, (a) the most relevant historical period begins around 1868 with

---

history, and tradition test set forth in *Heller* because the two-part test is inappropriate …."). In fact, a test based on "text, history and tradition" is an extreme outlier approach advanced by a handful of dissenting judges. *See, e.g.*, *Heller v. District of Columbia*, 670 F.3d 1244, 1264-69 (D.C. Cir. 2011) ("*Heller II*") (rebutting dissent that advocated a "text, history, and tradition" approach without means-end scrutiny); *BATFE*, 700 F.3d at 197 (in adopting two-step framework, noting and rejecting contrary approach in *Heller II* dissent). The two-part test, binding in the Eleventh Circuit and elsewhere, is the test faithful to *Heller*. *See, e.g.*, *id.* ("[W]e are persuaded to adopt this framework because it comports with the language of *Heller*."); *N.Y. State Rifle & Pistol Ass'n v. Cuomo*, 804 F.3d 242, 254 (2d Cir. 2015) ("Th[e] two-step rubric flows from the dictates of *Heller* and *McDonald* and our own precedents[.]").

the Fourteenth Amendment's ratification (Dkt. No. 83 at 7-9); (b) for most of the history of the United States, including when the Second and Fourteenth Amendments were ratified, individuals under 21 were considered minors (*id.* at 9-10); (c) laws restricting the sale or transfer of firearms to minors have existed for more than 150 years (*id.* at 11-13); and (d) several courts have acknowledged the longstanding history of age-based restrictions on the transfer of firearms and have upheld such restrictions against Second Amendment challenges (*id.* at 13-18).

A recent decision of a federal court in Washington confirms these points. *See Mitchell*, 2020 WL 5106723, at *3-7. *Mitchell* involved a challenge to a Washington law that prohibits those under 21 from purchasing or possessing (except in their home or other limited circumstances) a "semiautomatic assault rifle." *See* Wash. Rev. Code § 9.41.240(1), (3).[3] The court rejected plaintiffs' argument that this age restriction infringed their Second Amendment rights. It held that prohibiting sales to and possession by those under 21 "*does not burden Second Amendment rights*," and thus is constitutional at the first step of the two-part inquiry, because "reasonable age restrictions on the sale, possession, or use of firearms have an established history in this country." *Id.* at *5 (emphasis added). "U.S. law has long recognized that age can be decisive in determining rights and obligations," the court explained. *Id.* at *4.

---

[3] The law defines "semiautomatic assault rifle" as any operable, non-antique rifle with semiautomatic firing action. *See* Wash. Rev. Code § 9.41.010(27).

7

"For most of our country's history, 18- to 20-year-olds were considered minors or 'infants' without the full legal rights of adulthood.... Against this historical backdrop, it is unsurprising that laws prohibiting those under 21 from purchasing firearms are longstanding." *Id.* The court observed that such laws have existed from the nineteenth century up to the present, and that, "based on this historical evidence, several courts have concluded that firearms age restrictions, particularly those for people under 21, fall outside the Second Amendment's ambit." *Id.*[4]

In their summary judgment motion, plaintiffs do not engage with any of the historical statutes and case law restricting the sale or transfer of firearms to those under 21.[5] Instead, they rest principally on the assertion that early militia laws required some male citizens under 21 to serve in the militia, equipped with a firearm. *See* Dkt. No. 109 at 9-10. But an obligation to have a weapon in one context did not

---

[4] Even though it conclusively held that plaintiffs' challenge failed at the first step of the two-part inquiry and was constitutional for that reason alone, the *Mitchell* court also held that Washington's age restriction would survive the applicable (intermediate) standard of scrutiny. *See id.* at *5-7.

[5] Plaintiffs dismiss the Fifth Circuit's reliance on these laws in *BATFE* on the ground that they "c[ame] decades after the ratification of the Second Amendment." Dkt. No. 109 at 14. Leaving aside the errors in that criticism on its own terms, *cf. United States v. White*, 593 F.3d 1199, 1205-06 (11th Cir. 2010) (holding that, "although passed relatively recently," in 1996, the federal law prohibiting firearm possession by those convicted of a misdemeanor crime of domestic violence is a "longstanding prohibition" under *Heller* and thus does not violate the Second Amendment), it is certainly no response in *this* case, where plaintiffs challenge a *state law* restriction. Here, as Everytown's prior brief explained (Dkt. No. 83 at 7-9), the most relevant historical period begins around 1868 with the Fourteenth Amendment's ratification.

(and does not) entail a *right* to keep and bear arms in every context. The Fifth Circuit has already considered and rejected precisely this argument. *See BATFE*, 700 F.3d at 204 n.17.[6] It explained that, *first*, "the right to arms is not co-extensive with the duty to serve in the militia," in light of *Heller*'s decoupling the two; *second*, plaintiffs' argument "proves too much," because some states required militia service for boys as young as 16, well below the age now urged for the Second Amendment's scope; and *third*, because the age of service fluctuated below 18 and up to 21 in several states over time, it is implausible "that the right to purchase arms must fully vest precisely at age 18—not earlier or later." *Id.*[7]

The Fifth Circuit also stressed "the anachronism at play" in plaintiffs' argument: "we no longer have a founding-era-style militia." *Id.* Moreover, its modern equivalents reveal equally fatal flaws in plaintiffs' effort to derive rights from the fact of serving with firearms. Seventeen-year-olds may serve active duty in the U.S. military,[8] but even plaintiffs do not maintain that the Second Amendment

---

[6] Plaintiffs in *Mitchell*—who included, as in *BATFE* and as here, the NRA—also advanced this argument unsuccessfully. *See* Plaintiffs' Reply in Support of Summary Judgment and Opposition to Cross Motion, No. 3:19-cv-05106, Dkt. No. 103, at 9-12 (W.D. Wash.) (filed Apr. 28, 2020).

[7] *See also Aguilar*, 2 N.E.3d at 329 ("[A]lthough many colonies *permitted* or even *required* minors to own and possess firearms for purposes of militia service, nothing like a right for minors to own and possess firearms has existed at any time in this nation's history").

[8] *See* 10 U.S.C. § 505(a) (enlistment permitted for "persons who are not less than seventeen years of age nor more than forty-two years of age"; parental consent required for 17-year-olds); *Join the Military*, USAGov,

extends to those under 18.[9] And the ability of many individuals with felony convictions to serve in the U.S. military, *see* L. Alvarez, *Army and Marine Corps Grant More Felony Waivers*, N.Y. Times (Apr. 22, 2008), https://nyti.ms/3butwIA, cannot trump *Heller*'s admonition that such individuals fall outside the Second Amendment's scope. *See Heller*, 554 U.S. at 626 ("[N]othing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons[.]"); *United States v. Rozier,* 598 F.3d 768, 771 (11th Cir. 2010) (per curiam) (concluding from *Heller* that "statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment").

    More generally, plaintiffs fail to recognize that a government mandate to engage in certain conduct does not create an individual right to do so. For example, even though citizens have a duty to serve on a jury, "[a]n individual juror does not have a right to sit on any particular petit jury," *Powers v. Ohio*, 499 U.S. 400, 409

---

https://www.usa.gov/join-military ("You must be at least 17 to enlist in any branch of the active military.") (last visited Sept. 9, 2020); *see also* 10 U.S.C. § 246 ("The militia of the United States consists of all able-bodied males at least 17 years of age[.]"). Plaintiffs reveal their awareness of this flaw in their argument when they state, incorrectly (or at best misleadingly), that "[a]t *age 18*, citizens are eligible to serve in the military." Dkt. No. 109 at 16 (citing 10 U.S.C. § 505(a)), which sets lower age limit at seventeen) (emphasis added).

    [9] Not only do plaintiffs limit their challenge to those aged 18 to 20, but they appear to approve of restrictions for those under 18. *See, e.g.*, Dkt. No. 109 at 4 (referring to "minors under the age of 18" as among "individuals who are considered unsafe"); *id.* at 15 ("Second Amendment rights historically … [were] denied to juveniles[.]").

(1991); and even though there is a duty to serve in the military if drafted, "[i]t is well established that there is no right to enlist in this country's armed services, " *Lindenau v. Alexander*, 663 F.2d 68, 72 (10th Cir. 1981). *Heller* itself makes this clear, explaining that "weapons … most useful in military service," not typically possessed by law-abiding citizens for lawful purposes, fall outside of the Second Amendment's scope, *see* 554 U.S. at 625-28—even though the government may mandate their use in the military or militia.

Accordingly, this Court should reject plaintiffs' appeal to founding-era militia laws to distract from the long and clear history of regulating the ability of those under 21 to acquire firearms. The historical statutes and decisions cited in Everytown's prior brief put beyond doubt that Section 790.065(13)'s age limitations are part of a longstanding regulatory tradition, and thus constitutional at the first step of the Eleventh Circuit's test.

## II. EVEN IF THIS COURT FINDS THAT THE CONDUCT SECTION 790.065(13) REGULATES IS WITHIN THE SCOPE OF THE SECOND AMENDMENT, IT SHOULD APPLY INTERMEDIATE SCRUTINY AND UPHOLD THE LAW

As Everytown explained in its prior brief (Dkt. No. 83 at 18), there is "near unanimity in the post-*Heller* case law that when considering regulations that fall within the scope of the Second Amendment, intermediate scrutiny is appropriate." *Silvester v. Harris*, 843 F.3d 816, 823 (9th Cir. 2016). That standard is appropriate here because the challenged law does not infringe on the core of the Second

Amendment right identified in *Heller*. It does not prohibit individuals under 21 from possessing firearms or acquiring firearms in ways not restricted by Florida law, including by receiving a firearm as a gift from someone other than a licensed importer, manufacturer, or dealer, for defense in the home (or elsewhere).

Section 790.065(13) withstands intermediate scrutiny. The government's stated objective—to enhance public safety—is undisputedly important. As the State's brief and the amicus briefs of Giffords Law Center et al. explain, restricting the ability of those under 21 to acquire firearms is reasonably tailored to promoting public safety, because individuals in that age range are at increased risk for committing violent crimes. *See, e.g.*, Dkt. No. 107 at 22-29.

## <u>CONCLUSION</u>

For the foregoing reasons, and those set forth by the State, the Court should

grant the State's motion for summary judgment and deny plaintiffs' motion.

Respectfully submitted,

Dated:  September 10, 2020        By:   */s/ William J. Taylor, Jr.*
                                        William J. Taylor, Jr.
                                        NYS Bar No. 3958956 (admitted in N.D. Fla.)
                                        Everytown Law
                                        450 Lexington Avenue
                                        P.O. Box 4184
                                        New York, NY 10017
                                        (646) 324-8215
                                        wtaylor@everytown.org

                                        Darren A. LaVerne*
                                        Karen S. Kennedy*
                                        Jessica K. Weigel*
                                        Dayna M. Chikamoto*
                                        Kramer Levin Naftalis & Frankel LLP
                                        1177 Avenue of the Americas
                                        New York, New York 10036
                                        (212) 715-9190
                                        * *Of Counsel*

                                        *Attorneys for Everytown for Gun Safety*
                                        *Support Fund*

## <u>LOCAL RULE 7.1(F) CERTIFICATION</u>

In accordance with N.D. Fla. Loc. R. 7.1(F), the undersigned counsel

certifies compliance with the word limits in N.D. Fla. Loc. R. 7.1(F). The total

number of words in the foregoing memorandum of law, exclusive of the case style,

signature block, and certificate of service, and inclusive of headings, footnotes, and

quotations, is 3,110.

*/s/ William J. Taylor, Jr.*

William J. Taylor, Jr.
NYS Bar No. 3958956 (admitted in N.D. Fla.)
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10017
(646) 324-8215
wtaylor@everytown.org

*Attorney for Everytown for Gun Safety Support Fund*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that the foregoing document was filed this 10th day of

September, 2020, through this Court's Electronic Filing System. Parties will be

served and may obtain copies electronically, through the operation of the

Electronic Filing System.

*/s/ William J. Taylor, Jr.*
William J. Taylor, Jr.
NYS Bar No. 3958956 (admitted in N.D. Fla.)
Everytown Law
450 Lexington Avenue
P.O. Box 4184
New York, NY 10017
(646) 324-8215
wtaylor@everytown.org

*Attorney for Everytown for Gun Safety Support Fund*

2