# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRCT OF FLORIDA

| | |
|---|---|
| NATIONAL RIFLE ASSOCIATION OF AMERICA, INC., RADFORD FANT,<br><br>*Plaintiffs*,<br><br>v.<br><br>RICK SWEARINGEN, in his official capacity as Commissioner of the Florida Department of Law Enforcement, ASHLEY MOODY, in her official capacity as Attorney General of Florida,<br><br>*Defendants*. | Civil Action No.:<br>4:18-CV-00137-MW-MAF |

**BRIEF OF *AMICI CURIAE* GIFFORDS LAW CENTER TO PREVENT GUN VIOLENCE, BRADY, TEAM ENOUGH, ORANGE RIBBONS FOR GUN SAFETY, AND MARCH FOR OUR LIVES ACTION FUND**

## INTEREST OF THE *AMICI CURIAE*

*Amicus curiae* Giffords Law Center to Prevent Gun Violence ("Giffords Law Center") is a non-profit policy organization dedicated to researching, writing, enacting, and defending laws and programs proven to effectively reduce gun violence. The organization was founded more than a quarter-century ago following a gun massacre at a San Francisco law firm and was renamed Giffords Law Center in October 2017 after joining forces with the gun-safety organization founded by former Congresswoman Gabrielle Giffords. Today, Giffords Law Center provides free assistance and expertise to lawmakers, advocates, legal professionals, law enforcement officials, and citizens who seek to improve the safety of their communities. Giffords Law Center has provided informed analysis as an *amicus* in many firearm-related cases, including in *Mitchell* v. *Atkins*, 2020 WL 5106723 (W.D. Wash. Aug. 31, 2020), *Hirschfeld* v. *Bureau of Alcohol, Tobacco, Firearms & Explosives*, 417 F. Supp. 3d 747 (W.D. Va. 2019), *District of Columbia* v. *Heller*, 554 U.S. 570 (2008), and *McDonald* v. *City of Chicago*, 561 U.S. 742 (2010).[1]

---

[1] Several courts have cited research and information from Giffords Law Center's *amicus* briefs in Second Amendment rulings. *E.g.*, *Hirschfeld*, 417 F. Supp. 3d at 754, 759; *Ass'n of N.J. Rifle & Pistol Clubs* v. *AG N.J.*, 910 F.3d 106, 121-22 (3d Cir. 2018); *Md. Shall Issue* v. *Hogan*, 353 F. Supp. 3d 400, 403-05 (D. Md. 2018); *Stimmel* v. *Sessions*, 879 F.3d 198, 208 (6th Cir. 2018); *Peruta* v. *Cty. of San Diego*, 824 F.3d 919, 943 (9th Cir. 2016) (*en banc*) (Graber, J., concurring). Giffords Law Center filed the latter two briefs under its former name, the Law Center to Prevent Gun Violence.

*Amicus curiae* Brady (formerly the Brady Center to Prevent Gun Violence) is a non-profit organization dedicated to reducing gun violence through education, research, and legal advocacy. Brady has a substantial interest in ensuring that the Second Amendment is not interpreted or applied in a way that would jeopardize the public's interest in protecting individuals, families, and communities from the effects of gun violence. Brady Legal has filed numerous briefs in support of government regulation of firearms. *See e.g., McDonald* v. *City of Chicago*, 561 U.S. 742 (2010); *United States* v. *Hayes*, 555 U.S. 415 (2009); and *District of Columbia* v. *Heller*, 554 U.S. 570 (2008).

*Amicus curiae* Team ENOUGH is a youth-led, Brady-sponsored initiative that educates and mobilizes young people in the fight to end gun violence. Team ENOUGH is committed to bringing a fresh perspective and a common-sense approach to America's gun policy, and has an interest in promoting laws that seek to help bring an end to gun violence. Team ENOUGH has a particular interest in laws affecting Florida: it represents the interests of dozens of Florida students, who are members of three chapters at Florida schools, including two executive council members who lost friends and family in the Marjory Stoneman Douglas shooting.

*Amicus curiae* Orange Ribbons for Gun Safety is a non-profit organization dedicated to pursuing gun safety. On February 14th, 2018, Jaime Guttenberg was murdered at Marjory Stoneman Douglas High School in Parkland,

Florida. Following her murder and the loss of 16 others, Fred Guttenberg started Orange Ribbons for Gun Safety. The mission of Orange Ribbons for Gun Safety is to advocate for candidates, law, and policy supportive of a common sense approach to reducing the gun violence death rate. In addition to strongly supporting laws like the Marjory Stoneman Douglas High School Public Safety Act, Orange Ribbons For Gun Safety's mission includes working across the country to help protect laws that have been passed in the interest of public safety and to enact new laws that will bring down the gun violence death rate.

*Amicus curiae* March For Our Lives Action Fund ("MFOL") is a non-profit organization of young people from across the country who are fighting for sensible gun violence prevention policies that will save lives. After the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, on February 14, 2018, MFOL was formed and immediately began advocating in the state legislature for the Marjory Stoneman Douglas High School Public Safety Act to ensure what happened there would never again occur in Florida. Weeks later, hundreds of thousands of people joined MFOL in Washington, D.C. and sibling marches all over the world for one of the largest single days of protest in history.[2]

---

[2]   "[T]he March for Our Lives event brought out 1,380,666 to 2,181,886 people at 763 locations." Kanisha Bond et al., *Did You Attend the March for Our Lives? Here's What It Looked Like Nationwide*, WASH. POST (Apr. 13, 2018),

Since then, students seeking to effect change have formed hundreds of MFOL chapters across the country. These young people have a vital interest in ensuring that the Constitution is interpreted to allow the enactment of gun violence prevention measures that will protect all Americans, in all communities.

## ARGUMENT

On January 24, 2020, this Court granted leave to Giffords Law Center to Prevent Gun Violence, Brady, Team ENOUGH, Orange Ribbons for Gun Safety, and March for Our Lives Action Fund (together, "*Amici*") to file a consolidated *Amicus* brief in connection with Defendants' then-pending motion to dismiss. (ECF No. 78.) *Amici* and their members include survivors and families impacted by the mass shooting at Marjory Stoneman Douglas High School in Parkland, Florida, as well as gun-violence-prevention advocates who study and support minimum age legislation. *Amici* have a compelling interest in ensuring full consideration of the social science research informing the minimum age law Florida's legislature adopted after the 19-year-old Parkland shooter *legally purchased* the AR-15 semiautomatic rifle he used to massacre 14 students and three instructors.

In their earlier brief, *Amici* identified neuroscience and social science research demonstrating that 18-to-20-year-olds are at higher risk of using firearms

---

https://www.washingtonpost.com/news/monkey-cage/wp/2018/04/13/did-you-attend-the-march-for-our-lives-heres-what-it-looked-like-nationwide/.

to commit crime and attempt suicide, and are also disproportionately likely to be the victims of firearm-related violence.  (ECF No. 79.)  The litigation has since progressed, and both Plaintiffs and Defendants filed motions for summary judgment on September 3, 2020.  (ECF No. 107; ECF No. 109).  *Amici* therefore file this short *amici curiae* brief to supplement their prior submission.  *Amici*'s supplemental brief proposes to: (i) bring to the Court's attention two additional recent studies that were not included in their initial filing and (ii) highlight four key studies cited in their initial filing.[3]  Such research is highly relevant to the resolution of the pending summary judgment motions because, in order to "assess[] the fit between the challenged regulation and the government's asserted objective"—here, public safety—courts can and should consider "empirical data."  *GeorgiaCarry.Org, Inc.* v. *U.S. Army Corps of Eng'rs*, 788 F.3d 1318, 1328 (11th Cir. 2015).  Indeed, several other courts have relied on neuroscience and social science research in rejecting challenges similar to the one here.[4]  This Court should do the same.

---

[3]   *Amici* hereby incorporate their January 24, 2020 brief—ECF No. 79—by reference.

[4]   *See Nat'l Rifle Ass'n of Am., Inc.* v. *Bureau of Alcohol, Tobacco, Firearms, & Explosives,* 700 F.3d 185, 210 n.21 (5th Cir. 2012); *Horsley* v. *Trame*, 808 F.3d 1126, 1133 (7th Cir. 2015); *Hirschfeld*, 417 F. Supp. 3d at 759; *Mitchell*, 2020 WL 5106723, at *6-7.

A.  *Additional Studies and Publications*

- ***The Effects of Minimum Age Requirements*, RAND Corporation (updated Apr. 22, 2020):** Using rigorous criteria for establishing the likely effects of gun-violence-prevention laws, this publication reviews existing research and concludes that minimum age laws may reduce firearm suicides. It also surveys research confirming that young people aged 18-to-20 are at higher risk of using firearms, and especially long guns, in suicide attempts and in criminal activity. Specifically, (i) "[o]f the 8,545 firearm homicides committed in 2016 for which the age of the offender was known, 46.8 percent were perpetrated by individuals aged 12–24 . . . although this group represents only 17.7 percent of the general U.S. population;" (ii) "the association between firearm availability and suicide is strongest among adolescents and young adults" and "[i]n 2017, there were 3,556 suicide deaths among individuals aged 16–21, 46.8 percent of which involved a firearm"; and (iii) long guns play an outsized role in adolescent suicides, with one 2019 study showing that "rifles and shotguns were used in more than half of suicides among adolescent men in rural areas."[5]

- **Paul S. Nestadt et al., *Prevalence of Long Gun Use in Maryland Firearm Suicides*, 7 Injury Epidemiology (2020):** This study "examines the role of long guns in firearm mortality, particularly suicides," in Maryland from 2003 to 2018, and finds that long guns were used in 28.4 percent of suicides across all demographics. The use of long guns in suicide is more pronounced in younger demographics: long guns were used in over 37 percent of suicides by 18-to-24-year-olds, and in nearly 80 percent of suicides by 18-to-24-year-olds in rural areas.[6]

B.  *Selection of Key Studies from Initial Filing*

- **Mariam Arain et al., *Maturation of the Adolescent Brain*, 9 Neuropsychiatric Disease and Treatment 449 (2013):** This article explains the neuroscience behind adolescent behavioral characteristics

---

[5]  Ex. 1, at 2-3.

[6]  Ex. 2, at 2, 4, 6.

such as impulsiveness, "quickness to anger" and "intense mood swings," which put 18-to-20-year-olds at higher risk of violence when they have unfettered access to firearms. As the article explains, "[b]ehavioral control requires a great involvement of cognitive and executive functions," functions that are "localized in the prefrontal cortex, which matures independent of puberty and continues to evolve up until 24 years of age."[7]

- **Katherine A. Vittes et al., *Legal Status and Source of Offenders' Firearms in States with the Least Stringent Criteria for Gun Ownership*, 19 Injury Prevention 26 (2013):** This survey of people incarcerated for gun offenses in 13 states found that 17% of those who responded would have been prohibited from obtaining firearms at the time of their crime of conviction if the minimum legal age in that state had been 21 years. According to the authors, these findings "underscore the importance of minimum-age restrictions."[8]

- **Daniel W. Webster et al., *Association between Youth-Focused Firearm Laws and Youth Suicides*, 292 JAMA 594 (2004):** This August 2004 study found that state laws raising the minimum legal age to purchase a handgun to 21 were associated with a nine percent decline in firearm suicide rates among 18-to-20-year-olds.[9]

- **Monika K. Goyal et al., *State Gun Laws and Pediatric Firearm-Related Mortality*, 144 Pediatrics No. 2 (2019):** This August 2019 study examined the 21,241 firearm-related deaths among U.S. children from 2011 through 2015. Eighteen-to-21-year-olds made up more than half of these deaths (68.7%). But the study found that state gun safety laws make a difference: every 10-point increase in a score measuring the strictness of a state's gun laws "decreases the firearm-related mortality rate in children by 4%" in its fully adjusted model.[10]

---

[7] Ex. 3, at 5, 8.

[8] Ex. 4, at 4-5.

[9] Ex. 5, at 5.

[10] Ex. 6, at 3.

These articles, together with the remainder of the neuroscience research, social science research, and legislative history presented in *Amici*'s initial *amici curiae* brief (*see* ECF No. 79), show that 18-to-20-year-olds are at higher risk of using firearms to commit crime and attempt suicide, and are also disproportionately likely to be the victim of firearm-related violence, and that the Legislature acted appropriately to craft a tailored solution to address that risk. Although there is a rigorous array of studies supporting Florida's minimum-age law, this research would provide a reliable foundation for that law even if it were subject to scholarly dispute or some degree of evidentiary uncertainty. Courts evaluating a law's constitutionality should respect legislatures' reasonable interpretations of empirical research. *See Turner Broad. Sys., Inc.* v. *F.C.C.*, 520 U.S. 180, 195, 212 (1997) (quoting *Turner Broad. Sys., Inc.* v. *F.C.C.*, 512 U.S. 622, 665 (1994)); *Nixon* v. *Shrink Missouri Gov't PAC*, 528 U.S. 377, 402-03 (2000) ("the Court in practice defers to empirical legislative judgments"). Granting Florida and other legislatures this respect after they have carefully weighed evidence for and against a proposed gun safety policy helps safeguard the ability of democratic institutions to fulfill their most basic role—protecting the public.

## CONCLUSION

The Parkland shooting inspired thousands of students and citizens across the country to demand that their leaders enact gun safety measures like

Section 13. These laws enjoy broad and bipartisan public support and have extraordinary potential to save lives. Plaintiffs ask this Court to override that democratic process by stripping legislatures of their power to protect their communities from gun violence with sound laws supported by rigorous social science evidence. But nothing in the Second Amendment requires that result. Section 13 of the Marjory Stoneman Douglas High School Public Safety Act is a commonsense, calibrated, and data-driven solution with enormous potential to save lives that does not substantially burden Second Amendment rights.

Dated: September 10, 2020

*Of Counsel for* Amicus Curiae *Giffords Law Center to Prevent Gun Violence:*

Hannah Shearer
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
268 Bush St. # 555
San Francisco, CA 94104
(415) 433-2062

Robert A. Sacks
Angela N. Ellis
Leonid Traps
Jackson Froliklong
Rachel H. VanGelder
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, NY 10004-2498
(212) 558-4000

*Of Counsel for* Amici Curiae *Brady* and *Team ENOUGH:*

Jonathan Lowy
Christa Nicols
BRADY
840 First Street, NE, Suite 400
Washington, DC 20002
(202) 289-7319

Respectfully submitted,

/s/ *J. Adam Skaggs*
J. Adam Skaggs
NYS Bar No. 4211173
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
223 West 38th St. # 90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org

*Counsel for* Amici Curiae *Giffords Law Center to Prevent Gun Violence, Brady, Team ENOUGH, Orange Ribbons for Gun Safety, and March For Our Lives Action Fund*

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 10, 2020, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF filing system, which will send notification of electronic filing (NEF) to all counsel of record.

/s/ *J. Adam Skaggs*
J. Adam Skaggs
NYS Bar No. 4211173
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
223 West 38th St. # 90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org

*Counsel for* Amici Curiae *Giffords Law Center to Prevent Gun Violence, Brady, Team ENOUGH, Orange Ribbons for Gun Safety, and March For Our Lives Action Fund*

## **CERTIFICATE OF COMPLIANCE**

I certify that the foregoing brief of *Amici Curiae* Giffords Law Center to Prevent Gun Violence, Brady, Team ENOUGH, Orange Ribbons for Gun Safety, and March For Our Lives Action Fund contains 2149 words.

<u>/s/ *J. Adam Skaggs*</u>
J. Adam Skaggs
NYS Bar No. 4211173
GIFFORDS LAW CENTER TO
PREVENT GUN VIOLENCE
223 West 38th St. # 90
New York, NY 10018
(917) 680-3473
askaggs@giffords.org

*Counsel for* Amici Curiae *Giffords Law Center to Prevent Gun Violence, Brady, Team ENOUGH, Orange Ribbons for Gun Safety, and March For Our Lives Action Fund*