# EXHIBIT 1



OBJECTIVE ANALYSIS.
EFFECTIVE SOLUTIONS.



We won't support this browser soon. For a better experience, we recommend using another browser. Learn more

RAND > Research > Gun Policy in America > Research Review >

# The Effects of Minimum Age Requirements

Updated April 22, 2020

Laws requiring a minimum age for purchase aim to make it more difficult for underage individuals to acquire a handgun through formal channels, while laws requiring a minimum age of possession are intended to make it more difficult or risky for an underage individual to carry firearms. Thus, although the mechanisms by which these laws influence youth access differ, both are designed to limit the availability of firearms to young people—and therefore reduce the gun violence and unintentional shootings they commit.

## How Minimum Age Requirements Affect Gun Use Outcomes

**MAY INCREASE**

We found no qualifying studies showing that minimum age requirements increased any of the eight outcomes we investigated.

**MAY DECREASE**

**Suicide**

**INCONCLUSIVE EVIDENCE**

**Mass Shootings**

**Unintentional Injuries and Deaths**

**Violent Crime**

**NO STUDIES MET OUR CRITERIA**

**Defensive Gun Use**

**Gun Industry Outcomes**

**Hunting and Recreation**

**Officer-Involved Shootings**

Under federal law, licensed dealers cannot sell or deliver handguns to individuals under age 21 or long guns to those under age 18. Unlicensed individuals cannot sell, transfer, or deliver handguns to individuals under age 18. With some exceptions, federal law prohibits individuals under age 18 from possessing handguns, but it does not place age restrictions on the possession of long guns (18 U.S.C. 922).

Firearm homicides and violent crimes disproportionately involve individuals under age 21, both as perpetrators and as victims. Indeed, in 2012, arrest rates for violent crimes peaked at age 18 (Office of Juvenile Justice and Delinquency Prevention, 2016). Of the 8,545 firearm homicides committed in 2016 for which the age of the offender was known, 46.8 percent were perpetrated by individuals aged 12–24 (Puzzanchera, Chamberlin, and Kang, 2018), although this group represents only 17.7 percent of the general U.S. population (U.S. Census Bureau, 2017). By influencing the possession of

guns among youth, minimum age laws could, in theory, reduce rates of firearm crime perpetrated by juveniles. However, youth are similarly at high risk of victimization. Of all 2017 deaths among those aged 16–21, 16.8 percent were homicides, which is greater than the homicide rates for the next-highest risk ages (12.7 percent for those aged 22–27; 8.4 percent for those aged 28–33) (calculated using data from the Centers for Disease Control and Prevention [CDC], 2019a). In theory, therefore, stricter age limits on purchasing or possessing a firearm could reduce the incidence of defensive gun use by youth and potentially increase perpetration of violence against younger populations if offenders believe that the likelihood of encountering armed resistance is lower (Marvell, 2001).

Conceptually, by restricting youth access, minimum age restrictions could also reduce rates of firearm suicide or unintentional shootings by the affected age group. Research suggests that the association between firearm availability and suicide is strongest among adolescents and young adults (Birckmayer and Hemenway, 2001; Miller and Hemenway, 1999). In 2017, there were 3,556 suicide deaths among individuals aged 16–21, 46.8 percent of which involved a firearm (calculated using data from CDC, 2019a). Evidence indicates that 50 percent to 60 percent of all firearm suicides by youth under age 21 involve a handgun, suggesting that minimum age laws that cover all firearms (i.e., long guns and handguns) may have larger effects on suicide rates compared with laws focused on handguns alone (Johnson et al., 2010; Wright, Wintemute, and Claire, 2008; Shah et al., 2000; Grossman, Reay, and Baker, 1999). Indeed, a 2019 study using high-quality data from the Violent Death Reporting System indicated that rifles and shotguns were used in more than half of suicides among adolescent men in rural areas (Hanlon et al., 2019).

The effects of laws requiring a minimum purchase age will depend largely on how youth acquire firearms. Much of the existing evidence on sources of guns to youth comes from surveys of juvenile offenders or high-risk adolescents and suggests that purchases from retailers are relatively rare among adolescents involved with criminal activity. Surveys have found that, among juveniles who have been incarcerated or arrested, youth offenders acquire their firearms through similar sources as adult offenders, with more than 80 percent citing a friend, a family member, or the black market as the means by which they acquired their weapon (Webster et al., 2002; LaFree and Birbeck, 1998). Furthermore, youth intending to use firearms for self-harm may also have easy access through sources other than retailers. An early study of firearms used by students in school-associated firearm deaths (both suicide and homicide) between 1992 and 1999 found that only

9.6 percent of the firearms used in homicide events and none of the firearms used in suicide events were purchased legally (CDC, 2001). These findings indicate that minimum age laws may be effective at limiting youth access to firearms through legitimate retail sources.

However, the effectiveness of minimum age laws is likely to be tempered by the ease with which many youth can obtain firearms from sources other than legal retailers. For example, an analysis of data from the National Fatality Review Case Reporting System found that 88 percent of firearms used in suicides by children aged 10–18 were owned by someone other than the child (Schnitzer et al., 2019). A study of inmates at adult jail and juvenile detention facilities in the city of St. Louis between 2003 and 2007 found that 63 percent of juvenile offenders felt that they would have little or no trouble obtaining a firearm (Watkins, Huebner, and Decker, 2008). Although this level of perceived firearm availability exceeds that found in surveys of the general youth population, a nationally representative survey of adolescents found that one in three respondents lived in a home with a firearm, and 41 percent of those adolescents reported that they had easy access to a firearm and the ability to shoot that firearm (Simonetti et al., 2015). Another study found that 50 percent of male respondents felt that they would have little or no trouble obtaining a gun (Sheley and Wright, 1998). More-recent and nationally representative data suggest that children's access to firearms through nonlegal means remains a significant issue. A 2015 survey suggests that up to 7 percent (4.6 million) of U.S. children (defined as those aged 17 or younger) reside in homes where at least one firearm is stored loaded and unlocked, a much higher estimate than reported in 2002, when a nationally representative survey assessed that an estimated 1.6 million children lived in homes with loaded and unlocked firearms (Azrael et al., 2018).

The effects of laws requiring a minimum age of possession will depend on the expected costs youth perceive to be associated with violating such laws, which will likely be influenced by state legal penalties and the level of effort devoted to enforcing the prohibition (Marvell, 2001). Semi-structured interviews with incarcerated adolescent males in 1998 found fear of arrest and incarceration as the most commonly reported reasons for choosing not to acquire or carry a gun (Freed et al., 2001). Still, in 2017, 4.8 percent of high school students (7.7 percent of high school males) reported carrying a gun on at least one day for purposes other than hunting or recreation (Kann et al., 2018). Given the relative importance of the home and family members as a source of guns to juveniles, the most-significant effects of minimum age of possession policies may occur if they create a disincentive for older

individuals to keep guns at home or to allow guns in the home to be easily accessed (Marvell, 2001).

Much of the conversation about minimum age restrictions revolves around handguns rather than long guns. This is because handguns are more frequently used than long guns in firearm suicides and violent crime, so, in theory, raising the minimum age for such weapons could decrease violence without impacting lawful activities, such as hunting (Tritch, 2014). More-restrictive minimum age laws could plausibly impact the gun industry by reducing the size of the consumer population and decreasing the ownership and use of guns by youth for hunting or recreational purposes. Overall, hunting participation in the United States has declined dramatically over the past decades, and although data on youth recreational firearm use are limited (Vittes and Sorenson, 2005), estimates from 2015 suggest that 1.8 million youth aged 6–15 engaged in hunting (U.S. Fish and Wildlife Service, 2018). Furthermore, a large majority of adult hunters initiate hunting activities before age 20, and those who have not learned to hunt by age 20 have a very low likelihood of participating in hunting activities as an adult (Duda and Young, 1993). Should minimum age laws reduce initiation of firearm use for hunting or recreational purposes, there could be longer-term effects on these outcomes.

Data on suicides and self-inflicted nonfatal injury stratified by age are readily available; thus, analyses can directly test whether effects of minimum age laws on these outcomes are driven by the relevant age group affected by the policy. For outcomes of violent crime and non-self-inflicted injury, causal analyses could be improved with data that reported the age of the shooter. However, as most data sources report only the age of the victim,[1] none of the studies we identified that met our inclusion criteria for this policy used this type of data. Methodological approaches could also leverage state variation in the types of guns restricted under the minimum age laws for outcome data that have information on the type of firearm involved. For any analysis, estimates of causal effects would be strengthened with data showing how minimum age laws affected gun purchase or carrying behavior by youth of the affected age group. Although some national surveys (e.g., the Youth Behavioral Risk Surveillance System, National Survey of Drug Use and Health, National Longitudinal Study of Adolescent to Adult Health) ask youth about gun ownership or carrying behaviors, the samples are often limited to high school students, focused on handguns, not representative at the state level, or available for a limited set of years.

# State Implementation of Minimum Age Requirements

**Minimum Age of 21 to Purchase or Sell a Handgun Through a Private Dealer**

- CA
- CT
- DE
- DC
- FL
- HI
- IL
- IA
- MD
- MA
- NE
- NJ
- NY
- OH
- RI
- VT
- WA
- WY

**Minimum Age of 21 to Possess a Handgun**

- DC
- IL
- IA
- MD
- MA
- NJ
- NY
- WA

State implementation data valid as of January 1, 2020.

As of January 1, 2020, 17 states and the District of Columbia have minimum age requirements that exceed the federal minimum for the purchase of a handgun from unlicensed persons,[2] and eight states and the District of Columbia have minimum

age requirements that exceed the federal minimum for handgun possession.[3] Several states also have minimums that are higher than the federal law for long gun purchase and possession.

Eight states and the District of Columbia restrict all handgun sales to individuals aged 21 or older and long gun sales to individuals aged 18 or older. In effect, this raises the minimum age restrictions above those set by federal law in two ways: The age to purchase handguns through private sales is raised from 18 to 21, and the minimum age for private sales of long guns is set to 18.[4] Five states restrict sales for all firearms to those aged 21 or older.[5] Other states set minimums below the federal limits. For instance, Maine imposes a minimum age of 18 for handgun sales and 16 for long gun sales.[6] In practice, these restrictions affect only long gun sales from nondealers, because minimum age requirements for all other sales would be governed by the more-restrictive federal laws.

As mentioned, federal law places no minimum on the age of possession of long guns (18 U.S.C. 922), but several states have imposed such minimums. For instance, 13 states restrict possession of long guns to those aged 18 or older,[7] and Illinois and the District of Columbia restrict long gun possession to those aged 21 or older.[8] The minimum age for possession of a long gun in Alaska, Minnesota, and New York is 16,[9] and it is 14 in Montana.[10]

Originally published March 2, 2018

---

# Notes

1.   Exceptions include the Federal Bureau of Investigation's Supplementary Homicide Reports, which contain age of victim and age of offender for murders when such information is known, and the National Violent Death Reporting System, which contains information for a subset of states on the age of the shooter for non-self-inflicted fatal injuries when such information is known. In 2018, 31 percent of homicides involved a perpetrator of unknown age (Federal Bureau of Investigation, 2019a). ↩

2.   California, Connecticut, Delaware, Florida, Hawaii, Illinois, Iowa, Maryland, Massachusetts, Nebraska, New Jersey, New York, Ohio, Rhode Island, Vermont, Washington, Wyoming, and the District of Columbia. See Calif. Penal Code § 27505; Conn. Gen. Stat. § 29-34(b); Del. Code Ann. Tit. 24, §§ 901, 903; Fla. Stat. § 790.065(13); Hawaii Rev. Stat. Ann. § 134-2(d); 430 Ill. Comp. Stat. 65/4(a); Ia. Code § 724.22(1), (2); Md. Ann. Code Art. 27 § 5-134(b); Mass. Gen. Laws Ch. 140 § 130; Neb. Rev. Stat. § 69-2404; N.J. Stat. Ann. § 2C:58-6.1(a); N.Y. Penal Law § 400; Ohio Rev. Code Ann. §§ 2923.21, 2923.211; R.I. Gen. Laws §§ 11-47-30(a), 11-47-35(a)(1), 11-47-37; 13 Vt. Stat. Ann. § 4020(a); Wash. Rev. Code Ann. § 9.41.241; Wyo. S.1977 § 6-8-404(d); D.C. Code Ann. § 22-4507. ↩

3.   Illinois, Iowa, Maryland, Massachusetts, New Jersey, New Mexico, New York, Washington, and the District of Columbia. See 430 Ill. Comp. Stat. 65/2, 65/4(a); Ia. Code § 724.22; Md. Code Ann., Pub. Safety

§ 5-133(d); Mass. Gen. Laws Ann. Ch. 140, § 131; N.J. Stat. Ann. § 2C:58-6.1; N.M. Stat. Ann. § 30-7-2.2; N.Y. Penal Law § 400; Wash. Rev. Code Ann. § 9.41.240; D.C. Code § 7-2502.03. New Mexico's law raises the minimum age to 19; the others raise the minimum age to 21. ↩

4.  Connecticut, Delaware, Iowa, Maryland, Massachusetts, New Jersey, Ohio, Rhode Island, and the District of Columbia. See Conn. Gen. Stat. Ann. §§ 29-34, 29-37a; Del. Code Tit. 24 § 901, 903, Tit. 11 § 1445; Ia. Code Ann. § 724.22; Md. Code Ann., Pub. Safety §§ 5-101, 5-134; Mass. Gen. Laws Ch. 140 §§ 121, 130; N.J. Stat. Ann. § 2C:39-10; Ohio Rev. Code Ann. § 2923.21; R.I. Gen. Laws §§ 11-47-30, 11-47-35; D.C. Code Ann. §§ 7-2507.07, 22-4507. ↩

5.  California, Florida, Hawaii, Illinois, and Vermont. See Calif. Penal Code § 27505; Fla. Stat. Ann. § 790.22; Hawaii Rev. Stat. Ann. § 134-2; Ill. Comp. Stat. 65/3, 65/4; 13 Vt. Stat. Ann. § 4020(a). Although Hawaii's law is silent about sales, the state requires permits for all purchases, and permits are issued only to those aged 21 or older. Illinois requires a firearm owner's identification card for transfer, and the card is issued only to those aged 21 or older. However, 720 Ill. Comp. Stat. 5/24-3.1 prohibits sales of handguns to those under age 18. ↩

6.  Me. Rev. Stat. Ann. Tit. 17-A §§ 554-A, 554-B. ↩

7.  Idaho, Indiana, Iowa, Michigan, Nevada, New Jersey, Oklahoma, Oregon, Pennsylvania, Rhode Island, Utah, Washington, and Wisconsin. See Idaho Code Ann. § 18-3302E; Ind. Ann. Code § 35-47-10-5; Ia. Code Ann. § 724.22; Mich. Comp. Laws Ann. § 750.234f; Nev. Rev. Stat. Ann. § 202.300; N.J. Stat Ann. § 2C:58-6.1; Okla. Stat. Ann. §§ 1272, 1273; Ore. Rev. Stat. Ann. § 166.250; Pa. Cons. Stat. § 6110.1; R.I. Gen. Laws Ann. § 11-47-33; Utah Code Ann. § 76-10-509; Wash. Rev. Code Ann. § 9.41.040; Wisc. Stat. § 948.60. ↩

8.  Ill. Comp. Stat. Ann. 65/4 (regulates the firearm owner's identification card); D.C. Code Ann. § 7-2502.03. ↩

9.  Alaska Stat. § 11.61.220; Minn. Stat. § 97B.021 (but individuals aged 14 or 15 and with firearm safety certificates may possess long guns); N.Y. Penal Code § 265.05. ↩

10. Mont. Code Ann. § 45-8-344. ↩

## References

Azrael, Deborah, Joanna Cohen, Carmel Salhi, and Matthew Miller, "Firearm Storage in Gun-Owning Households with Children: Results of a 2015 National Survey," *Journal of Urban Health*, Vol. 95, No. 3, 2018, pp. 295–304.

Birckmayer, J., and D. Hemenway, "Suicide and Firearm Prevalence: Are Youth Disproportionately Affected?" *Suicide and Life-Threatening Behavior*, Vol. 31, No. 3, 2001, pp. 303–310.

CDC—*See* Centers for Disease Control and Prevention.

Centers for Disease Control and Prevention, "Source of Firearms Used by Students in School-Associated Violent Deaths—United States, 1992–1999," *Morbidity and Mortality Weekly Report*, Vol. 50, No. 31, 2001, pp. 657–660.

Centers for Disease Control and Prevention, "Fatal Injury Reports, National, Regional, and State, 1981–2017," WISQARS database, Atlanta, Ga., 2019a. As of July 9, 2019:
https://webappa.cdc.gov/sasweb/ncipc/mortrate.html

Duda, M. D., and K. C. Young, *Factors Related to Hunting and Fishing Participation in the United States*, Harrisonburg, Va.: Responsive Management, report for the U.S. Fish and Wildlife Service, Grant # 14–48–0009–92–1252, 1993.

Federal Bureau of Investigation, "Expanded Homicide Data Table 3: Murder Offenders, by Age, Sex, Race, and Ethnicity, 2018," webpage, Crime in the United States 2018, 2019a. As of November 18, 2019: https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/expanded-homicide-data-table-3.xls

Freed, L. H., D. W. Webster, J. J. Longwell, J. Carrese, and M. H. Wilson, "Factors Preventing Gun Acquisition and Carrying Among Incarcerated Adolescent Males," *JAMA Pediatrics*, Vol. 155, 2001, pp. 335–341.

Grossman, D. C., D. T. Reay, and S. A. Baker, "Self-Inflicted and Unintentional Firearm Injuries Among Children and Adolescents," *JAMA Pediatrics*, Vol. 153, No. 8, 1999, pp. 875–878.

Hanlon, Thomas J., Catherine Barber, Deborah Azrael, and Matthew Miller, "Type of Firearm Used in Suicides: Findings from 13 States in the National Violent Death Reporting System, 2005–2015," *Journal of Adolescent Health*, Vol. 65, No. 3, 2019, pp. 366–370.

Johnson, R. M., C. Barber, D. Azrael, D. E. Clark, and D. Hemenway, "Who Are the Owners of Firearms Used in Adolescent Suicides?" *Suicide and Life-Threatening Behavior*, Vol. 40, No. 6, 2010, pp. 609–611.

Kann, Laura, Tim McManus, William A. Harris, Shari L. Shanklin, Katherine H. Flint, Barbara Queen, Richard Lowry, David Chyen, Lisa Whittle, Jemekia Thornton, Connie Lim, Denise Bradford, Yoshimi Yamakawa, Michelle Leon, Nancy Brener, and Kathleen A. Ethier, "Youth Risk Behavior Surveillance—United States, 2017," *Morbidity and Mortality Weekly Report*, Vol. 67, No. 8, 2018, pp. 1–114.

LaFree, G., and C. Birbeck, *Controlling New Mexico Juveniles' Possession of Firearms*, Albuquerque, N.M.: New Mexico Criminal Justice Statistical Analysis Center, Working Paper 27, 1998.

Marvell, Thomas B., "The Impact of Banning Juvenile Gun Possession," *Journal of Law and Economics*, Vol. 44, No. S2, 2001, pp. 691–713.

Miller, M., and D. Hemenway, "The Relationship Between Firearms and Suicide: A Review of the Literature," *Aggression and Violent Behavior*, Vol. 4, No. 1, 1999, pp. 59–75.

Office of Juvenile Justice and Delinquency Prevention, *OJJDP Statistical Briefing Book*, Washington, D.C.: U.S. Department of Justice, May 25, 2016.

Puzzanchera, C., G. Chamberlin, and W. Kang, "Easy Access to the FBI's Supplementary Homicide Reports: 1980–2016," Office of Juvenile Justice and Delinquency Prevention, 2018.

Schnitzer, Patricia G., Heather K. Dykstra, Theodore E. Trigylidas, and Richard Lichenstein, "Firearm Suicide Among Youth in the United States, 2004–2015," *Journal of Behavioral Medicine*, Vol. 42, No. 4, 2019, pp. 584–590.

Shah, S., R. E. Hoffman, L. Wake, and W. M. Marine, "Adolescent Suicide and Household Access to Firearms in Colorado: Results of a Case-Control Study," *Journal of Adolescent Health*, Vol. 26, No. 3, 2000, pp. 157–163.

Sheley, J. F., and J. D. Wright, *High School Youths, Weapons, and Violence: A National Survey*, Washington, D.C.: National Institute of Justice, 1998.

Simonetti, Joseph A., Jessica L. Mackelprang, Ali Rowhani-Rahbar, Douglas Zatzick, and Frederick P. Rivara, "Psychiatric Comorbidity, Suicidality, and in-Home Firearm Access Among a Nationally Representative Sample of Adolescents," *JAMA Psychiatry*, Vol. 72, No. 2, 2015, pp. 152–159.

Tritch, Teresa, "Keep Handguns Away from Teenagers," *New York Times*, May 30, 2014.

United States Code, Title 18, Section 922, Unlawful Acts.

U.S. Census Bureau, "U.S. and World Population Clock," 2017. As of March 22, 2017: https://www.census.gov/popclock/

U.S. Fish and Wildlife Service, *2016 National Survey of Fishing, Hunting, and Wildlife-Associated Recreation*, Washington, D.C., FHW/16-NAT, April 2018.

Vittes, K. A., and S. B. Sorenson, "Recreational Gun Use by California Adolescents," *Health Education and Behavior*, Vol. 32, No. 6, 2005, pp. 751–766.

Watkins, Adam M., Beth M. Huebner, and Scott H. Decker, "Patterns of Gun Acquisition, Carrying, and Use Among Juvenile and Adult Arrestees: Evidence from a High-Crime City," *Justice Quarterly*, Vol. 25, No. 4, 2008, pp. 674–700.

Webster, D. W., L. H. Freed, S. Frattaroli, and M. H. Wilson, "How Delinquent Youths Acquire Guns: Initial Versus Most Recent Gun Acquisitions," *Journal of Urban Health*, Vol. 79, No. 1, 2002, pp. 60–69.

Wright, M. A., G. J. Wintemute, and B. E. Claire, "Gun Suicide by Young People in California: Descriptive Epidemiology and Gun Ownership," *Journal of Adolescent Health*, Vol. 43, No. 6, 2008, pp. 619–622.

View the full project bibliography

RAND® is a registered trademark. © 1994-2020 RAND Corporation.