UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

NATIONAL RIFLE ASSOCIATION
OF AMERICA, Inc., *et al.*,

    *Plaintiffs*,

    v.                                       Case No. 4:18-CV-137-MW-MAF

RICK SWEARINGEN, in his official
capacity as Commissioner of the Florida
Department of Law Enforcement,

    *Defendant*.
_____/

## **DEFENDANT'S OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## INTRODUCTION

Plaintiffs' historical argument boils down to two points: that at the time the Second Amendment was ratified, some 18-to-20-year-olds were permitted to serve in the militia, and that Defendant has not identified a precise historical analogue to Florida's age qualification existing at that time. Both points rest on mistaken premises.

Plaintiffs fail to identify evidence establishing that the Second Amendment, as historically understood, gives 18-to-20-year-olds a right to purchase firearms. For much of this Nation's early history, 18-to-20-year-olds were *not* uniformly permitted to serve in the militia and were *not* uniformly expected to supply their

own firearms. And Plaintiffs do not have any answer for—or even attempt to dispute—the long tradition of restricting those under 21 from purchasing or even possessing firearms, as demonstrated by early legislation, courts, commentators, and longstanding restrictions of more recent vintage.

As the Court made clear in *Heller*, this post-ratification history is "a critical tool of constitutional interpretation." And, if anything, this evidence is even more relevant here than it was in *Heller*, as Plaintiffs challenge a *state* law—and the Second Amendment was made applicable to the States by the Fourteenth Amendment, which was ratified in 1868. Finally, a precise historical analogue for a firearms restriction need not have existed at the time the Second Amendment was ratified. Instead, the question is whether the restriction fits within the scope of the right as historically understood—and the undisputed history described in Defendant's motion for summary judgment shows that Florida's age qualification, tailored to the historical age of majority, does so.

If the Court reaches the second step of the Eleventh Circuit's framework, Plaintiffs' arguments fare no better. They attempt to justify the application of strict scrutiny by characterizing Florida's age qualification as a "ban," as a restriction of "the most severe kind," and as "obliterat[ing]" Second Amendment rights. But Florida's age qualification on purchase is a limited age qualification, not a permanent ban, and it is a prohibition on purchase, not possession. Moreover,

because it is consistent with the longstanding tradition of restricting those under 21 from purchasing firearms, it does not severely burden the core Second Amendment right. At most, intermediate scrutiny thus applies, and the expert and statistical evidence in the record—as well as the longstanding tradition of age qualifications limiting the right to purchase firearms—establishes a reasonable fit between the Legislature's public safety objective and Florida's limited and temporary age qualification.

Finally, because Florida's age qualification does not impermissibly interfere with Plaintiffs' Second Amendment rights or operate to the particular disadvantage of a suspect class, rational-basis review applies to their Equal Protection claims. And for the same reasons that Section 790.065(13) passes intermediate scrutiny, it passes rational-basis review.

## ARGUMENT

**I.     FLA. STAT. § 790.065(13) DOES NOT VIOLATE THE SECOND AMENDMENT.**

Although Plaintiffs contend that the Court should apply a "use, history, and tradition analysis" (Pls. MSJ, DE109, at 20) in assessing Section 790.065(13), this Court is bound to apply the Eleventh Circuit's "two-step inquiry." *United States v. Focia*, 869 F.3d 1269, 1285 (11th Cir. 2017); *see* Def. MSJ, DE107, at 6. And Plaintiffs must show that the challenged law "is unconstitutional in all applications to prevail in their facial challenge." *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d

3

1244, 1260-61 (11th Cir. 2012) (citing *United States v. Salerno*, 481 U.S. 739 (1987)).

Plaintiffs attempt to sidestep this binding precedent by arguing that although the "Eleventh Circuit has upheld a variety of firearm regulations under this two-part test, . . . none of them implicated *Heller*'s text, history and tradition approach because none of those regulations restricted conduct protected by the Second Amendment." Pls. MSJ, DE109, at 20. This argument is circular: To determine whether a particular firearm regulation burdens conduct protected by the Second Amendment—i.e., the first step—the Court "look[s] to history." *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, 788 F.3d 1318, 1327 (11th Cir. 2015). "If the challenged regulation does not burden conduct within the scope of the Second Amendment *as historically understood*, then the law comports with the Second Amendment." *Focia*, 869 F.3d at 1285 (emphasis added). If not, the Court "must apply an appropriate form of means-end scrutiny." *Id.*[1]

---

[1] Plaintiffs' attempt to cast the Eleventh Circuit's two-step approach as an "interest-balancing inquiry" or "judicial balancing test" is misdirected. Pls. MSJ, DE109, at 18-19. In *Heller*, Justice Breyer proposed applying not "the traditionally expressed levels [of scrutiny] (strict scrutiny, intermediate scrutiny, rational basis), but rather a judge-empowering 'interest-balancing inquiry.'" 554 U.S. at 634. The Court rejected Justice Breyer's proposed test, not the application of the traditional levels of scrutiny; it held that the regulation at issue would be unconstitutional under "any of the standards of scrutiny [the Court] has applied to enumerated constitutional rights." *Id.* at 628.

4

### A. Fla. Stat. § 790.065(13) does not burden conduct protected by the Second Amendment as historically understood.

As explained in Defendant's motion for summary judgment (Def. MSJ, DE107, at 7-17), Plaintiffs' facial Second Amendment challenge fails at the first step of the analysis. Plaintiffs' arguments to the contrary are meritless.

To begin with, Plaintiffs are incorrect in asserting that "[t]here is no historical tradition restricting the right of 18-to-20-year-old adult citizens to purchase firearms." Pls. MSJ, DE109, at 13. Early legislation establishes that many states prohibited the sale or transfer of deadly weapons to minors—and during that time period, the age of majority was 21. *See* Def. MSJ, DE107, at 8-10. Early judicial decisions and prominent commentators, such as Thomas Cooley, show that many states significantly curtailed minors' rights to purchase and even to possess firearms. *See id.* at 12-14 & n.2. And more modern regulations of the type that the Court in *Heller* considered relevant support the conclusion that a 21-year-old age qualification is well-established. *See id.* at 14-15.

Plaintiffs' only response to this extensive historical record has already been rejected by the Supreme Court in *Heller*. In their view, this historical evidence is "inapt" as "coming decades after the ratification of the Second Amendment." Pls. MSJ, DE109, at 14 (referring to early legislation relied on in *Nat'l Rifle Ass'n v. BATFE*, 700 F.3d 185 (5th Cir. 2012)). In his opinion for the Court, Justice Scalia expressly rejected that precise argument as "betray[ing] a fundamental

5

misunderstanding of a court's interpretive task." 554 U.S. at 605. After all, "examination of a variety of legal and other sources to determine *the public understanding* of a legal text in the period after its enactment or ratification" is "a critical tool of constitutional interpretation." 554 U.S. at 605. Thus, the Court examined *both* early state constitutions and laws *and* "how the Second Amendment was interpreted from immediately after its ratification *through the end of the 19th century*." 554 U.S. 605, 614-19 (emphasis added). And as in *Heller*, "virtually all interpreters of the Second Amendment in the century after its enactment interpreted the Amendment" as Defendant does here. *Id.*

Although *Heller* alone disposes of Plaintiffs' argument that post-enactment history is not relevant to their claim, their argument is particularly misplaced because they, unlike the plaintiff in *Heller*, challenge a state law. The Second Amendment was incorporated against the States in 1868 when the Fourteenth Amendment was ratified. *See, e.g.*, *Ezell v. City of Chicago*, 651 F.3d 684, 702 (7th Cir. 2011) (citing *McDonald v. City of Chicago*, 561 U.S. 742, 770-77 (2010)); *Gould v. Morgan*, 907 F.3d 659, 669 (1st Cir. 2018); *United States v. Greeno*, 679 F.3d 510, 518 (6th Cir. 2012). At a minimum, the historical and scholarly evidence on which Defendant relies is at least as relevant here as it was in *Heller*.

Instead of identifying any historical evidence rebutting the interpretation of the Second Amendment supported by early legislation, judicial decisions, and

commentary, Plaintiffs rest their entire case on their understanding of the history of the militia. In fact, that is their *sole* argument that the Second Amendment was historically understood to guarantee 18-to-20-year-olds the right to purchase firearms. *See* Pls. MSJ, DE109, at 9-11. But Plaintiffs' portrayal of that history is incomplete. In fact, the Militia Act allowed states to exempt those under 21 from militia service, and several states did so while others required parental consent. *See* 1 Stat. 271, § 1, Militia Act; *id.* at 272, § 2; Def. Ex. 2, DE106-2, at 2-5; Def. Ex. 3, DE106-3, at 2-4; Def. Ex. 4, DE106-4. Nor were 18-to-20-year-olds uniformly "required to supply their own arms" (Pls. MSJ, DE109, at 10): many states required their parents to furnish their minor child with a firearm for militia service. *See* Def. Ex. 6, DE106-6, at 2-5. Thus, Plaintiffs have not established that 18-to-20-year-olds uniformly served in the militia and uniformly were required to purchase firearms for that purpose—quite the contrary.

Indeed, Plaintiffs' argument proves too much: As they point out, under current federal law, "[a]ll males over the age of 17 and under the age of 45 are part of the militia," 10 U.S.C. § 246, and at the time of ratification some states permitted 16-year-olds to serve in the militia. Pls. MSJ, DE109, at 16. But Plaintiffs do not argue that Florida may not restrict 16- and 17-year-olds from purchasing firearms.

Plaintiffs also make much of the fact that Defendant has not identified "a single statute" from the time the Second Amendment was ratified that is similar to Section 790.065(13). Pls. MSJ, DE109, at 15. This argument misunderstands the inquiry. As the parties asking this Court to strike down a presumptively valid statute, Plaintiffs bear the burden of proving that the challenged law burdens conduct protected by the Second Amendment. Accordingly, even if it were true that a particular kind of regulation was not common at the time of ratification, that would not suffice to show that the original understanding of the Second Amendment prohibited such a regulation.

"*Heller* demonstrates that a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." *BATFE*, 700 F.3d at 196; *accord United States v. Skoien*, 614 F.3d 638, 641 (7th Cir. 2010) (en banc) (interpreting *Heller* as explaining that "statutory prohibitions on the possession of weapons by some persons are proper—and, importantly for current purposes, that the legislative role did not end in 1791"). As one example, the federal felony firearm disqualification law, which has been repeatedly upheld, "is firmly rooted in the twentieth century and likely bears little resemblance to laws in effect at the time the Second Amendment was ratified." *United States v. Booker*, 644 F.3d 12, 24 (1st Cir. 2011). In other words, the categorical "exclusions" described in *Heller* "need not mirror limits that were on the books in 1791." *Skoien*, 614 F.3d at 641.

Whether or not a precise "historical analogue" existed during either the Framing or the ratification of the Fourteenth Amendment, the Second Amendment was not historically understood to grant minors under the age of 21 the right to purchase firearms.

*   *   *

In sum, on one side of the historical ledger, Plaintiffs point to some evidence that in some states, 18-to-20-year-olds were required to serve in the militia at the time the Second Amendment was ratified. On the other side is evidence that for much of the Nation's early history, which the Supreme Court in *Heller* deemed relevant to interpreting the Second Amendment, minors were not required to serve in the militia (or needed parental consent) in many states, and in many cases were not expected to furnish their own firearms. On top of that, early legislation, early courts and commentators, and more recent yet longstanding regulations all support the conclusion that as historically understood, the Second Amendment did not prohibit an age qualification tailored to the common-law age of majority.[2] This historical understanding helps to explain why Plaintiffs have not identified a *single case* where a court has found a similar age qualification unconstitutional; instead,

---

[2] The Second Amendment does not set forth the only fundamental right that has not been historically understood to extend fully to minors. For example, although Plaintiffs point out that 18-year-olds are entitled to vote under the 26th Amendment, before that amendment was ratified in 1971, states rarely permitted individuals under 21 to vote. *See, e.g.*, *Oregon v. Mitchell*, 400 U.S. 112, 130-31 (1970).

9

courts considering similar age qualifications have upheld them. *See* Def. MSJ, DE 107, at 4-5 (citing cases).

> **B. Even if Fla. Stat. § 790.065(13) burdens conduct protected by the Second Amendment, the statute satisfies the applicable standard of review.**
>
> > 1. *Intermediate scrutiny applies.*

Plaintiffs contend that, if the Court proceeds to the second step of the analysis, it should apply strict scrutiny. But as explained previously, Section 790.065(13) merits only intermediate scrutiny. Def. MSJ, DE107, at 19-22. To begin with, any burden that Section 790.065(13) imposes on the core Second Amendment right is far from "the most severe kind." Pls. MSJ, DE109, at 21. Florida did not impose what would have been an unquestionably more severe restriction—one on *possession or use* by those between 18 and 21. *See id.* (citing *Heller* for the proposition that "a categorical ban on the *possession* of handguns fails under any level of heightened scrutiny" (emphasis added)); *Heller II*, 670 F.3d at 1255, 1258 (applying intermediate scrutiny to registration requirements that "make it considerably more difficult for a person lawfully to acquire and keep a firearm, including a handgun, for the purpose of self-defense in the home—the 'core lawful purpose' protected by the Second Amendment," but that did not "preven[t] an individual from possessing a firearm in his home or elsewhere, whether for self-defense or hunting, or any other lawful purpose" (quoting *Heller*,

554 U.S. at 630)). Nor did Florida prevent those individuals from acquiring firearms through other lawful means, such as through a gift or loan. Thus, Section 790.065(13) does not significantly burden the core right of self-defense in the home, as (1) 18-to-20-year-olds may still obtain firearms through other lawful means, and (2) those individuals will soon age out of the brief restriction. *See BATFE*, 700 F.3d at 207.

Moreover, as the Fifth Circuit explained in *BATFE*, "longstanding" restrictions "that harmoniz[e] with the history and tradition of arms regulation in this country would not threaten the core of the Second Amendment guarantee" and would thus "trigger . . . 'intermediate' scrutiny." *Id.* at 196. As explained above, prohibiting 18-to-20-year-olds from purchasing firearms is such a longstanding restriction that is consistent with the history and tradition of arms regulation in this country, warranting only intermediate scrutiny.

2. *Fla. Stat. § 790.065(13) satisfies intermediate scrutiny.*

   i. Fla. Stat. § 790.065(13) serves an important government objective.

Plaintiffs do not appear to contest that Florida has an important government interest in "promoting public safety, particularly in schools." Pls. MSJ, DE109, at 23. And as explained previously, this interest satisfies intermediate scrutiny. *See* Def. MSJ, DE107, at 23-24.

> ii. There is a "reasonable fit" between Fla. Stat. § 790.065(13) and Florida's interest in preventing gun violence and crime.

Although Plaintiffs assert that the legislative record does not contain "empirical evidence . . . suggesting [that Section 790.065(13)] will advance public safety or reduce gun violence" (Pls. MSJ, DE109, at 25), the Court is not limited to the legislative record in applying intermediate scrutiny. *E.g.*, *Kolbe v. Hogan*, 849 F.3d 114, 140 n.14 (4th Cir. 2017) (affirming in Second Amendment challenge subject to intermediate scrutiny that "it was appropriate for the State to supplement" the legislative record in litigation). Indeed, that is why Plaintiffs themselves rely on evidence outside of the legislative record and on *Ezell* (Pls. MSJ, DE109, at 25), in which the Seventh Circuit faulted the City of Chicago for not "presenting . . . data or expert opinion" to support the regulation at issue. 651 F.3d at 709.

And in fact, empirical evidence shows that "the means chosen will advance the law's stated goals." Pls. MSJ, DE109, at 27. Neuroscience establishes that because of a developmental mismatch between the frontal cortex, the nucleus accumbens, and the amygdala, 18-to-20-year-olds are particularly likely to engage in impulsive, emotional, and risky behaviors that offer immediate or short-term rewards. Def. MSJ, DE107, at 24-26; Def. Ex. 1, DE106-1; *see BATFE*, 700 F.3d at 210 n.21 ("modern scientific research supports the commonsense notion that 18-

to-20-year-olds tend to be more impulsive than young adults aged 21 and over" (citing research)). This evidence is unrebutted.

The statistics on which Plaintiffs rely are misleading or unhelpful. For example, Plaintiffs assert that "[v]iolent crime among [18-to-20-year-olds] is low," maintaining that 98% of those individuals will never commit a violent crime. Pls. MSJ, DE109, at 27. But whether the Legislature appropriately targeted this unique age group does not depend on the relative number of individuals in the age group who will commit violent crime. Instead, it depends on whether the individuals in this age group commit a disproportionate amount of violent crime relative to other age groups—and the answer to that question is yes. *See* Def. MSJ, DE107, at 25-26.

Even if many firearms used in violent crimes are obtained illegally or are handguns rather than long guns, "[i]t is the legislature's job, not [the Court's], to weigh conflicting evidence and make policy judgments." *Kachalsky v. Cty. of Westchester*, 701 F.3d 81, 99 (2d Cir. 2012). Even taking Plaintiffs' statistics at face value, reducing the 10% of violent crime committed with lawfully purchased firearms or the 14.5% of gun crime involving long guns is a huge step forward for public safety. Whether the Legislature perfectly tailored the age qualification is not at issue; the Court's inquiry is limited to whether the age qualification reasonably fits with the Legislature's public safety objective. *See Kanter v. Barr*, 919 F.3d

437, 449 (7th Cir. 2019) (explaining that although "not all nonviolent felons will later commit a violent crime with a firearm," that "merely suggests that the fit is not a perfect one; a reasonable fit is all that is required under intermediate scrutiny").

Plaintiffs also contend that "[o]nly the speculative illegal use of firearms by this age group could implicate the government's asserted public safety interests," and that this reliance would be somehow impermissible. Pls. MSJ, DE109, at 26. In making this argument, Plaintiffs rely only on First Amendment cases. *Id.* Yet the Eleventh Circuit has expressly refused to import First Amendment principles into this context. *See Focia*, 869 F.3d at 1284. Moreover, Plaintiffs' argument runs counter to *Heller* and common sense, as the public safety interests the Legislature sought to address involve the illegal use of firearms.

Finally, Plaintiffs take issue with the fact that Section 790.065(13) is "neither limited to 18-to-20-year-old adults who are still in some form of schooling nor does it contain any school-related provision whatsoever." Pls. MSJ, DE109, at 30. As the Legislature explained, however, its public-safety concerns were not limited to schools. Ch. 2018-3, § 2, Laws of Fla. (finding "a need to comprehensively address the crisis of gun violence, *including but not limited to*, gun violence on school campuses" (emphasis added)). Even if they were, a large proportion of those between 18 and 20 *are* enrolled in some form of post-

secondary education such as college, and even those who are not may have some significant connection to their previous schools. These facts help to explain why school shooters are not always currently enrolled in the schools where they commit their terrible crimes.

In short, the unrebutted scientific evidence establishes that 18-to-20-year-olds are substantially more likely to engage in impulsive, emotional, and risky behaviors that offer immediate or short-term rewards, and empirical evidence bears that out in the form of a heightened level of violent crime in that age cohort. Thus, a reasonable fit exists between the Legislature's goal of addressing gun violence and restricting 18-to-20-year-olds from purchasing firearms.

## II. PLAINTIFFS' EQUAL PROTECTION CLAIM FAILS AS A MATTER OF LAW.

Plaintiffs assert that strict scrutiny applies to their Equal Protection claim.[3] But because—as explained above—Section 790.065(13) does not violate the Second Amendment and thereby "impermissibly interfer[e] with the exercise of a fundamental right," Plaintiffs are incorrect. *Morrissey v. United States*, 871 F.3d 1260, 1268 (11th Cir. 2017).

Instead, rational-basis review applies, and Section 790.065(13) easily clears that low bar. Plaintiffs have not identified any reason why Section 790.065(13)'s

---

[3] Plaintiffs do not appear to argue that strict scrutiny applies solely on the basis that Section 790.065(13) "operates to the peculiar disadvantage of a suspect class," *Morrissey*, 871 F.3d at 1268; and as explained in Defendant's motion for summary judgment, age is not a suspect class. Def. MSJ, DE107, at 30.

15

"presumptively rational" age classification "is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the [government's] actions were irrational." *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 84 (2000); *see* Pls. MSJ, DE109, at 32. Plaintiffs simply declare that "the fit between [Section 790.065(13)] and the achievement of its stated purpose is not reasonable" (Pls. MSJ, DE109, at 32), but as explained above and elsewhere, the fit is indeed reasonable.

What is more, Plaintiffs' conclusory assertion that the "fit" is "not reasonable" goes to whether the statute satisfies *intermediate scrutiny*, not rational-basis review, which requires only that "the government has the power or authority to regulate the particular area in question, and . . . there is a rational relationship between the government's objective and the means it has chosen to achieve it." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1306 (11th Cir. 2009). Plaintiffs do not contend that the Legislature lacked the power to regulate firearm purchases, and based on the evidence described in Defendant's motion for summary judgment, a rational relationship between public safety and prohibiting 18-to-20-year-olds from purchasing firearms exists. In other words, Plaintiffs offer no argument other than ipse dixit that Section 790.065(13) fails rational-basis review. Thus, Defendant should be granted summary judgment on Plaintiffs' Equal Protection claim as well.

**CONCLUSION**

For these reasons, and for those in Defendant's motion for summary judgment, the Court should deny Plaintiffs' motion for summary judgment and grant Defendant's motion for summary judgment on both claims in Plaintiffs' Second Amended Complaint.

Respectfully submitted.

ASHLEY MOODY
ATTORNEY GENERAL

*/s/ Christopher J. Baum*
CHRISTOPHER J. BAUM (FBN 1007882)
Senior Deputy Solicitor General

AMIT AGARWAL (FBN 125637)
Solicitor General
JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General
ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General
TIMOTHY NEWHALL (FBN 391255)
Senior Assistant Attorney General

Office of the Attorney General
State of Florida
1 SE 3rd Ave Suite 900
Miami, FL 33131
(786) 792-6269
(850) 410-2672 (fax)
christopher.baum@myfloridalegal.com

*Counsel for Defendant*

17

# CERTIFICATE OF SERVICE

I certify that on this 24th day of September, 2020, a copy of the foregoing was served on all counsel of record through the Court's CM/ECF Notice of Electronic Filing System.

/s/ *Christopher J. Baum*
Christopher J. Baum

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of the Local Rules of the Northern District of Florida, I certify that the foregoing Opposition contains 3,690 words.

/s/ *Christopher J. Baum*
Christopher J. Baum