# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION
OF AMERICA, INC., *et al.*,

    *Plaintiffs*,

v.                          CASE NO.: 4:18-cv-137-MW/CAS

RICK SWEARINGEN, in his official
capacity as Commissioner of the
Florida Department of
Law Enforcement,

    *Defendant*.
_____/

## PLAINTIFFS' REPLY IN SUPPORT OF THEIR
## MOTION FOR SUMMARY JUDGMENT

Plaintiffs National Rifle Association of America, Inc. ("NRA") and Radford Fant ("Fant") submit this Reply in Support of their Motion for Summary Judgment (ECF No. 109).

## INTRODUCTION

Defendant's Opposition to Plaintiffs' Motion for Summary Judgment (ECF No. 114) implicitly concedes that Section 790.065(13), Fla. Stat. (the "Ban") is unconstitutional under the Second Amendment because it asks this Court to ignore binding Supreme Court precedent and this country's historical traditions to uphold the Ban. Defendant demands the Court ignore the analytical framework set forth in *District of Columbia v. Heller*, 554 U.S. 570 (2008), which requires the Court to

1

focus on the meaning of the Second Amendment at the time of ratification. (*Compare* ECF No. 114 at 5–10 with ECF No. 116 at 6–7.) The text, history, and tradition of the Second Amendment demonstrate that law-abiding, responsible 18-to-20-year-old adults were understood to have the right to acquire and possess firearms. (ECF No. 116 at 8–11.) Defendant has stripped away fundamental Second Amendment rights of these young adults based on a smattering of outlier statutes enacted between 1856 and 1923 that are unlike the Ban at issue here. (ECF No. 114 at 5–10; ECF No. 107 at 9–11.)

But *Heller* and *McDonald v. City of Chicago*, 561 U.S. 742 (2010), mean what they say. There can be no question that the Second Amendment protects "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," *Heller*, 554 U.S. at 635, or that Plaintiffs are law-abiding, responsible citizens seeking only to purchase arms for lawful purposes including self-defense in the home. Under the standard set forth in *Heller*, Plaintiffs are presumed to have Second Amendment rights.

Plaintiffs need not prove that they do not fall within an exception to the scope of the Second Amendment because they are, prima facie, within its ambit as explained in *Heller*. 554 U.S. at 635. Defendant has the burden of proving that there is a historical tradition of excluding law-abiding, responsible 18-to-20-year-olds from exercising Second Amendment rights. He has not met this burden.

Defendant also seeks to avoid his burden of proof under intermediate scrutiny and fails to satisfy his burden by advancing an unreliable pseudoscience opinion concocted solely for this litigation. Defendant ignores controlling Supreme Court precedent requiring narrow tailoring in intermediate scrutiny analyses. *See McCullen v. Coakley*, 573 U.S. 464, 486 (2014). Because the Ban is not narrowly tailored to achieve its stated purpose—it is unconstitutional.

## ARGUMENT

**I. Defendant misapplies *Heller*.**

**A. *Heller* focuses on the understanding of the scope of the Second Amendment's protections at the time of its ratification.**

The pre-ratification historical evidence that Defendant put before this Court demonstrates that 18-to-20-year-olds were uniformly eligible for militia service (although in some places they were permitted to be excused) and were expected to bring their own firearms, even if they had to get those firearms from their parents (if, for example, they could not afford them). (ECF No. 114 at 5–10; ECF No. 107 at 9–11.) The few later statutes from the late 19th and 20th centuries that Defendant advances demonstrate only that some states prohibited some persons from possessing some relatively rare types of arms. These statutes in no way establish that all individuals under 21 were precluded from purchasing any lawful arms. In any event, if analyzed under the *Heller* framework, these outlier statutes would not stand. *Cf. Heller*, 554 U.S. at 626–27 (explaining that it is unsurprising that the Supreme

3

Court had not considered the scope of the Second Amendment before *Heller* because it had no occasion to do so).

That the Second Amendment was under-appreciated during this time, along with a number of other fundamental rights, *id.*, undercuts the import of post-ratification enactments in determining the scope of the Second Amendment. *Heller*, 554 U.S. at 614 (holding post-ratification enactments "do not provide as much insight into the [Second Amendment's] original meaning as earlier sources"). Defendant's focus on late 19th and even 20th century statutes is contrary to the *Heller* approach, which focused on the right as understood during the Founding Era because "rights are enshrined with the scope they were understood to have when the people adopted them." 554 U.S. at 634–35; *see also id.* at 576 ("In interpreting [the Second Amendment], we are guided by the principle that the Constitution was written to be understood by the voters; its words and phrases were used in their normal and ordinary as distinguished from technical meaning.") (citations omitted).

The right to keep and bear arms predated the Founding. "[T]he Second Amendment, like the First and Fourth Amendments, codified a *pre-existing* right." *Id.* at 592 (emphasis in original). In reaching its holding, *Heller* traced the right to keep and bear arms to the 1671 Game Act in England. *Id.* at 592–93 (recounting the history of the right to keep and bear arms from the time of the Restoration and Glorious Revolution); *id.* at 593 ("[The English right] has long been understood to

4

be the predecessor to our Second Amendment . . . . By the time of the founding, the right to have arms had become fundamental for English subjects."); *id*. at 592–94 (noting that the 1689 English Bill of Rights explicitly protected a right to keep arms for self-defense and that by 1765, the right to keep and bear arms was one of the fundamental English rights). As Plaintiffs demonstrated (ECF No. 109 at 8–11; ECF No. 116 at 4–11), the historical record showed no pre-ratification tradition of prohibiting 18-to-20-year-old adults from acquiring firearms. Rather these individuals were eligible to serve in the militia, which generally required them to bring a firearm from home. *See Heller*, 554 U.S. at 624–25.

Defendant asks the Court to ignore this historical precedent and assess the scope of the right based on late-19th and early-20th century enactments. (ECF No. 114 at 5–10; ECF No. 107 at 9–11.) Defendant does not articulate why these few, later outliers should make up for the complete absence of any historical analogue at the time of ratification.

Instead Defendant relies on sweeping *ipse dixit*: "'virtually all interpreters of the Second Amendment in the century after its enactment interpreted the Second Amendment' as Defendant does here." (ECF No. 114 at 6.) This assertion, unsupported by any citation to the record or to any of the alleged "virtually all interpreters," is simply untrue. During the Founding Era, which includes the Second Amendment's ratification, every colony and state militia included 18-to-20-year-old

5

males. David B. Kopel & Joseph G.S. Greenlee, *The Second Amendment Rights of Young Adults*, 43 S. Ill. U. L.J. 495, 533–595 (2019) (analyzing the Founding Era militia enactments). The primary sources cited by Kopel & Greenlee demonstrate that Defendant is incorrect that 18-to-20-year-olds were historically understood to stand outside the Second Amendment's protections. (*See* ECF No. 116 at 5 & n.1 (listing statutes).)

Failing to carry his burden, Defendant attempts to move the relevant time frame forward most of a century from ratification of the Second Amendment to ratification of the Fourteenth Amendment. (ECF No. 114 at 6.) *Heller* made clear that understanding of the language used in the Second Amendment and the understanding of the fundamental right of self-defense was to be determined at the time of ratification of the Second Amendment. *Heller* 554 U.S. at 576–610; 595. The Court only went on to discuss Civil War era writings and statutes to confirm that they comported with the Court's ratification era analysis. *Id.* at 610–19. *Heller* expressly declared Civil War era writings were at best secondary to the historical understanding at the time of ratification: "Since those discussions took place 75 years after the ratification of the Second Amendment, they do not provide as much insight into its original meaning as earlier sources." *Id.* at 614.

In any event, it is doubtful that the late-19th and early-20th century statutes on which Defendant relies (ECF No. 114 at 9; ECF No. 107 at 10–14) would survive

6

constitutional scrutiny under *Heller*. Because these statutes restrict the right of law-abiding, responsible 18-to-20-year-old adults to purchase or possess firearms for self-defense or other lawful purposes, they would likely violate the Second Amendment as understood at the time of ratification.

Defendant cannot meet his burden to demonstrate that law-abiding, responsible 18-to-20-year-old adult citizens are not protected by the Second Amendment. Instead, he asks this Court to require Plaintiffs to prove the negative: that there was no historical tradition of prohibiting these individuals from exercising Second Amendment rights. (ECF No. 114 at 8 ("Plaintiffs bear the burden of proving that the challenged law burdens conduct protected by the Second Amendment.").) That is not how constitutional rights work. The Second Amendment protects law-abiding, responsible citizens, *id.* at 635, and, if Defendant seeks to exclude a subset of those law-abiding, responsible citizens from Second Amendment protection, then he must demonstrate a historical tradition excluding them at the time of ratification.

Defendant has not refuted Plaintiffs' demonstration of the absence of any laws or regulation at the time of ratification prohibiting 18-to-20-year-olds from acquiring or possessing arms. Defendant could not muster even a single citation to the contrary. Defendant has not refuted that every state in the union at the time of ratification required or permitted militia participation by those aged 18 through 20. Plaintiffs have relied upon the same evidence relied on in *Heller*—eligibility for

7

militia service—to demonstrate that these individuals were understood to be protected by the Second Amendment. Plaintiffs have demonstrated that they have Second Amendment rights. They are precisely the "law-abiding, responsible citizens" seeking "to use arms in defense of hearth and home" whose interests the Second Amendment "elevates above all other[s]." *Heller*, 554 U.S. at 635.

**B. *Heller* forbids, rather than supports, treating law-abiding, responsible 18-to-20-year-old adults like felons and the mentally ill.**

The Second Amendment guarantees "law-abiding, responsible citizens" the right to possess and carry firearms for self-defense and other lawful purposes. *Heller*, 554 U.S. at 635. *Heller* did not, however, "cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . ." *Id.* at 626. Defendant attempts to avoid his burden here by shoehorning 18-to-20-year-old adults into this limited exception by equating them with felons and the mentally ill. (ECF No. 114 at 8; ECF No. 107 at 7–8.)

Defendant is wrong. The Second Amendment reserves the right to keep and bear arms to "the people," the "class of persons who are part of a national community of who have otherwise developed sufficient connection with this country to be considered part of that community." *Heller*, 554 U.S. at 580 (citations omitted). The age of majority for essentially all purposes in Florida is 18, and Florida's 18-to-20-year-old adults can purchase homes, enter into contracts, marry, join the military, serve on juries, and vote. (ECF No. 109 at 16.) These young adults unquestionably

8

are among "the people" of the United States and enjoy the full benefits of the rights enshrined by the Second Amendment. Defendant may not categorically strip those fundamental rights from these "people."

The Supreme Court did not include 18-to-20-year-olds in *Heller*'s list of individuals who have been historically denied Second Amendment rights. While that the list of "presumptively lawful" regulations may not be exhaustive, *Heller*'s repeated use of the term "citizens" heavily implies that the Court did not consider an age-based classification that categorically excludes a portion of the adult citizenry to be outside the scope of the Second Amendment. There is no support in *Heller* for a "presumptively lawful" categorical ban aimed at a class of citizens who have not been individually adjudicated to be dangerous like felons or the mentally ill.

Felons and the mentally ill are prohibited from possessing firearms only after each and every one has been individually adjudicated to belong in that group. Only then are an individual's Second Amendment rights restricted. *See, e.g.*, 18 U.S.C. § 922(g)(1) ("It shall be unlawful for any person . . . who has been *convicted* in any court of, a crime punishable by imprisonment for a term exceeding one year" to possess a firearm) (emphasis added); 18 U.S.C. § 922(g)(4) ("It shall be unlawful for any person . . . who has been *adjudicated* as a mental defective or who has been committed to a mental institution" to possess a firearm) (emphasis added).

Under the Ban, individual 18-to-20-year-old adults are afforded no such adjudication of dangerousness. There is no individual determination about any 18-to-20-year-old adult's fitness for purchasing a firearm. *Cf. Kanter v. Barr*, 919 F.3d at 451 (Barrett, J., dissenting) ("History is consistent with common sense: it demonstrates that legislatures have the power to prohibit dangerous people from possessing guns. But that power extends only to people who are *dangerous*.") (emphasis in original); *and see id.* at 465 (Barrett, J., dissenting) ("The government could quickly swallow the [Second Amendment] right if it had broad power to designate any group as dangerous and thereby disqualify its members from having a gun.")

Defendant's dogged reliance on *Nat'l Rifle Ass'n, Inc. v. Bureau of Alcohol, Tobacco, Firearms, and Explosives ("BATFE I")*, 700 F.3d 185 (5th Cir. 2012), for the proposition that Florida can ban 18-to-20-year-old adults from purchasing any and all firearms from any and all sources as a regulation of "commercial sales," is unavailing. (ECF No. 114 at 11; ECF No. 107 at 7, 16.) *Heller* left open the possibility of "conditions" or "qualifications" on the "commercial sale of arms," 554 U.S. at 626–27, which is what the Fifth Circuit panel reviewed in *BATFE I*. That panel upheld the federal handgun ban 18 U.S.C. § 922(b)(1), (c)(1), because of its limited nature: it only applied to commercial sales by licensed dealers; it only applied to handguns; and it allowed 18-to-20-year-olds to purchase long guns from all

sources including licensed dealers and handguns from private sellers. *BATFE I,* 700 F.3d at 205–207, 209. Because the federal handgun ban left open numerous avenues for 18-to-20-year-old adults to purchase firearms, it is far less restrictive than the Ban.

The Ban is not a condition or qualification on commercial sales. Rather, it is a wide-ranging ban on the purchase of all firearms from all sources. The Court should not endorse Defendant's unsupportable argument that a ban on sales is not the same as a ban on possession; the obvious purpose of the Ban is to obliterate Plaintiffs' ability to acquire and possess firearms.

## II. Defendant misapplies heightened scrutiny.

### A. Any significant burden on a fundamental right requires strict scrutiny.

Defendant argues that only a total ban on possession of firearms would implicate strict scrutiny. (ECF No. 114 at 10–11.) Defendant asserts that the Ban does not "significantly burden" the core right of self-defense in the home because some 18-to-20-year-olds technically may still obtain firearms via a gift or loan and because these adults can purchase firearms when they eventually turn 21. (ECF No. 114 at 11.) Neither point overcomes the impermissible restriction of the Ban on a fundamental right.

Defendant appears to have concocted the gift/loan exception for this litigation. Nothing in the legislative record suggests the gift/loan exception was considered by

the Florida Legislature, nor has Defendant introduced any evidence suggesting this ad-hoc gift/loan market even exists, much less operates, or how it is a meaningful substitute for the right to purchase a firearm from a licensed dealer or private party. This hypothetical source of arms that depends on the means and generosity of family and friends is no substitute for access to commercial and private sellers guaranteed by the Second Amendment.

Defendant attempts to carve out an exception for a categorical infringement of the Second Amendment right lasting only three years. No similar restriction on the exercise of other fundamental rights for those 18-to-20-year-old adults would be tolerated because those rights suddenly appear upon turning 21. Such disparate treatment of the Second Amendment is forbidden by *McDonald*. 561 U.S. at 780 (rejecting government's argument to treat the Second Amendment as a second-class right).

The Ban eliminates the right of 18-to-20-year-old adults to purchase firearms. This impermissibly infringes these individuals' Second Amendment right to acquire firearms in the exercise of their fundamental right to keep and bear arms. The Court should apply strict scrutiny and overturn the Ban because it is not the least restrictive alternative to achieve its stated goal. (ECF No. 109 at 21–24.)

**B. Defendant misapplies intermediate scrutiny.**

Contrary to his assertion (ECF No. 114 at 12), Defendant is required to justify the Ban through empirical evidence. *See Ezell v. City of Chicago*, 651 F.3d 684, 709 ("[T]he government must supply actual, reliable evidence to justify restricting" protected conduct "based on secondary public-safety effects . . . ."). Because Defendant cannot point to any empirical evidence actually considered by the Florida Legislature prior to enacting the Ban, he relies on the opinion of Dr. Bhide, suggesting "neuroscience" supports treating all 18-to-20-year-old adults like felons and the mentally ill. (ECF No. 114 at 12; ECF No. 107 at 24–25.)

Dr. Bhide's opinion should be disregarded. He relies on cherry-picked studies that do not support his conclusions. (ECF No. 116 at 25–26; ECF No. 108-6 ¶¶ 12–14.) Dr. Bhide's opinion was created solely for this case; in his lengthy career, he has never previously researched, written on, or even considered the connection between neuroscience and firearm purchases by 18-to-20-year-old adults. (*See* Dep. of Pradeep Bhide, ECF No. 115-1 at 30:24–31:6, 69:3–71:3.)

Dr. Bhide's opinion about brain maturation in 18-to-20-year-old adults as related to firearm purchases should also lead him to conclude that these individuals are not competent to exercise other rights or privileges that attach at the age of 18. Yet, Dr. Bhide has no opinions or comment about the use of firearms by 18-to-20-year-old adults, as opposed to purchase (ECF No. 115-1 at 74:13–22); or their

13

possession of firearms (ECF No. 115-1 at 75:11–76:8; 77:12–78:9); or their voting (ECF No. 115-1 at 118:5–19); or their entering into contracts and incurring debt (ECF No. 115-1 at 118: 20–119:5); or their entering into marriage without parental consent (ECF No. 115-1 at 119:6–12); or their joining the armed forces (ECF No. 115-1 at 119:13–119:25). He singles out only the purchase of firearms as inappropriate for this age group, without any rationale for this limitation on his broad conclusions regarding brain maturation. Defendant cannot rely on soft pseudoscience such as this—which was never considered by the Legislature when it enacted the Ban—to infringe a fundamental constitutional right. *Brown v. Entertainment Merchants Ass'n*, 564 U.S. 786, 800–02 (2011) (rejecting California's expert opinion evidence as insufficient to justify a ban on the sale of violent video games to children).

*   *   *

## CONCLUSION

For the foregoing reasons and those in Plaintiffs' Memorandum in Support of their Motion for Summary Judgment, Plaintiffs respectfully request the Court grant their Motion and enter judgment in favor of Plaintiffs.

    Respectfully submitted,

    /s/ *John Parker Sweeney*
    John Parker Sweeney
    James W. Porter, III
    Marc A. Nardone
    BRADLEY ARANT BOULT CUMMINGS LLP
    1615 L Street, NW
    Washington, DC 20036
    Tel: (202) 393-7150
    jsweeney@bradley.com
    (Admitted *Pro Hac Vice*)

    Eliot B. Peace (FBN: 124805)
    BRADLEY ARANT BOULT CUMMINGS LLP
    100 N. Tampa Street, Suite 2200
    Tampa, FL 33602
    Telephone: (813) 559-5500
    epeace@bradley.com

    *Counsel for Plaintiffs*

## **Local Rule 7.1(F) Certificate of Compliance**

Pursuant to Local Rule 7.1(F), I certify the foregoing pleading contains 3,182 words.

> /s/ *Eliot B. Peace*
> *Counsel for Plaintiffs*

# **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on October 1, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic service to all counsel of record, as follows:

AMIT AGARWAL (FBN 125637)
Solicitor General

JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General

TIMOTHY NEWHALL (FBN 391255)
Senior Assistant Attorney General

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Tel: (850) 414-3681
amit.agarwal@myfloridalegal.com
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
barbara.throne@myfloridalegal.com
timothy.newhall@myfloridalegal.com

CHRISTOPHER J. BAUM (FBN 1007882)
Deputy Solicitor General
Office of the Attorney General
State of Florida
1 SE 3rd Ave Suite 900
Miami, FL 33131
(786) 792-6269
christopher.baum@myfloridalegal.com

/s/ *Eliot B. Peace*
*Counsel for Plaintiffs*