IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION
OF AMERICA, Inc., *et al.*,

    *Plaintiffs*,

v.                                        CASE NO.: 4:18-cv-137-MW-MAF

RICK SWEARINGEN, in his official
capacity as Commissioner of the
Florida Department of
Law Enforcement,

    *Defendant*.

_____/

**PLAINTIFFS' MOTION IN LIMINE TO EXCLUDE
THE TESTIMONY OF DR. PRADEEP G. BHIDE**

Defendant's summary judgment brief relied upon Dr. Pradeep G. Bhide's opinions to justify banning young adults from purchasing firearms, broadly claiming: "Modern neuroscience establishes what parents have known for generations, that 'on average 18-year old individuals are more likely to engage in behaviors that are impulsive, emotional, risky and that offer immediate or short time reward compared to 21-year old individuals, on average.' Ex. 1, DE106-1, at 21. And '18-year old individuals are more likely to react impulsively under emotional situations and in situations that they perceive as threatening, compared to 21-year old adults.' Ex. 1, DE106-1, at 21." Def.'s Motion for Summary Judgment, ECF No. 107, at 25. Dr. Bhide sweepingly concludes "unfavorable outcomes are more likely

1

to occur if an average 18-year old's proclivity for impulsive and emotional actions were to be combined with his or her ability to purchase firearms." ECF No. 106-1, at 5 (A copy of Dr. Bhide's report is included as Exhibit A for the Court's convenience).

Rather than offering any hard evidence that young adults age 18 to 20 are more likely to commit criminal violence with a purchased firearm than other adults, Defendant is expected to offer Dr. Bhide's secondhand pseudoscience at trial. Dr. Bhide's opinions are extrapolated from emerging research of others in the very specialized and controversial area of adolescent brain development where he has conducted no research, authored no articles, and given no presentations himself.

Research into the difference between adolescent and adult brains is unsettled and controversial. Dr. Bhide himself confirmed that "you cannot pinpoint the age of brain maturity" in humans. Bhide Depo., ECF No. 115-1, at 30:19-20 (A copy of the deposition transcript is attached as exhibit B for the Court's convenience). Not only is it impossible to determine this in Dr. Bhide's own words, he has never even studied the development of human brains. *Id.* at 30:22-23. Yet, Dr. Bhide's entire opinion is premised on the notion that an "average" adult is less impulsive than an "average" person with a non-mature brain. Given that the science upon which Dr. Bhide relies cannot pinpoint the age of brain maturity, it is clear that Dr. Bhide's opinion is not even supported by his own field of study.

2

Federal district courts are required to act as gatekeepers to ensure that any and all expert testimony is both relevant and reliable. *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589-90 (1993); Fed. R. Evid. 702. As gatekeeper, the Court is "charged with screening out experts whose methods are untrustworthy or whose expertise is irrelevant to the issue at hand." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1250 (11th Cir.2007). The gatekeeping role requires trial courts "to engage in a 'rigorous three-part inquiry' assessing whether (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand evidence or to determine a fact in issue." *Hendrix v. Evenflo Co.*, 609 F.3d 1183, 1194 (11th Cir. 2010). The party seeking to introduce expert testimony bears the burden of demonstrating that any such testimony meets these requirements of Rule 702. *Id.*

**I.     Dr. Bhide is not qualified to opine on whether young adults pose any greater risks than other law-abiding adults if allowed to exercise their right to purchase firearms.**

In *Daubert* and its progeny, the Supreme Court emphasized that an expert witness must be competent to opine on the "task at hand," requiring courts take a close look at the connection between the expert's opinion and the matters at issue in

the litigation, *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (quoting *Daubert*, 509 U.S. at 597), here whether the young adult firearm purchase ban is likely to reduce violent crime. *See* Def. Motion for Summary Judgment, ECF No. 107 at 23-24 (stating that the government's interest in the challenged law is to further public safety and protecting the community from crime). Expertise in one subject such as neuroscience cannot substitute for expertise in another subject more relevant to the inquiry, in this case criminology. *Chapman v. Procter & Gamble Distrib., LLC*, 766 F.3d 1296, 1315 (11th Cir. 2014) ("We also conclude that Dr. Prohaska's testimony cannot provide admissible proof the Chapmans need to establish their case at trial, because his expertise is hematology and not myelopathy at issue in this case."); *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1358 (S.D. Fla. 2015) ("[E]xpert testimony regarding matters outside of the witness's expertise is inadmissible, even if the expert is qualified to testify about other matters.").

Likewise, expertise in the broad area of neuroscience or even brain development generally cannot substitute for expertise in adolescent brain development, let alone how that bears upon the Defendant's speculation that young adults are more likely to purchase firearms and commit crimes. *See, e.g.*, *United States v. Brown*, 415 F.3d 1257, 1269 (11th Cir.2005) (upholding exclusion of a chemistry consultant as an expert in controlled substances because he lacked expertise with the chemical substance at issue); *see also Wright v. Case Corp.*, No.

4

03–cv–1618–JEC, 2006 WL 278384, at *3 (N.D. Ga. Feb. 1, 2006) (mechanical engineer was not qualified to testify that the product at issue was defective or to offer alternative designs because he "had very little experience with the machinery at issue").

Plaintiffs do not dispute that Dr. Bhide possesses academic credentials in neuroscience and teaches in that area. But neuroscience is a broad field of study, and general credentials in the field do not demonstrate the competency necessary to offer an expert opinion in every area of neuroscience. *See Chapman*, 766 F.3d at 1306 (stating that expert's credentials are only one consideration in court's *Daubert* analysis). At issue here is Defendant's use of Dr. Bhide's opinions about brain development (based largely upon studies of animals and other age groups) to speculate that 18-to-20-year-olds are more likely to commit crimes with purchased firearms. *See generally* Ex. A. Dr. Bhide's deposition testimony confirms, however, that he is not qualified to offer such opinions because ne never studies human brain development and cannot pinpoint the age of brain maturity in humans.

At deposition, Dr. Bhide was asked whether he has "ever done research on pinpointing the age of brain maturity," and answered "Not in human subjects, no. I mean, you cannot pinpoint the age of brain maturity. I just want to make sure we are – we understand. But my – I have not studied personally human brain development as you are referring to." Ex. B, at 30:16–23. When asked whether Dr. Bhide had

5

actually published in the area of development differences between adult and teenager brains, he admitted that he had only studied mice, not humans:

> Q: All right. Have you published any peer-reviewed articles that seek to distinguish between the development of a teenage brain and an adult brain?
> A: Yes. I have published a number of articles that look at the process of brain development through – you know, before birth, after birth, until maturity or adulthood.
> Q: Do any – and do any of those articles involve your research into the different ages at which different parts of the brain mature?
> A: Not in the human brain. But in other species.
> Q: And what other species did you study in that context?
> A: mostly mouse brain development.

*Id.* at 50:5-12. Dr. Bhide further confirmed that he has never studied the subject matter of his report—any link between neuroscience, age, and firearm purchase and criminal use—*at all*:

> Q:   All right. Now, did any of those research projects involve the relationship between neuroscience and firearm use?
> A:   No.
> Q:   And did any of your presentations involve the relationship between neuroscience and firearm use?
> A:   No.

*Id.* at 30:24–31:6.

Dr. Bhide may be qualified to opine in other areas of neuroscience but his deposition testimony confirms that animal research and studies by others of different age groups do not provide him the specialized knowledge in the subject matter at issue that would qualify him to offer an admissible opinion. Defendant cannot

establish that Dr. Bhide's testimony meets the criteria of Rule 702 and this Court should exclude Dr. Bhide.

## II. Dr. Bhide's opinions are not based on any reliable methodology and would not assist the trier of fact.

Dr. Bhide's testimony should be precluded in its entirety because he has not actually applied any scientific process in this case and because the data upon which he relies in his opinions does not address the alleged risk of firearm purchase by young adults and neurological development.[1] Dr. Bhide's opinion in this case is not based on his own study of the issues, as demonstrated above. While Dr. Bhide writes at length about the developments of brain scanning technology, focusing on magnetic resonance imaging (MRI), he never actually applies that technology to the facts of the case. He did not conduct any MRI studies at all, much less studies directed at the 18-to-20-year-old age group. Instead, his report is a recitation of conclusions reached by others, none of which relate to the risk of firearm purchase by 18-to-20-year-olds, followed by his *ipse dixit* that those studies support the

---

[1] The vast majority of Dr. Bhide's written "opinion" is either irrelevant, *ipse dixit* without citation, or rhetorical questions. *See* Ex. A at 1-3 (Dr. Bhide's background); 4-5 (*ipse dixit*); 6-8 (primarily rhetorical questions infused with some facts about the size of a brain). Irrelevant opinions, opinions based upon only *ipse dixit*, and conclusory or rhetorical opinions are inadmissible. *See Daubert*, 509 U.S. at 589 (relevance); *Guinn v. AstraZeneca Pharm. LP*, 602 F.3d 1245, 1256 (11th Cir. 2010) (*ipse dixit*); *Webb v. Carnival Corp.*, 321 F.R.D. 420, 426 (S.D. Fla. 2017) (conclusory statements and rhetorical question testimony).

challenged firearm purchase ban. Dr. Bhide's testimony is inadmissible because he used no methodology at all. *See Guinn*, 602 F.3d at 1256.

To the extent such conclusions of others are being offered for their truth, the testimony is inadmissible because the underlying studies are hearsay. *Pellegrino v. Wengert*, No. 15-CV-60535, 2016 WL 3678600, at *8 (S.D. Fla. July 12, 2016). While an expert may be permitted to testify as to the bases of his or her opinions, "Rule 703 . . . is not an open door to all inadmissible evidence disguised as expert opinion," *United States v. Scrima*, 819 F.2d 996, 1002 (11th Cir. 1987). ""[A] party cannot call an expert simply as a conduit for introducing hearsay under the guise that the testifying expert used the hearsay as the basis of his testimony." *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir.2013).

Even if merely repeating the findings of other studies could form an admissible opinion, in this case, Dr. Bhide's testimony is also inadmissible because the studies upon which he relies do not actually study the relevant 18-to-20-year-old age group. His opinion cannot assist the trier of fact because it was not based on data relevant to the issue at hand. *See Daubert*, 509 U.S. at 589.

As Dr. Kleck pointed out in his expert opinion, the studies cited by Dr. Bhide did not include those ages 18-to-20 in the adolescent group when reporting results. For example, the first citation in Dr. Bhide's report relays the results of 9 studies, none of which included the relevant age group in the adolescent category. *See, e.g.,*

8

Mills KL et. al, *The developmental mismatch in structural brain maturation during adolescence.* 36 Dev. Neurosci. 147-60 (2014) (reporting the results of 9 developmental neurological studies where 6 of them included 18-to-20-year-olds in the adult category and 18-to-20-year-olds were not included in the remainder). Not a single one of the studies referenced in the citation provided by Dr. Bhide here treated 18-to-20-year-olds as adolescents. *See* Expert Report of Dr. Gary Kleck, ECF No. 108-6 at ¶ 13 (A copy of Dr. Kleck's report is attached as Exhibit C for the Court's convenience). Likewise, the studies cited in Bhide's citations 7 and 10 define adolescence to include those under the ages of 18. *Id.* By defining "adult" to include the relevant age group of 18-to-20-year-olds, the studies do not support Dr. Bhide's opinions at all. Rather, they support the opposite conclusion: the "average" adult reaches relative adult maturity by age 18, not 21 as Dr. Bhide claims.

An expert witness must offer an opinion related to a fact and cannot offer purely legal conclusions. *Samples v. City of Atlanta*, 916 F.2d 1548, 1551 (11th Cir. 1990). Dr. Bhide's testimony cannot assist the trier of fact in this case because the only "fact" for which his testimony has been offered is the link between a handful of articles on brain maturation and the speculation that young adults are more likely to commit criminal violence with a purchased firearm. Dr. Bhide should not be allowed to offer an opinion on this issue because none of the data upon which he relied actually relates to this issue and he is not himself qualified to

9

extrapolate that relevant data to the facts of this case. His testimony should be excluded.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request Dr. Bhide's testimony be excluded in its entirety.

Respectfully submitted,

/s/*John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
Marc A. Nardone
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW
Washington, DC 20036
Tel: (202) 393-7150
jsweeney@bradley.com
(Admitted *Pro Hac Vice*)

Robert Craig Mayfield (FBN: 0429643)
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500
rmayfield@bradley.com

*Counsel for Plaintiffs*

## Local Rule 7.1(F) Certificate of Compliance

Pursuant to Local Rule 7.1(F), I certify the foregoing pleading contains 2232 words.

/s/ Robert Craig Mayfield
*Counsel for Plaintiffs*

## Local Rule 7.1(B) Certificate of Compliance

Pursuant to Local Rule 7.1(B), I certify that Plaintiffs complied with the attorney-conference requirement of this Local Rule and that Defendant opposes this motion.

/s/Robert Craig Mayfield
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on December 3, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic service to all counsel of record, as follows:

AMIT AGARWAL (FBN 125637)
Solicitor General

JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General

TIMOTHY NEWHALL (FBN 391255)
Senior Assistant Attorney General

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Tel: (850) 414-3681
amit.agarwal@myfloridalegal.com
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
barbara.throne@myfloridalegal.com
timothy.newhall@myfloridalegal.com

CHRISTOPHER J. BAUM (FBN 1007882)
Deputy Solicitor General
Office of the Attorney General
State of Florida
1 SE 3rd Ave Suite 900
Miami, FL 33131
(786) 792-6269
christopher.baum@myfloridalegal.com

                                            /s/ Robert Craig Mayfield
                                            *Counsel for Plaintiffs*