# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION
OF AMERICA, *et al.*,

    *Plaintiffs,*

v.

RICK SWEARINGEN, in his official
capacity as Commissioner of the
Florida Department of Law
Enforcement,

    *Defendant.*

Case No. 18-cv-137-MW/MAF

## DEFENDANT'S MOTION TO LIMIT THE TESTIMONY OF GARY KLECK, PH.D., AND MEMORANDUM OF LAW IN SUPPORT

Defendant moves to limit the testimony of Plaintiffs' proposed expert Gary Kleck, Ph.D. Under Rule 702 and *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993), Dr. Kleck's testimony on the potential impact of Section 790.065(13), Florida Statutes, on lawful and unlawful firearm use is inadmissible.

## MEMORANDUM OF LAW

In his three-page report, Dr. Kleck opines that Section 790.065(13) "will have a negative impact on lawful firearm use" but "will not have an impact on criminal firearm use." Kleck Rep., Ex. A at 3. Both opinions are inadmissible. The former is neither reliable nor helpful to the factfinder, and the latter lacks fit.

# BACKGROUND

Section 790.065(13) prohibits "[a] person younger than 21 years of age" from "purchas[ing] a firearm" in Florida. § 790.065(13), Fla. Stat. According to Plaintiffs, Section 790.065(13) violates the Second Amendment because no reasonable fit exists between it and public safety. *See* Doc. 116 at 26–27. Plaintiffs have retained Dr. Kleck to provide testimony in support of that claim. In his report, Dr. Kleck opines on "[v]iolent crime rates among young adults age 18-20," the frequency and effectiveness of "[s]elf-defense with a gun," and the potential impact of Section 790.065(13) on "lawful firearm use" and "criminal firearm use." Ex. A at 1–3.

1. Dr. Kleck asserts that Section 790.065(13) "will have a negative impact on lawful firearm use" because it will deny "law-abiding" 18-to-20-year-olds access to firearms. *See* Ex. A at 1–3. "Young adults," Dr. Kleck opines, "have the highest rates of violent crime victimization and thus are especially likely to need effective means of self-protection," such as a firearm. Ex. A at 1–2. But according to Dr. Kleck, under Section 790.065(13), "law-abiding" 18-to-20-year-olds "will be denied the ability to defend themselves because they could not lawfully purchase a firearm." Ex. A at 1–2.

2. Dr. Kleck's opinion that Section 790.065(13) "will not have an impact on criminal firearm use" is based on three articles that he authored: "The impact of gun control and gun ownership levels on violence rates." (1993); "Does gun control

reduce violent crime?" (2016); and "Regulating guns among young adults." (2019). *See* Ex. A at 2–3. Citing the articles, Dr. Kleck asserts that "[p]ast experience with age-based restrictions on purchase and possession of firearms indicates that they have no detectable crime-reducing effect." Ex. A at 2.[1]

In the articles, Dr. Kleck examined two types of laws that are relevant here: (1) laws banning persons under age 18 from buying firearms and (2) a law banning 18-to-20-year-olds from buying a particular type of firearm (handguns) from licensed dealers. Dr. Kleck limited his analysis of the laws to discrete time periods.

In the 1993 article, he analyzed how state and local laws banning persons under age 18 from buying firearms affected crime rates in 1979, 1980, and 1981. *See* 1993 Article, Ex. B at 8. He concluded that the laws did not have a statistically significant negative effect on crime. *See* Ex. B at 19–22.

In the 2016 article, Dr. Kleck used crime data from 1989, 1990, and 1991 to assess the impact of state and local "restrictions on [the] sale/transfer/purchase of guns to or by" members of "high-risk groups," such as persons under age 18. 2016

---

[1] At the end of his discussion of the articles, Dr. Kleck also references a white paper published by the Rand Corporation, Ex. A at 2–3, but he does so only in passing. And for good reason. The paper merely summarizes two academic studies assessing certain "age requirements for purchasing a firearm" and concludes that, "in consideration of the relative strengths of the[] studies," it is "uncertain" whether the assessed requirements "affect total homicides and firearm homicides." *See* The Science of Gun Policy 154–55 (Rand Corp. 2018).

3

Article, Ex. C at 8. He concluded that the restrictions did not have a statistically significant negative effect on crime during those years. *See* Ex. C at 16, 21.

Finally, in the 2019 article, Dr. Kleck considered the Gun Control Act of 1968, under which 18-to-20-year-olds are barred from buying handguns from licensed dealers (they can buy them only from private sellers). 2019 Article, Ex. D at 7–8. Dr. Kleck concluded that during the five years after the Gun Control Act's passage (1968 to 1973), the Act had no statistically significant negative effect on crime. Ex. D at 11. According to Dr. Kleck, "[o]ne obvious explanation" for that finding is that 18-to-20-year-olds "bought handguns from other sources besides licensed dealers." Ex. D at 11. Another explanation is that under the Gun Control Act, "[c]riminally inclined young adults" can simply "substitute long guns like shotguns or rifles" for handguns. Ex. D at 12.

## LEGAL STANDARD

Rule 702 and *Daubert* require the district court to "serve as a gatekeeper to the admission of" expert evidence. *Quiet Tech. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003). The court's "role is to [exclude] unreliable and irrelevant [expert testimony] because of its inability to assist in factual

4

determinations, its potential to create confusion, and its lack of probative value." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311–12 (11th Cir. 1999).

The party offering expert testimony "always bears the burden to show that" it satisfies *Daubert* and Rule 702. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) (quotations omitted). The party must establish that (1) the expert is "qualified to testify competently regarding the matter he" intends to address; (2) his methodology is "reliable"; and (3) his testimony will "assist the trier of fact through the application of expertise to understand the evidence or determine a fact in issue." *Adams v. Lab. Corp.*, 760 F.3d 1322, 1328 (11th Cir. 2014) (quotations omitted).

## ARGUMENT

I. **DR. KLECK'S TESTIMONY ON THE POTENTIAL IMPACT OF SECTION 790.065(13) ON LAWFUL FIREARM USE IS INADMISSIBLE.**

**A. The testimony is unreliable.**

Under *Daubert*, a district court can admit expert testimony only if it "find[s] that [the testimony] is properly grounded, well-reasoned, and not speculative." *Frazier*, 387 F.3d at 1262 (quoting Fed. R. Evid. 702 Adv. Comm. Notes (2000)). "[T]he court must undertake an independent analysis of each step in the logic leading to the expert's conclusions." *Hendrix v. Evenflo Co.*, 255 F.R.D. 568, 578 (N.D. Fla. 2009). If "*any* step" is unreliable, or the expert fails to explain the basis for a step, his "testimony [is] inadmissible." *See McClain v. Metabolife Int'l*, 401 F.3d 1233,

1245 (11th Cir. 2005) (emphasis in original); *Yellowpages Photos v. YP, LLC*, 2019 WL 6033084, at *5 (M.D. Fla. Nov. 14, 2019) ("[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion." (quotations omitted)).

Dr. Kleck's opinion that Section 790.065(13) will "negatively impact" lawful defensive gun use is inadmissible because one of the steps in his analysis is unreliable. *See* Ex. A at 3. His opinion relies on two premises: (1) that "law-abiding" 18-to-20-year-olds will be denied access to firearms absent the ability to "lawfully purchase" them in Florida, Ex. A at 1–2, and (2) that 18-to-20-year-olds "have the highest rates of violent crime victimization and thus are especially likely to need" a firearm for self-defense, Ex. A at 1–2. The first premise is speculation. Dr. Kleck cites no data or authorities in support of his claim that law-abiding 18-to-20-year-olds will be denied access to firearms. *See* Ex. A at 1. Nor does he offer any analysis in support of the claim. *See* Ex. A at 1. He does not, for example, examine the extent to which law-abiding 18-to-20-year-olds in Florida have family members, friends, or colleagues who gift them firearms. Instead, he merely speculates, failing to offer any "reasonable factual basis" for his contention that responsible, law-abiding 18-to-20-year-olds who desire a firearm for self-defense will be unable to obtain one. *See deWit v. UPS*, 2017 WL 3141074, at *3 (N.D. Fla. June 29, 2017) (Walker, C.J.) (citing *United States v. .161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988))

(excluding an expert opinion because the expert lacked a "reasonable factual basis" for it).

Because "one of the fundamental premises underlying [Dr. Kleck's] opinion is based upon speculation," the opinion is inadmissible. *See Cooper v. Marten Transp.*, 2012 WL 12835704, at *4 (N.D. Ga. June 4, 2012), *aff'd in relevant part, rev'd in part*, 539 F. App'x 963 (11th Cir. 2013); *Battle v. Gold Kist, Inc.*, 2008 WL 4097717, at *7 (M.D. Fla. Sept. 2, 2008) (excluding expert testimony because one of the "component[s] underlying" it lacked "a reliable foundation").

### B. At best, the testimony is based on an appeal to common sense, in which case it is unhelpful.

Dr. Kleck seems to believe that his claim that Section 790.065(13) will prevent law-abiding 18-to-20-year-olds from accessing firearms does not need support because it is common sense. *See* Ex. A at 1. But assuming that is true, it only underscores the inadmissibility of his opinion.

An expert's testimony is helpful to the trier of fact only if he applies scientific, technical, or specialized expertise. *Quiet Tech.*, 326 F.3d at 1340–41. Plaintiffs cannot bootstrap to Dr. Kleck's testimony an opinion that is based not on specialized expertise but merely on an appeal to common sense. *See deWit v. UPS*, 2017 WL 5905575, at *2 (N.D. Fla. July 25, 2017) (Walker, C.J.) (excluding expert opinion as unhelpful because it "merely t[ook] a commonsense concept and applie[d] it to a specific field"). Plaintiffs' counsel can make commonsense arguments at closing; it

7

is not proper for Dr. Kleck to make such arguments for them. *See Frazier*, 387 F.3d at 1262–63 ("[E]xpert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments.").

II. **DR. KLECK'S TESTIMONY ON THE POTENTIAL IMPACT OF SECTION 790.065(13) ON CRIMINAL FIREARM USE IS INADMISSIBLE BECAUSE IT LACKS FIT.**

Expert testimony assists the trier of fact only if it is "an appropriate 'fit' with . . . the facts of the case." *McDowell v. Brown*, 392 F.3d 1283, 1299 (11th Cir. 2004). An expert's opinion "does not assist the trier of fact unless [it] has a justified . . . relationship to the pertinent facts." *Id.* If an "analytical leap must be made between the facts and the opinion," the opinion lacks fit and is inadmissible. *Id.*

That is the case here; Dr. Kleck makes an analytical leap in opining on criminal firearm use. Extrapolating from his 1993, 2016, and 2019 articles, he states that Section 790.065(13) will have no effect on crime because neither the Gun Control Act of 1968 nor laws that ban persons under age 18 from purchasing firearms have had a statistically significant negative effect on crime. That is a leap. According to Dr. Kleck's own research and analysis, Section 790.065(13) is materially different from both the under-18 laws and the Gun Control Act.

First, Section 790.065(13) regulates 18-to-20-year-olds rather than persons under 18. That is a critical distinction since, as Dr. Kleck has recognized, "criminal

8

violence in America is at its highest in the young adult ages," with "national arrest data for 2017 indicat[ing] that the single ages with the highest rates of arrest for murder were 18, 19, and 20 years old." 2019 Article, Ex. D at 1–2.

Second, unlike the Gun Control Act of 1968, Section 790.065(13) prohibits 18-to-20-year-olds from purchasing any type of firearm from any source; it does not allow them to buy from private sellers, nor does it allow them to buy long guns. Those, too, are critical distinctions according to Dr. Kleck. In his 2019 article, he concluded that two possible explanations for the Gun Control Act's ineffectiveness are that it allows 18-to-20-year-olds to purchase handguns from private sellers and that it allows "[c]riminally inclined" 18-to-20-year-olds to access "long guns." Ex. D at 11–12.

Although Section 790.065(13) is materially different from the laws that Dr. Kleck considered in his 1993, 2016, and 2019 articles, he does not explain why, in his view, the articles bear on Section 790.065(13). *See* Ex. A at 2–3. His unexplained extrapolation from the articles renders his testimony inadmissible. "[A]s gatekeeper for the expert evidence presented [at trial], the Court must ensure that any extrapolations" by an expert "are based on more than just the *ipse dixit* of [the] expert." *In re Abilify Prod. Liab. Litig.*, 299 F. Supp. 3d 1291, 1371 (N.D. Fla. 2018) (citing *McDowell*, 392 F.3d at 1299); *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1111 (11th Cir. 2005) ("[N]othing in either *Daubert* or the Federal Rules of

Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." (quotations omitted)).

## CONCLUSION

Dr. Kleck's testimony on the potential impact of Section 790.065(13) on lawful and unlawful firearm use is inadmissible under Rule 702 and *Daubert*. It should be excluded.

## LOCAL RULE 7.1(B) CERTIFICATION

Counsel for Defendant "attempt[ed] in good faith to resolve" the issues raised in this motion "through a meaningful conference with" Plaintiffs' counsel, but the parties could not reach a resolution. L.R. 7.1(B).

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ *Kevin A. Golembiewski*
KEVIN A. GOLEMBIEWSKI (FBN 1002339)
Deputy Solicitor General
kevin.golembiewski@myfloridalegal.com

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General
Elizabeth.Teegen@myfloridalegal.com
CHRISTOPHER J. BAUM (FBN 1007882)
Senior Deputy Solicitor General
Christopher.Baum@myfloridalegal.com
AMIT AGARWAL (FBN 125637)
Solicitor General
Amit.Agarwal@myfloridalegal.com
JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General
James.Percival@myfloridalegal.com
TIMOTHY L. NEWHALL (FBN 391255)
Senior Assistant Attorney General
Timothy.Newhall@myfloridalegal.com
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3300

*Counsel for Defendant*

Date: December 3, 2020

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of this Court's Local Rules, I certify that the foregoing Motion and Incorporated Memorandum contain 2,188 words.

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
DEPUTY SOLICITOR GENERAL

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties, on this 3rd day of December, 2020.

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
DEPUTY SOLICITOR GENERAL