IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION
OF AMERICA, Inc., *et al.*,

    *Plaintiffs*,

v.                                        CASE NO.: 4:18-cv-137-MW-MAF

RICK SWEARINGEN, in his official
capacity as Commissioner of the
Florida Department of
Law Enforcement,

    *Defendant*.

_____/

## OPPOSITION TO MOTION IN LIMINE TO EXCLUDE THE TESTIMONY OF WILLIAM ENGLISH, PH.D.

The Court should deny Defendant's Motion in Limine to Exclude the Testimony of William English, Ph.D. ("MIL") because Dr. English's testimony that 18-to-20-year-olds have historically enjoyed the right to purchase arms is helpful to the Court and because his testimony on the public safety impacts of Florida's ban is reliable.

Plaintiffs, the National Rifle Association of America, Inc., and Radford Fant, challenge the constitutionality of Section 790.065(13), Florida Statutes, which bans anyone 18 to 20 years of age from purchasing any type of firearm—handgun, rifle or shotgun—from anyone, including a federally licensed dealer or a private source.

Plaintiffs contend that Florida's ban violates the Second and Fourteenth Amendments.

The Supreme Court has instructed that challenges under the Second Amendment should be analyzed based upon the text, history, and tradition of that amendment. *District of Columbia v. Heller*, 554 U.S. 605, 626–27, 634–35 (2008). "We look to [the historical background of the Second Amendment] because it has always been widely understood that the Second Amendment, like the First and Fourth Amendments, codified a pre-existing right." *Id*. at 592. "Constitutional rights are enshrined with the scope they were understood to have when the people adopted them." *Id*. at 634–35.

Throughout this litigation, Defendant has urged this Court to use a two-step inquiry to resolve Plaintiffs' Second Amendment claim. *See* Def.'s Motion for Summary Judgment ("Def.'s MSJ"), ECF No. 107, at 6; Def.'s Motion to Dismiss. ECF No. 73, at 5. According to Defendant, at the first step of this two-step inquiry, the Court determines whether the challenged law burdens conduct within the scope of the Second Amendment as historically understood, analyzing the text, history, and tradition of that amendment. Def.'s MSJ, at 6. This step is not unlike the *Heller* analysis described above. At the second step, the Court determines, among other things, whether the challenged law survives heightens scrutiny by "advance[ing] the state's interest" in improving public safety. *See id*. at 19-29.

Defendant argues in his Motion for Summary Judgment that Florida's ban does not burden conduct within the scope of the Second Amendment. Def.'s MSJ, at 7-19. Defendant also asks this Court to hold that Florida's ban survives intermediate scrutiny, *see id.*, which requires the Court to perform a fact-based analysis and assess the evidence supporting the ban's justification, *see McCutcheon v. Federal Election Comm'n*, 572 U.S. 185, 221 (2014) (plurality op.). Plaintiffs anticipate that Defendant will make these same arguments at trial.

Plaintiffs designated Dr. English to assist the Court in its determinations that Florida's ban burdens conduct protected by the Second Amendment, that the ban is inconsistent with the Second Amendment's text, history and tradition, and that the ban fails at step two of the two-step analysis urged by Defendant. Relying on various historical sources, Dr. English opines that Florida's ban "denies a constitutionally protected right to a class of citizens in a manner that is inconsistent with principles of moral and legal equality." MIL, Ex. A, at 2.[1] Dr. English also opines that Florida's ban "is unlikely to improve public safety" because it "will be ineffective at preventing 18-20 year old criminal from accessing firearms," because federal law already "restrict[s] licensed sales of handguns to those under 21," and because it will

---

[1] Dr. English's report is attached to Defendant's Motion in Limine as Exhibit A. For ease of reference, citations to that report will be made to "MIL, Ex. A."

negatively impact 18-to-20-year-olds' ability to purchase firearms for self-defense. *Id.* at 1.

Defendant argues that the former testimony is unhelpful to the Court because it is a purely legal conclusion. MIL, at 15. Defendant also argues that Dr. English, a professor who studies the effects of firearm legislation, is unqualified to give this testimony and that, in any event, this testimony is unreliable because it lacks "intellectual rigor." MIL, at 12-13.

For the reasons set forth below, under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), Dr. English's opinions are reliable and fit the facts of this case. Defendant's motion to exclude his testimony on these bases should be denied.

## LEGAL STANDARD

Expert testimony is admissible when the expert "is qualified and proposes to give at least some testimony that passes muster under *Daubert*." *Munroe v. Barr Labs., Inc.*, No. 4:07CV395-RH/WCS, 2009 WL 6361861, at *1 (N.D. Fla. Oct. 14, 2009).

Under Federal Rule of Evidence 702 and *Daubert*, trial courts act as a gatekeeper for expert testimony, permitting into the courtroom testimony that is relevant and reliable. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 145 (1999).

Trial courts have broad discretion in their role as gatekeepers. *See, e.g.*, *In re Teltronics, Inc.*, 904 F.3d 1303, 1310-1311 (11th Cir. 2018).

## ARGUMENT

Under Rule 702 and *Daubert*, Dr. English is competent to offer his testimony, and his opinions are both reliable and do more than offer a purely legal conclusion. Defendant's motion to exclude his testimony on these bases should be denied.

### 1. Dr. English's opinion that 18-to-20-year-olds have historically enjoyed the right to purchase arms is admissible.

Dr. English rebuts Defendant's argument that Florida's ban "does not burden conduct protected by the Second Amendment as historically understood" because "the sale of firearms to minors—as 18-to-20-year-olds were at common law—is not protected by the Second Amendment." Def. MSJ, at 7-19. Dr. English relies upon various historical sources to opine that 18-to-20-year-olds have historically been considered adults and that a ban on their ability to purchase firearms is inconsistent with the Second Amendment's history and tradition. *See* MIL, Ex. A, at 9-13.

Defendant relies upon *Washington v. City of Waldo, Fla.*, No. 1:15CV73-MW/GRJ, 2016 WL 3545909, at *3-4 (N.D. Fla. Mar. 1, 2016), to argue that Dr. English's testimony should be excluded because it merely explains the law to the Court and offers a legal conclusion. MIL, at 15. In *Washington*, the Court distinguished between inadmissible expert testimony that offers "purely legal conclusions" or "purports to articulate the requirements of the law" and admissible

5

testimony that "present[s] the factors that might inform [the Court's understanding of the issues to be decided]." 2016 WL 3545909, at *3-5. Under this rubric, *Washington* excluded testimony that provided an ultimate conclusion, *id*. at *3, and testimony that "articulate[d] the requirements of a lawful arrest," *id*. at *4, but admitted testimony that "lists factors that Florida officers presumably consider in assessing a potential threat to officer safety and subsequently opines as to whether those factors were present in this case," *id*. at *5.

Dr. English's testimony is distinguishable from the testimony excluded in *Washington*, and is more akin to the testimony the Court admitted. At no point does Dr. English provide a purely legal conclusion on the constitutionality of Florida's ban. Nor does he articulate the requirements of a proper Second Amendment analysis. Dr. English instead canvasses a variety of historical sources to opine that 18-to-20-year-olds have historically enjoyed the right to purchase arms. *Id*. at 9-13. This testimony will help the Court determine whether Florida's ban burdens conduct protected by the Second Amendment, whether Florida's ban is consistent with the Second Amendment's text, history, and tradition, and that no other right is curtailed past the age of majority in the way Defendant has treated the Second Amendment rights of young adults in Florida.

### 2. Dr. English is competent to opine on the public safety impact of Florida's ban, and this testimony is reliable.

#### A. Dr. English is competent to opine on the public safety impact of Florida's ban.

Dr. English has provided similar expert testimony in several Second Amendment cases without having his testimony excluded. *See Rupp v. Becerra*, No. 8:17-cv-00746-JLS-JDE (C.D. Cal.) (judgment entered July 31, 2019) (Dr. English's testimony not challenged); *Vermont Federation of Sportsmens Clubs v. Birmingham*, No. 224-4-18 (Vt. Sup. Ct. Wash. Unit) (same); *see also Doe v. Putnam Cnty*, 16-cv-8191 (S.D.N.Y.) (motion to exclude Dr. English as rebuttal witness not yet decided).

Under Rule 702, "a person may be qualified as an expert based on his knowledge, skill, experience, training, or education." *Washington*, 2016 WL 3545909, at *2. An expert's credentials are examined "in light of the subject matter of the proposed testimony." *Id*. "This inquiry is not stringent, and so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Id*. Expert witnesses are not required "to possess a particular degree; qualification can be achieved simply '[b]y virtue of training and experience.'" *Hong v. Sec'y, Dep't of Corr.*, No. 5:07-CV-374, 2011 WL 13175211, at *13 (M.D. Fla. Mar. 15, 2011), *aff'd*, 478 F. App'x 648 (11th Cir. 2012) (quoting *United States v. Majors*, 196 F.3d 1206, 1215 (11th Cir. 1999)).

For instance, in *Arevalo v. Coloplast Corp.*, No. 3:19CV3577-TKW-MJF, 2020 WL 3958505, at *8 (N.D. Fla. July 7, 2020), reconsideration denied, No. 3:19CV3577-TKW-MJF, 2020 WL 6018933 (N.D. Fla. Oct. 6, 2020), this Court held that a proposed expert was "qualified to offer opinions about testing, IFUs, or postmarket surveillance" because of her "experience consulting in the areas of medical product development, testing, trials, and regulatory compliance," her "Ph.D. in toxicology," and the fact that "[o]ther courts have considered [her] qualified on many occasions." The Court admitted her testimony on "regulatory and industry standards expert regarding testing, labeling, and postmarket surveillance" notwithstanding the fact that she had a Ph.D. in toxicology. *Id*.

Dr. English's education, background, and current position allow him to collect and analyze data and scholarly research and opine on the public safety impact of Florida's ban. Dr. English is an accomplished social scientist with expertise in empirical methods, behavioral economics, public policy, and firearms laws. Dr. English has been accepted as an expert in these areas by other courts. *Infra*, 7. Dr. English serves as Assistant Professor of Ethics, Political Economy, and Behavioral Economics at the Georgetown University McDonough School of Business, where he is researching the impact of various firearms laws within the United States. MIL, Ex. A, at 15. He received his doctorate in Political Science at Duke University with a Dissertation titled Social Thought and Social Change: Methodological Dilemmas

at the Intersection of Science and Ethics. *Id*. Dr. English has degrees in Political Science, Economics, and Mathematics from Duke University and a degree in Ethics from Oxford University, UK. Dr. English has written, lectured, taught, and commented extensively on topics in public policy, statistical analysis, methodology, regulation, government, behavioral economics, and ethics. *Id*.

Defendant suggests that only criminologists can be qualified to opine on a law's public safety effects. MIL, at 10-11. This is simply not the case. Like the expert witness in *Arevalo*, 2020 WL 3958505, at *8, Dr. English has relevant experience researching the impact of various firearms laws within the United States, earned his Ph.D. in the relevant field, and has offered expert testimony on the public safety impacts of firearm laws before. *Infra*, 8; *see also Niam v. Ashcroft*, 354 F.3d 652, 660 (7th Cir. 2004) ("There is no ironclad requirement that an academic, to be qualified as an expert witness, must publish academic books or articles on the precise subject matter of her testimony."). His background and training are more than sufficient to meet the requirements for an expert witness in this case.

### B. Dr. English's opinion that Florida's ban will have a negative impact on public safety in Florida is admissible because it is reliable.

Dr. English analyzes information from the Census Bureau to determine how many 18-to-20-year-olds live in Florida and analyzes information from the Department of Justice's National Center for Juvenile Justice to determine how many

18-to-20-year-olds in Florida are arrested each year for violent crime offenses. MIL, Ex. A, at 5. He then uses information from the Florida Department of Law Enforcement to determine how many of these crimes involved firearms and uses information from the United States Department of Justice to determine how many of these crimes involved firearms that were purchased from a retailer. *Id*. Dr. English evaluates this information to opine that Florida's ban is targeted at reducing crime that rarely occurs. *Id*. at 1-2.

Dr. English then examines the impact of Florida's ban on the ability of law-abiding, responsible 18-to-20-year-olds to defend themselves. *Id*. at 7. Dr. English cites the Bureau of Justice Statistics for the proposition that 18-24-year-olds are victimized most by violent crime. *Id.* Dr. English opines that Florida's ban "will prevent law-abiding citizens who are most vulnerable to violent crime from purchasing a firearm for the purpose of defending themselves." *Id*. This testimony is based on Dr. English's analysis of the activity Florida bans and the statistics demonstrating that young adults are highly victimized.

Contrary to Defendant's argument misrepresenting his testimony, MIL, at 12, Dr. English's opinion is not based on whether it may be legal to gift a firearm to 18-to-20-year-olds. In any event, if it is now Defendant's position that the challenged law will not actually decrease acquisition of firearms by those in this age group, then Defendant has himself demonstrated that the law is not tailored to the government

interest and is unconstitutional. Defendant appears to be using this entirely speculative possibility—that some law-abiding adult will determine that an individual 18-to-20-year-old "is prepared for the responsibility of gun ownership" and loan or give them a firearm—as an implausible litigation position to save the purchase restriction, tacitly admitting that Florida's ban is indefensible.

Defendant takes issue with Dr. English's extrapolation of data regarding crime and violent crime, arguing that his opinion is not persuasive because it relies on multiple sets of data and does not control for certain variables. *Id*. at 12-13. Defendant makes the same argument regarding Dr. English's interpretation of the findings in the United States Fish & Wildlife Service survey. *Id*. At best, these arguments would go only to the weight of Dr. English's testimony, not its admissibility. "It is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd*., 326 F.3d 1333, 1341 (11th Cir. 2003) (citations omitted);[2] *Companhia Energetica Potiguar v. Caterpillar Inc*., No. 14-24277-CIV, 2017 WL 10775768, at *7 (S.D. Fla. June 12, 2017) ("[M]istakes, defects, omissions, problems, weaknesses and warts with an expert's opinion do not necessarily mean that it must be excluded. To the contrary, many challenges to expert testimony

---

[2] This principle applies even in a bench trial. *Adams v. Paradise Cruise Line Operator Ltd., Inc*., No. 19-CV-6114, 2020 WL 3489366, at *2 (S.D. Fla. June 26, 2020).

ultimately can be viewed as an attack on the weight of the expert's opinions, which can be addressed at trial through vigorous cross-examination, rather than to admissibility."). Criticisms that "relate to the accuracy of the information [the expert] used in his methodology" go to weight not admissibility and "is more properly raised through cross examination or rebuttal testimony than with a *Daubert* motion." *Hernandez v. Crown Equip. Corp.*, 92 F. Supp. 3d 1325, 1343 (M.D. Ga. 2015). The Court should not exclude Dr. English's testimony but should allow Defendant to subject it to cross-examination.

Defendant makes this same argument with respect to Dr. English's opinion that Florida's ban is unlikely to positively impact suicide rates among 18-to-20-year-olds in Florida, suggesting that his opinion is based on speculation. MIL, at 13. Dr. English defines the potential impact of Florida's ban on suicide rates among 18-to-20-year-olds in Florida, noting that approximately 17 individuals commit suicide with long guns (handguns were already illegal to purchase via federal law). MIL, Ex. A, at 8. Dr. English then notes candidly that this is an "empirical question that can only be answered using data that is not yet publicly available," but opines based on a study on suicide rates associated with the implementation of the Brady Handgun Violence Act that "there are reasons to expect that the impact of 'Florida's ban' will be minimal on what is already a very small population to begin with." *Id*. Dr. English bases his opinion on a scientific study, not speculation. Defendant's issue with this

testimony goes to the weight the Court should afford the testimony and not the testimony's admissibility.

Defendant finally argues that Dr. English's opinions lack a specific methodology because his calculations are based on an incomplete set of data. MIL, at 13-14. Dr. English's methodology is clear: he distills relevant, credible information to opine that Florida's ban will not have a positive impact on public safety in Florida. *See infra*, 9-10. Defendant relies upon *Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1356 (S.D. Fla. 2015), a case that "hing[ed] on whether a dog is a service animal," to argue that Dr. English's methodology fails. In *Cordoves*, the Court excluded the proposed expert because he "proffered a theory" without "cit[ing] *any* sources corroborating his assumptions." *Id*. (emphasis added). *Cordoves* is inapplicable here because, as Defendant admits, Dr. English provides citations that corroborate each of his opinions and then uses this evidence to perform calculations that inform his opinion. MIL, at 13. Defendant takes issues with Dr. English's conclusions, but this goes to the weight of Dr. English's opinions not their admissibility.

There is no other right conditioned entirely on the generosity of others. Defendant cannot have it both ways. Either the restriction will advance public safety by reducing the number of firearms acquired by Florida citizens in the restricted age group, or a sufficient number of gifted firearms will be transferred to 18-to-20-year-

13

olds to significantly reduce the burden on the Second Amendment right. But it cannot be both simultaneously because the fundamental precept of the sales ban is that "18-to-20-year-olds are uniquely likely to engage in impulsive, emotional, and risky behaviors." Def's MSJ at 25. Any argument that the ability to gift or loan a firearm to a member of the restricted age group saves this ban from Second Amendment scrutiny is without merit. Regardless, Defendant has chosen to make an issue of this, and Dr. English's expert opinion provides assistance to the Court with respect to the effects, positive or negative, of the bans, and he should be permitted to testify.

## CONCLUSION

For the foregoing reasons, Defendant's Motion should be denied.

Respectfully submitted,

/s/*John Parker Sweeney*
John Parker Sweeney
James W. Porter, III
Marc A. Nardone
BRADLEY ARANT BOULT CUMMINGS LLP
1615 L Street, NW
Washington, DC 20036
Tel: (202) 393-7150
jsweeney@bradley.com
(Admitted *Pro Hac Vice*)

Robert Craig Mayfield (FBN: 0429643)
BRADLEY ARANT BOULT CUMMINGS LLP
100 N. Tampa Street, Suite 2200
Tampa, FL 33602
Telephone: (813) 559-5500
rmayfield@bradley.com

*Counsel for Plaintiffs*

## Local Rule 7.1(F) Certificate of Compliance

Pursuant to Local Rule 7.1(F), I certify the foregoing pleading contains 3,029 words.

/s/ Robert Craig Mayfield
*Counsel for Plaintiffs*

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 8, 2020, I filed the foregoing with the Clerk of the Court using the CM/ECF system, which will provide electronic service to all counsel of record, as follows:

AMIT AGARWAL (FBN 125637)
Solicitor General

JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General

TIMOTHY NEWHALL (FBN 391255)
Senior Assistant Attorney General

Office of the Attorney General
The Capitol, PL-01
Tallahassee, FL 32399
Tel: (850) 414-3681
amit.agarwal@myfloridalegal.com
james.percival@myfloridalegal.com
elizabeth.teegen@myfloridalegal.com
barbara.throne@myfloridalegal.com
timothy.newhall@myfloridalegal.com

CHRISTOPHER J. BAUM (FBN 1007882)
Deputy Solicitor General
Office of the Attorney General
State of Florida
1 SE 3rd Ave Suite 900
Miami, FL 33131
(786) 792-6269
christopher.baum@myfloridalegal.com

                                              /s/ Robert Craig Mayfield
                                              *Counsel for Plaintiffs*