# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA

NATIONAL RIFLE ASSOCIATION OF AMERICA, *et al.*,

    *Plaintiffs*,

v.

RICK SWEARINGEN, in his official capacity as Commissioner of the Florida Department of Law Enforcement,

    *Defendant*.

Case No. 18-cv-137-MW/MAF

## DEFENDANT'S REPLY IN SUPPORT OF HIS MOTION TO EXCLUDE THE TESTIMONY OF WILLIAM ENGLISH, PH.D.

Plaintiffs' defense of Dr. English's testimony is built on sand. They assert that his testimony is admissible because he examines whether "18-to-20-year-olds have historically enjoyed the right to purchase firearms." Resp. 5. But Dr. English offers no such testimony. He does not opine on the history of the Second Amendment. Instead, he testifies as "a political theorist and student of American political development," opining on "normative considerations that need to be taken into account in evaluating" the constitutionality of Section 790.065(13). English Rep. at 9 (Doc. 127-1).

Plaintiffs have not established that Dr. English's testimony is admissible. *See United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (en banc) ("The

burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion.").

## ARGUMENT

I. **DR. ENGLISH'S TESTIMONY ON HOW THIS COURT SHOULD ANALYZE THE CONSTITUTION IS INADMISSIBLE.**

**A. Dr. English does not opine on the history of the Second Amendment. He offers legal argument on the constitutionality of Section 790.065(13).**

According to Plaintiffs, Dr. English opines "that 18-to-20-year-olds have historically enjoyed the right to purchase firearms." Resp. 5. But Dr. English neither sets himself out as a historian nor discusses whether 18-to-20-year-olds have historically had a right to purchase firearms. Indeed, in his report, he does not discuss the history of the Second Amendment at all. The closest he comes is one paragraph in which he argues that 18-to-20-year-olds are fit to "use firearms responsibly" because they "have been repeatedly asked or required to serve in the military dating back to the earliest militias." English Rep. at 12. In that paragraph, Dr. English cites two law review articles on the Second Amendment but does so only for the proposition that 18-to-20-year-olds served in founding-era militias. *Id.*

Rather than offering testimony on the history of the Second Amendment, Dr. English offers his views on "the moral and political principles" that the Court should consider in evaluating the constitutionality of Section 790.065(13). *See id.* at 4; *id.* at 10 (advising the Court that "[o]ne way in which [constitutional] rights function is

2

that they limit the extent to which utilitarian considerations can justify sacrificing the interests of some individuals"); *id.* (arguing that "the Fourth Amendment's recognition of a right to be secure in one's house . . . prevents the state from improving public safety" by "randomly searching houses in high crime neighborhoods"); *id.* (stating that Section 790.065(13) "runs afoul" of due process and that it is important for the Court to consider the same because due process is "fundamental to modern political legitimacy"); *id.* (opining on the "aim" of the Fourteenth Amendment); *id.* at 11 (arguing that "18-year-olds have historically been called upon to fight in" wars and "thus deserve[] equal political rights"); *id.* at 11–12 (opining that it is constitutional to bar "mental defectives" from "purchasing firearms because of their inability to exercise agency").

That is legal argument on how to interpret and apply the Constitution, not expert testimony. *See Cordoves v. Miami-Dade Cty.*, 104 F. Supp. 3d 1350, 1365 (S.D. Fla. 2015) (excluding testimony as "legal argument" where the expert argued that certain requirements "r[a]n afoul of" the law); *League of United Latin Am. Citizens v. Edwards Aquifer Auth.*, 2014 WL 10762935, at *2 (W.D. Tex. Sept. 30, 2014) (same where the expert "essentially offer[ed] [his] opinion on how the law should be interpreted and applied in th[e] case"). If Dr. English's "testimony were admitted, [Plaintiffs] would be advancing legal argument" about the Constitution "under the guise of an expert witness," but under *Daubert* and Rule 702, "the parties'

3

counsel make the legal argument, not the experts." *See Apple Inc. v. Corellium, LLC*, 2020 WL 5417197, at *5 (S.D. Fla. July 30, 2020).

Plaintiffs counter that Dr. English's testimony is admissible under *Washington v. City of Waldo*, 2016 WL 3545909 (N.D. Fla. Mar. 1, 2016), Resp. 6, but that decision affirms that the testimony is inadmissible. In *Washington*, this Court permitted an expert to opine on "factors that might inform an officer's probable cause determination, as such testimony speaks to prevailing standards in law enforcement," but the Court excluded the expert's testimony on the legal "requirements of a lawful arrest" and on the lawfulness of the defendant's conduct. 2016 WL 3545909, at *4–5. Those rulings do not help Plaintiffs. Dr. English does not opine on any prevailing professional standards; he offers his views on what the Constitution requires and on whether Section 790.065(13) complies with the Constitution.

### B. Even if Dr. English offered testimony on whether "18-to-20-year-olds have historically enjoyed the right to purchase firearms," it would be inadmissible.

Even if Dr. English opined on whether "18-to-20-year-olds have historically enjoyed the right to purchase firearms," the testimony would be inadmissible because Plaintiffs have made no showing that Dr. English is qualified to testify as a historian. They assert only that he is "an accomplished social scientist." Resp. 8. But

4

like any other type of expert, an expert who seeks to testify on history must be competent to do so.

As Chief Judge Pryor of the Eleventh Circuit has stated, courts cannot "relax[] the rules concerning the admission of expert testimony when the subject matter of the testimony is history." *Sovereign Military Hospitaller Order v. Fla. Priory of Knights Hospitallers*, 694 F.3d 1200, 1223 (11th Cir.) (Pryor, C.J., concurring in part, dissenting in part), *superseded on reconsideration*, 702 F.3d 1279 (11th Cir. 2012). "Special dangers attend the introduction of testimony about history in judicial proceedings"; "[w]hen a historian, whose methodology is unsound, is placed before a factfinder, the historian has the ability to paint a picture of the past as he or she so desires," thus increasing the risk of a tainted record. *Id.* at 1219 (quotations omitted).

## II. DR. ENGLISH'S TESTIMONY ON THE POTENTIAL IMPACT OF SECTION 790.065(13) ON CRIME AND PUBLIC SAFETY IS INADMISSIBLE.

**A. Plaintiffs have not established that Dr. English is qualified.**

In a recent filing, Plaintiffs stated that "criminology" is the relevant field for an expert who is testifying on "whether [Section 790.065(13)] is likely to reduce violent crime." *Daubert* Mot., Doc. 125 at 4. That is true. And it is dispositive here because an expert is competent to testify only if he has expertise in "the relevant field," and Plaintiffs have made no showing that Dr. English has expertise in criminology. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

Because Plaintiffs cannot make that showing, they retreat from their position that expertise in criminology is necessary and claim that Dr. English is qualified to testify on the potential impact of Section 790.065(13) on crime and public safety because (1) he "provided similar expert testimony" in three other cases, *Rupp v. Becerra*, *Vermont Federation of Sportsmen's Clubs v. Birmingham*, and *Doe v. Putnam County*; (2) he is currently "researching the impact of various firearms laws within the United States"; and (3) he is a political scientist. Resp. 7–9. But even if expertise in criminology were not required, those arguments would fail.

First, Dr. English did not "provide similar expert testimony" in *Rupp*, *Birmingham*, and *Doe*. Although he submitted reports in the cases, he did not testify in any of them. Ex. A, English Depo. at 31:13–31:16. Nor was his proposed testimony similar to his testimony in this case. In *Rupp*, he opined on "how widely owned and used" certain rifles were. *Id.* at 28:18–28:24. In *Birmingham*, he opined on "how widely owned and used [high-capacity magazines] were." *Id.* at 28:2–28:11. And in *Doe*, he offered rebuttal testimony on whether a law that made handgun permits a matter of public record "serve[d] an important governmental objective." Rebuttal Report at 3, *Doe v. Putnam Cty.*, No. 16-8191 (S.D.N.Y. Jan. 1, 2020), ECF No. 100-10.

Second, Plaintiffs lack support for their claim that Dr. English "has relevant experience" on "the impact of various firearms laws." *See* Resp. 9. In making the

claim, they rely on *Rupp*, *Birmingham*, and *Doe* and one sentence in Dr. English's report. They first assert that Dr. English has relevant experience on firearms because the courts in *Rupp*, *Birmingham*, and *Doe* determined that he is an expert in "firearms laws." Resp. 8. But that is inaccurate: Plaintiffs themselves admit that none of the courts considered Dr. English's competency to testify. *See* Resp. 7; *accord Doe v. Putnam Cty.*, 2020 WL 7027596, at *9 (S.D.N.Y. Nov. 30, 2020) (dismissing case on abstention grounds and therefore declining to rule on the admissibility of Dr. English's testimony). Next, Plaintiffs cite page 16 of Dr. English's report, Resp. 8, in which he states, "I am in the process of conducting research on the impact of various firearms laws in the United States," English Rep. at 16.[1] But that single vague sentence, which does not even mention crime, does not establish that Dr. English has sufficient expertise to opine on how a law like Section 790.065(13) will impact crime.

Finally, Dr. English is not qualified to testify on how Section 790.065(13) might impact crime merely because he is a political scientist. Plaintiffs appear to contend that, as a political scientist, Dr. English has expertise in statistics, so he can "collect and analyze data" and render opinions on crime. *See* Resp. 8. But analyzing the impact of a law on crime requires more than just the ability to crunch numbers,

---

[1] Plaintiffs inadvertently cite page 15 of the report instead of page 16. *See* Resp. 8.

*see* Def. Mot., Doc. 127 at 10–11, and in any event, a political scientist is not an expert in crunching numbers. A political scientist is "not a statistician or economist." *See Increase Minority Participation by Affirmative Change Today of Nw. Fla. v. Firestone*, 893 F.2d 1189, 1192, 1195 (11th Cir. 1990) (quotations omitted) (affirming exclusion of a political scientist who offered testimony on "a statistical disparity").

### B. Plaintiffs have not established that Dr. English's testimony is reliable.

Even if Dr. English were qualified to testify on the potential impact of Section 790.065(13) on crime and public safety, Plaintiffs have not shown that his testimony is based on a reliable methodology. They ignore that he describes his testimony as just a "rough estimate" of Section 790.065(13)'s potential impact. English Rep. at 5. And they fail to justify or explain his logical leaps, flawed assumptions, and speculation. *See* Def. Mot., Doc. 127 at 12–14 (detailing the leaps, assumptions, and speculation). Instead, Plaintiffs merely assert that such defects bear on weight, not admissibility, Resp. 11–12, ignoring that expert testimony is admissible only if it "is properly grounded, well-reasoned, and not speculative," *Frazier*, 387 F.3d at 1262 (quotations omitted).

Indeed, Plaintiffs are unable to even explain Dr. English's methodology. They make the heavy-handed claim that, "Dr. English's methodology is clear: he distills relevant, credible information to opine that Florida's ban will not have a positive

8

impact on" crime. Resp. 13. And then they point out that he "provides citations." Resp. 13. But they do not identify any principles or methods that he used in selecting or "distilling" information, or in performing his calculations. *See* Resp. 13.

## CONCLUSION

Dr. English's testimony is inadmissible under Rule 702 and *Daubert*. It should be excluded.

Respectfully submitted,

ASHLEY MOODY
ATTORNEY GENERAL

/s/ *Kevin A. Golembiewski*
KEVIN A. GOLEMBIEWSKI (FBN 1002339)
Deputy Solicitor General
Kevin.Golembiewski@myfloridalegal.com

ELIZABETH TEEGEN (FBN 833274)
Chief Assistant Attorney General
Elizabeth.Teegen@myfloridalegal.com
CHRISTOPHER J. BAUM (FBN 1007882)
Senior Deputy Solicitor General
Christopher.Baum@myfloridalegal.com
AMIT AGARWAL (FBN 125637)
Solicitor General
Amit.Agarwal@myfloridalegal.com
JAMES H. PERCIVAL (FBN 1016188)
Chief Deputy Solicitor General
James.Percival@myfloridalegal.com
TIMOTHY L. NEWHALL (FBN 391255)
Senior Assistant Attorney General
Timothy.Newhall@myfloridalegal.com
Office of the Attorney General
PL-01, The Capitol
Tallahassee, Florida 32399
(850) 414-3300

*Counsel for Defendant*

Date: December 21, 2020

# CERTIFICATE OF COMPLIANCE

Pursuant to Rule 7.1(F) of this Court's Local Rules, I certify that the foregoing Motion and Incorporated Memorandum contain 1,858 words.

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
DEPUTY SOLICITOR GENERAL

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was filed with the Court's CM/ECF system, which provides notice to all parties, on this 21st day of December, 2020.

/s/ *Kevin A. Golembiewski*
Kevin A. Golembiewski
DEPUTY SOLICITOR GENERAL